UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RECEIVED
SEP 10 2020
CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

BROCK FREDIN,

          Plaintiff,

--against--

JAMIE KREIL,

          Defendant.

Case No.

20cv1929 WMW/DTS

**COMPLAINT**
Jury Trial Demanded

---

Plaintiff Brock Fredin ("Plaintiff") proceeding *pro se*, hereby alleges the following against Defendant Jamie Kreil ("Defendant Kreil").

### NATURE OF THE CASE

1. This action arises out of Defendant Kreil's scheme designed so that Plaintiff could not respond to her fabricated "rape" allegation. *See Fredin v. Middlecamp*, Case No. 17-CV-3058 [Dock No. 196-197] Prior to Defendant Kriel's declaration, Plaintiff did not even know who she was. Plaintiff brings this again against Defendant Kreil for defamation, conspiracy to defame, abuse of process, fraud, and intentional infliction of emotional distress.

2. As a result of Defendant Kreil's tortious acts, Plaintiff has suffered significant damages and harm. Plaintiff seeks actual and punitive damages in addition to injunctive relief.

### JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. The Court also has federal question jurisdiction under 28 U.S.C. § 1331.

SCANNED
SEP 10 2020
U.S. DISTRICT COURT ST. PAUL

1

4. Venue is proper pursuant to 28 U.S.C. § 1332(b)(1) and (b)(2) because the events that gave rise to this action occurred in this Judicial District.

## THE PARTIES

5. Plaintiff Brock Fredin is a citizen of the State of Wisconsin and resides at an address in Saint Croix County, WI.

6. Upon information and belief, Defendant Jamie Kreil is a citizen of the State of Minnesota and is domiciled in that state. Given public information, Defendant Jamie Kreil obtained a PhD from the University of Minnesota and teaches English.

7. Diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) exists in this action.

## FACTUAL ALLEGATIONS

I. Incorporation of *Fredin v. Middlecamp* Complaint

8. Plaintiff hereby incorporates the allegations set forth in the Amended Complaint [Dock. No. 5] filed in the matter *Fredin v. Middlecamp*, Case No. 17-CV-3058 ("*Fredin v. Middlecamp*") pending in the United States District Court for the District of Minnesota as if fully set forth in this Complaint. Specifically, Plaintiff incorporates paragraphs 2-4, 20-22, and 30-36.

II. Incorporation of *Fredin v. Miller*, et al. Complaint

9. Plaintiff hereby incorporates the allegations set forth in the Amended Complaint [Dock. No. 29] filed in the matter *Fredin v. Miller*, Case No. 18-CV-466 ("*Fredin v. Miller*") pending in the United States District Court for the District of Minnesota as if fully set forth in this Complaint.

III. Plaintiff's Discovery of Defendant Kreil's False Rape Accusation

10. On September 3, 2020 Defendant Kreil filed a knowingly false third-party declaration. Based on the representations in the third-party declaration, Defendant Kreil

2

knowingly engages in a wholly fabricated allegation that she was "raped" by Plaintiff in an effort designed to:

i. Place Plaintiff in a constitutionally untenable situation in *Fredin v. Middlecamp*. Specifically, Defendant Kreil's declaration is used to interfere with Plaintiff's right to confront or investigate Defendant Kreil's knowingly false claims material to Defendant Middlecamp's false rape allegation in *Fredin v. Middlecamp*.

ii. Improperly bypass discovery in *Fredin v. Middlecamp*;

   1. Preventing Plaintiff from deposing Defendant Kreil; or
   2. Cross-examining Defendant Kreil;

iii. Extinguish Plaintiff's ability to respond to the false allegation at the summary judgement reply stage;

iv. Improperly and fraudulently dismiss valid lawsuits in *Fredin v. Middlecamp* and *Fredin v. Miller* to limit Defendant Kreil's own legal liability.

v. Abuse the [c]ourt's and Plaintiff's legal process to fraudulently collaterally dismiss meritorious lawsuits and allegations which were made against what appear to be Defendant Kreil's personal friend(s) and past or current coworkers at the University of Minnesota.

*See* Ex. A.; *Fredin v. Middlecamp* [Dock. No. 196-197.]

11.    In review of the third-party declaration, the declaration lacks a valid signature. Specifically, Defendant Kreil failed to authenticate the document through a third-party notary. And, because Defendant Kreil is not a party to the matters in *Fredin v. Middlecamp or Fredin v.*

3

*Miller,* Defendant Kreil's failure to authenticate the document is materially an abuse of process and prejudicial to Plaintiff. *Id.*

12. To further attack Plaintiff, Defendant Kreil alleges she published a February 22, 2017 Facebook post to disseminate her contrived allegation to hundreds or thousands of people in concert with Lindsey Middlecamp's Twitter account @CardsAgstHrsmt and a false *City Pages* article. In making her allegation, Defendant Kreil represents her knowingly false allegation as fact while tacitly admitting to collaterally using her fabricated allegation to promote the above described smear campaign. Defendant Kreil's knowingly false allegation constitutes a conspiracy to defame and defamation *per se*.

13. Prior to Defendant Kreil's knowingly false accusation, Plaintiff provided to this [c]ourt all filings up to that point in time where he sought the identity of the person making a false rape accusation. In all stages, Defendant Kreil, Lindsey Middlecamp ("Middlecamp"), Grace Miller ("Miller"), and Catherine Schaefer ("Schaefer") intentionally and improperly withheld Defendant Kreil's identify and refused to provide Plaintiff the source of the false accusation. Plaintiff described a meticulous and painstaking information campaign to diligently search. Specifically, Plaintiff laid out four (4) things he completed to discover the source:

    i. Contacted the record departments within each police department in Hennepin County, Minnesota in search of any evidence, reports, or documentation surrounding the allegations;

    ii. Contacted the records departments within the Minnesota Bureau of Criminal Apprehension (BCA) in search of any evidence, reports, or documentation surrounding the allegations;

4

      iii. Filed an October 2019 limited discovery motion in *Fredin v. Middlecamp/Miller* specifically requesting the identity of the anonymous rape allegation; and

      iv. Attempting to engage in lawsuits in *Fredin v. Middlecamp/Miller* in hopes of uncovering the underlying knowingly false allegation and diffusing the resulting animus towards Plaintiff;

Based on the representations of Middlecamp in *Fredin v. Middlecamp*, the identity of the underlying knowingly false accusation did not exist. Middlecamp and Defendant Kreil failed to provide any information that would have led Plaintiff to anyone let alone Defendant Kreil. Despite Defendant Kreil appearing to realize the importance that her identity was material to Middlecamp's knowingly false claims, Defendant Kreil failed to provide Plaintiff or the [c]ourt any information. As a result of Plaintiff's due diligence, Plaintiff hereby asserts the applicability of equitable tolling as to the underlying statute of limitations of Defendant Kreil's knowingly false and fabricate rape allegation with respect to the conspiracy to defame and defamation *per se* claims.

    14. Defendant Kreil deliberately withheld her identity and subsequently filed a September 3, 2020 declaration at the summary judgement reply stage in *Fredin v. Middlecamp* to stop Plaintiff in his tracks from deposing or cross-examining Defendant Kreil or Middlecamp with respect to the claim's materiality to *Fredin v. Middlecamp*.[1] *Id.* [Dock. No. 196-197] And, to make matters worse, Defendant Kreil knew her allegations were central to claims in *Fredin v. Miller*.

---

[1] Including indirect and tacit association to claims in *Fredin v. Miller*. Plaintiff believes the primary underlying material issue for all claims in *Fredin v. Middlecamp* and *Fredin v. Miller* is Defendant Kreil's knowingly false allegation that she was "raped". *See* Ex. A.; *Fredin v. Middlecamp* [Dock. No. 196-197]

15. Defendant Kreil's failure to prepare and file earlier information to clarify based on the above stated issues was materially an abuse of process and prejudicial to Plaintiff in determining the source of Middlecamp's claims in *Fredin v. Middlecamp.*

16. Defendant Kreil's deliberately timed and filed September 3, 2020 declaration at the summary judgement reply stage in *Fredin v. Middlecamp* based on the above and below stated issues was materially an abuse of process and prejudicial to Plaintiff in determining the source of Middlecamp's claims in *Fredin v. Middlecamp. See* Ex. A.; *Fredin v. Middlecamp* [Dock. No. 196-197]

17. In learning this false accusation, Plaintiff noted that he had never been contemporaneously contacted by anyone relating to the knowingly false accusation because no such claim was ever made at that time. Specifically, Plaintiff laid out several facts to support this contention:

   i. Plaintiff was never contacted by any known law enforcement agency or individual officer;
   ii. No known police statement or report was ever made, filed, or preserved;
   iii. No criminal complaint was ever filed, considered or charged;
   iv. Plaintiff was never contacted by anyone; and
   v. No known evidence existed to support the underlying false allegation.

18. Upon information and belief, Defendant Kreil's knowingly false accusation is solicited on behalf of Plaintiff's ex-girlfriend Grace Elizabeth Miller and her Ivy-league surrogates Catherine Schaefer and Lindsey Middlecamp.

19. Plaintiff came to this well-founded belief by collecting the names of the academic programs on Defendant Kreil's Linkedin profile and Google search. Defendant Kreil attended a

University of Minnesota PhD program at the same time alongside Grace Elizabeth Miller. At that time, both Defendant Kreil and Grace Miller worked together as part-time English or literacy faculty at the University of Minnesota. Plaintiff then used publicly available search tools to identify that Catherine Schaefer managed all PhD level research originating from the University of Minnesota Program in Sexual Health[2] during overlapping time periods.

20. Upon information and belief, Defendant Kreil admits that she communicates with Middlecamp and her attorneys. Specifically, Defendant Kriel concedes she has engaged in extensive communication from 2017 to present with Middlecamp and her lawyers Karl Johann Breyer, Adam C. Ballinger, Leita Walker, and their respective law firms Ballard/Spahr and Kutak Rock.

21. Knowing her accusation is planted and knowingly false, Plaintiff believes Defendant Kreil schemed with Schaefer and Miller flowing through Middlecamp part-in-parcel to a scheme to use Middlecamp's media platform @CardsAgstHrsmt to parrot and feed Defendant Kreil's contrived anonymous accusation to Saint Paul Police Officer David McCabe ("McCabe") as a red herring to motivate McCabe to aggressive pursue a combined stream of knowingly vindictive and fabricated allegations.

22. For years, Defendant Kreil secretly worked to fund Middlecamp's racist @CardsAgstHrsmt media platform with anonymous allegations. Even more egregious, Defendant

---

[2] Based on publicly available information, Magistrate [j]udge Hildy Bowbeer donated substantial sums of money to the research aims of the University of Minnesota's Program in Sexual Health. Ms. Bowbeer vehemently denied Plaintiff's rights to engage in any discovery to uncover Defendant Kreil's identity. To make matters worse, Schaefer is in charge of the Program in Sexual Health research and therefore employed to put Ms. Bowbeer's financial donations to use. It is a conflict of interest for Ms. Bowbeer to preside over any matters involving claims entangled with Schaefer and arguably Plaintiff.

7

Kreil did this with complete knowledge and to further Middlecamp's police brutality and #shirtlessshamers schemes to publish nude and semi-nude photographs of black men.

23.  It is apparent from a public review of Defendant Kreil's professional credentials and declaration that Defendant Kreil submitted the knowingly contrived declaration in an effort designed to collaterally abuse the [c]ourt as a tool to turn the [c]ourt into Middlecamp's personal factory of third party accusations to benefit Middlecamp, and, most importantly, prevent Plaintiff from examining Defendant Kreil's knowingly fabricated accusations by escaping depositions, cross examination, or any discovery into her funding, contacts, communication, or motives.

IV.  Designed to Circumvent Depositions

24.  Despite these representations, Defendant Kreil never once attempted to have her allegations tested through depositions, subpoenas, cross-examination, or sworn testimony before any court or law enforcement agency.

25.  As stated above, Defendant Kreil sprung her identity on Plaintiff and the [c]ourt at the very last moment at a summary judgement reply stage in *Fredin v. Middlecamp* to fraudulently dismiss a valid lawsuit.  In other words, Defendant Kreil is attempting to place Plaintiff in a constitutionally untenable situation.  Specifically, Defendant Kreil unconstitutionally interfered with Plaintiff's right to confront or investigate Defendant Kreil's knowingly false allegations material to the underlying false rape allegation in *Fredin v. Middlecamp.*

## COUNT 1: DEFAMATION

26.  Plaintiff Fredin re-alleges and incorporates by reference paragraphs 1-25 of this Complaint as though fully set forth herein.

27.  Defendant has made false and defamatory statements concerning Plaintiff Fredin as set forth above in this Complaint.

28.     Defendant knew her representations were not true while falsely communicating the representations as statements of fact knowing they are demonstrably false.

29.     Defendant's defamatory statements accused Plaintiff of committing a serious crime, i.e. rape, and are therefore defamatory *per se*.

30.     On February 22, 2017, Defendant Kreil published and continues to publish these false statements to numerous individuals on her Facebook account.

31.     Defendant enjoys no privilege concerning these statements.

32.     The February 22, 2017 false rape accusation is subject to equitable tolling. Equitable tolling applies because of the reasons described below.

33.     Plaintiff engaged in due diligence to uncover the identity of the anonymous rape allegation. Specifically, Plaintiff (1) searched for any police reports evidencing the false accusation; (2) documented his searches in complaints before this [c]ourt; (3) contacted the Minnesota Bureau of Criminal Apprehension (BCA); and (4) filed limited discovery motions in this [c]ourt specifically to request the identity.

34.     Despite Plaintiff's due diligence, Plaintiff did not discover the identity of the false accusation until September 3, 2020. *See* Ex. A.; *Fredin v. Middlecamp* [Dock. No. 196-197]

35.     As a proximate result of Defendant's defamatory statements and unlawful conduct, Plaintiff has suffered severe harm and is entitled to actual and punitive damages in an amount to be proven at trial. Plaintiff also seeks injunctive relief requiring Defendant to remove the defamatory material and posts from her Facebook account.

## COUNT 2: CONSPIRACY TO DEFAME
### (Defendant Kreil's Conspiracy with Lindsey Middlecamp)

36.     Plaintiff Fredin re-alleges and incorporates by reference paragraphs 1-35 of this Complaint as though fully set forth herein.

9

37. Defendant acted in concert with Lindsey Middlecamp to defame Plaintiff as incorporated in *Fredin v. Middlecamp*.

38. Defendant has made false and defamatory statements concerning Plaintiff Fredin as set forth above in this Complaint.

39. Defendant's statements are statements of fact and are demonstrably false.

40. Defendant's defamatory statements accused Plaintiff of committing a serious crime, i.e. rape, and are therefore defamatory *per se*.

41. On February 22, 2017, Defendant Kreil acted in concert to publish and continues to publish these false statements to numerous individuals on Lindsey Middlecamp's Twitter account @CardsAgstHrsmt.

42. Defendant enjoys no privilege concerning these statements.

43. The February 22, 2017 false rape accusation is subject to equitable tolling. Equitable tolling applies because of the reasons described below.

44. Plaintiff engaged in due diligence to uncover the identity of the anonymous rape allegation. Specifically, Plaintiff (1) searched for any police reports evidencing the false accusation; (2) documented his searches in complaints before this [c]ourt; (3) contacted the Minnesota Bureau of Criminal Apprehension (BCA); and (4) filed limited discovery motions in this [c]ourt specifically to request the identity.

45. Despite Plaintiff's due diligence, Plaintiff did not discover the identity of the false accusation until September 3, 2020. *See* Ex. A.; *Fredin v. Middlecamp* [Dock. No. 196-197]

46. As a proximate result of Defendant's defamatory statements and unlawful conduct, Plaintiff has suffered severe harm and is entitled to actual and punitive damages in an amount to

be proven at trial. Plaintiff also seeks injunctive relief requiring Defendant to remove the defamatory material and posts from her Facebook account.

## COUNT 3: ABUSE OF PROCESS
(September 3, 2020 Declaration)

47. Plaintiff Fredin re-alleges and incorporates by reference paragraphs 1-46 of this Complaint as though fully set forth herein.

48. Defendant filed a September 3, 2020 third-party declaration. *See* Ex. A.; *Fredin v. Middlecamp* [Dock. No. 196-197]

49. Defendant filed the third-party declaration at the summary judgement reply stage to prevent Plaintiff from responding.

50. Defendant did not properly sign the third-party declaration.

51. Defendant actively and knowingly withheld her identity despite being materially aware of *Fredin v. Middlecamp*.

52. Defendant's collateral purpose was designed to stop Plaintiff in his tracks from deposing, cross-examining, or otherwise testing Defendant's false claim.

53. Defendant's collateral purpose was designed to interfere with *Fredin v. Middlecamp* and place Plaintiff in the constitutionally untenable position where he could not confront Defendant Kreil or investigate her accusations.

54. Defendant's collateral purpose was designed to dismiss lawsuits in *Fredin v. Middlecamp* and *Fredin v. Miller* in favor of her personal friends or colleagues e.g., Middlecamp, Miller, and Schaefer.

55. Defendant's collateral purpose was designed to dismiss lawsuits in *Fredin v. Middlecamp* and *Fredin v. Miller* to limit Defendant Kreil's own legal liability.

56. Defendant enjoys no privilege concerning these statements.

57.     As a proximate result of the abuse of process, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## COUNT 4: FRAUD

58.     Plaintiff Fredin re-alleges and incorporates by reference paragraphs 1-57 of this Complaint as though fully set forth herein.

59.     Defendant filed a September 3, 2020 third-party declaration. *See* Ex. A.; *Fredin v. Middlecamp* [Dock. No. 196-197]

60.     Defendant failed to properly authenticate her declaration.

61.     Defendant intentionally filed her declaration to improperly circumvent discovery procedures.

62.     Defendant represented her knowingly false allegations as fact at a summary judgement reply stage to deliberately and improperly preclude Plaintiff's response.

63.     Defendant's false allegation was material to the contested claims in *Fredin v. Middlecamp*.

64.     Defendant's false allegation was indirectly material to the contested claims in *Fredin v. Miller*.

65.     Defendant's intent is to solicit the [c]ourt to act on the false declaration by fraudulently dismissing meritorious claims in *Fredin v. Middlecamp* or indirectly and to a lesser extent *Fredin v. Miller*.

## COUNT 5: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

66.     Plaintiff Fredin re-alleges and incorporates by reference paragraphs 1-65 of this Complaint as though fully set forth herein.

67.     Defendant acted in concert with Lindsey Middlecamp to publish a false rape allegation on the Twitter account @CardsAgstHrsmt the same day as a false *City Pages* article.

12

68.   Defendant filed a September 3, 2020 third-party declaration revealing her identity. *See* Ex. A.; *Fredin v. Middlecamp* [Dock. No. 196-197]

69.   Defendant filed the third-party declaration at the summary judgement reply stage to prevent Plaintiff from responding.

70.   Defendant actively and knowingly withheld her identity despite being materially aware of *Fredin v. Middlecamp*.

71.   Defendant's outrageous conduct was designed to stop Plaintiff in his tracks from deposing, cross-examining, or otherwise testing Defendant's false claim.

72.   Defendant's outrageous conduct was designed to interfere with *Fredin v. Middlecamp* and place Plaintiff in the constitutionally untenable position where he could not confront Defendant Kreil or investigate her accusations.

73.   Defendant's outrageous conduct was designed to dismiss lawsuits in *Fredin v. Middlecamp* and *Fredin v. Miller* to limit Defendant Kreil's own legal liability.

74.   Defendant has engaged, instigated, and directed a course of extreme and outrageous conduct with the intention of causing, or reckless disregard for causing, emotional distress to Plaintiff, namely the publication and dissemination of patently false and sensational statements about him in concert with Lindsey Middlecamp and to reveal her identity at the summary judgement reply stage to prevent Plaintiff from deposing, cross-examining, or to subpoena her claims.

75.   As a proximate result of Defendant's actions, Plaintiff has suffered, and continues to suffer severe and extreme emotional distress, entitling him to actual and punitive damages, in an amount to be proven at trial.

## ATTORNEY FEES AND COSTS

13

Plaintiff demands reasonable attorney fees, costs, and fees pursuant to 28 U. S. C. §1927.

## JURY TRIAL DEMANDED

Plaintiff demands a jury on all issues which may be properly tried by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Fredin prays that the Court:

a. Enter judgment in favor of Plaintiff Fredin against Defendant Kreil;

b. Enter judgment awarding Plaintiff Fredin compensatory damages on all counts herein to compensate Plaintiff Fredin for Defendant Kreil's activity complained of herein and for any injury complained of herein, inclusive of interest and costs, in an amount to be determined at trial;

c. Enter judgment awarding punitive, exemplary, enhanced and/or treble damages as allowed by applicable state and federal law in an amount to be determined at trial;

d. Enter judgment awarding Plaintiff Fredin his fees and costs reasonably incurred in this action as allowed by applicable state and federal law; and

e. Order such other relief that the Court deems just and appropriate.

Dated: September 10, 2020
Saint Croix Co., WI

s/ Brock Fredin
Brock Fredin
Saint Croix Co., WI 54016
(612) 424-5512 (tel.)
brockfredinlegal@gmail.com
*Plaintiff, Pro Se*