# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

Brock Fredin,

      Plaintiff,

      v.

Jamie Kreil,

      Defendant.

Case No. 0:20-cv-01929-SRN-HB

**MEMORANDUM OF LAW IN SUPPORT OF JAMIE KRIEL'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND TO DESIGNATE BROCK FREDIN A VEXATIOUS LITIGANT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 3

LEGAL STANDARD ................................................................................................ 7

ARGUMENT ............................................................................................................. 8

   I)     Fredin's claims related to Kreil's 2017 Facebook post are time-barred. ..... 8

   II)    Fredin's claims related to Kreil's declaration are barred by the absolute
          litigation privilege. ......................................................................................... 12

   III)   Fredin's claims for fraud, abuse of process, and IIED fail for the same
          reasons the Court has dismissed his claims in prior lawsuits. ................. 17

        A) Fredin fails to allege a viable abuse of process claim. ......................... 17

        B) Fredin's fraud claim fails because Fredin fails to plead that *he* relied
            on the allegedly false statements at issue. ............................................... 21

        C) Fredin's IIED claim fails because he does not allege sufficiently
            outrageous conduct ..................................................................................... 22

   IV)   The Court should designate Fredin a vexatious litigant. ........................... 23

CONCLUSION ........................................................................................................ 31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)................................................................7

*City of Shorewood v. Johnson*,
  No. CIV. 11-374 JRT/JSM, 2012 WL 695855 (D. Minn. Mar. 5,
  2012) .....................................................................................23

*Collins v. Johnson*,
  374 N.W.2d 536 (Minn. Ct. App. 1985) ......................................12

*Eclipse Architectural Grp., Inc. v. Lam*,
  814 N.W.2d 692 (Minn. 2012)..................................................19

*Ernst v. Hinchliff*,
  129 F. Supp. 3d 695 (D. Minn. 2015), *aff'd*, 652 F. App'x 479 (8th
  Cir. 2016)................................................................................9

*Eubank v. Kansas City Power & Light Co.*,
  626 F.3d 424 (8th Cir. 2010) ...................................................15

*Fredin v. City Pages et al.*,
  Case No. 0:19-cv-00472 (D. Minn.)..........................................4, 5, 9, 26

*Fredin v. City Pages*,
  No. 19-CV-472, 2020 WL 3064721 (D. Minn. May 19, 2020), *report
  and recommendation adopted*, No. CV 19-472 (DWF/TNL), 2020 WL
  3062537 (D. Minn. June 9, 2020) ..............................................9

*Fredin v. Clysdale et al.*,
  Case No. 0:18-cv-00510 (D. Minn.)...........................................4, 5, 25

*Fredin v. Clysdale*,
  No. 18-CV-0510 (SRN/HB), 2018 WL 7020186 (D. Minn. Dec. 20,
  2018), *report and recommendation adopted*, No. 18-CV-0510
  (SRN/HB), 2019 WL 174949 (D. Minn. Jan. 10, 2019) ...............17, 18, 20, 21

*Fredin v. Halberg Criminal Defense et al.,*
   Case No. 0:18-cv-02514 (D. Minn.).....................................................................4, 25

*Fredin v. Halberg Criminal Defense et al.,*
   Case No. 0:19-cv-03068 (D. Minn.).....................................................................4, 27

*Fredin v. Middlecamp,*
   Case No. 0:17-cv-03058 (D. Minn. Oct. 29, 2019) ......2, 3, 4, 5, 6, 11, 12, 24, 25, 29

*Fredin v. Middlecamp,*
   No. 0:17-cv-3058-SRN-HB, 2018 WL 4616456 (D. Minn. Sept. 26,
   2018) ................................................................................................................18, 19, 20

*Fredin v. Miller,*
   Case No. 0:19-cv-02907(D. Minn.).......................................................................4, 26

*Fredin v. Miller et al.,*
   Case No. 0:18-cv-00466 (D. Minn.)..................................................................4, 5, 24

*Fredin v. Miller et al.,*
   Case No. 0:19-cv-03051 (D. Minn.)...................................................................4, 26, 27

*Fredin v. Miller,*
   No. 19-cv-3051 (SRN/HB), 2020 WL 3077708 (D. Minn. June 10,
   2020) .....................................................................................18, 19, 20, 21, 23

*Fredin v. Olson et al.,*
   Case No. 0:18-cv-02911 (D. Minn.)...................................................................4, 25, 26

*Fredin v. Street et al.,*
   0:19-cv-02864 (D. Minn.)............................................................................................4

*Fredin v. Street,*
   No. 19-CV-2864 (SRN/HB), 2020 WL 1277507 (D. Minn. Feb. 5,
   2020), *report and recommendation adopted*, No. 19-CV-2864
   (SRN/HB), 2020 WL 1277529 (D. Minn. Mar. 17, 2020) ...............................26, 27

*Fredin v. Street et al.,*
   0:19-cv-02864 (D. Minn. Nov. 8, 2019)....................................................................26

*Freier v. Indep. Sch. Dist. No. 197,*
   356 N.W.2d 724 (Minn. Ct. App. 1984) ..................................................................13

*Hubbard v. United Press Int'l, Inc.*,
    330 N.W.2d 428 (Minn. 1983).................................................................... 22

*In re Tyler*,
    839 F.2d 1290 (8th Cir. 1988) ............................................................... 3, 23

*Issaenko v. University of Minnesota*,
    No. 13-cv-3605, 2016 WL 8198306 (D. Minn. Jan. 25, 2016) ................. 13

*Iyorbo v. Quest Int'l Food Flavors & Food Ingredients Co.*,
    No. CIV. 03-5276, 2003 WL 22999547 (D. Minn. Dec. 19, 2003) ......................... 23

*Jeffers v. Convoy Co.*,
    636 F. Supp. 1337 (D. Minn. 1986)........................................................... 22

*Johnson v. Soo Line R. Co.*,
    463 N.W.2d 894 (Minn. 1990).................................................................. 11

*Johnson v. Winthrop Labs. Div. of Sterling Drug, Inc.*,
    291 Minn. 145 (1971) .................................................................... 2, 9, 10

*Kaufmann v. Sheehan*,
    707 F.2d 355 (8th Cir. 1983) ...................................................................... 8

*Langeslag v. KYMN Inc.*,
    664 N.W.2d 860 (Minn. 2003)................................................................. 22

*Mahoney & Hagberg v. Newgard*,
    712 N.W.2d 215 (Minn. Ct. App. 2006) .......................................... 15, 17

*Mahoney & Hagberg v. Newgard*,
    729 N.W.2d 302 (Minn. 2007)....................................... 2, 3, 13, 14, 15, 16

*Microsoft Corp. v. Ion Techs. Corp.*,
    No. CIV 05-1935 JNE/SRN, 2006 WL 2085429 (D. Minn. July 25,
    2006) ....................................................................................................... 20

*Miller v. Fredin*,
    No. A16-0613, 2017 WL 280974 (Minn. Ct. App. Jan. 23, 2017) ......................... 30

*Pinto v. Internationale Set, Inc.*,
    650 F. Supp. 306 (D. Minn. 1986)............................................................ 14

*Powers v. City of Ferguson*,
   229 F. Supp. 3d 894 (E.D. Mo. 2017) ...................................................... 4

*Sanchez v. State*,
   816 N.W.2d 550 (Minn. 2012) ................................................................ 9

*Sassower v. Carlson*,
   930 F.2d 583 (8th Cir. 1991) ................................................................ 28

*Shepard v. TheHuffingtonPost.com, Inc.*,
   No. CIV. 12-cv-1513, 2012 WL 5584615 (D. Minn. Nov. 15, 2012),
   *aff'd*, 509 F. App'x 556 (8th Cir. 2013) .................................................. 8

*Sierra Club v. Clinton*,
   689 F. Supp. 2d 1147 (D. Minn. 2010) .................................................... 8

*Stayton v. Mower Cty. Sheriff Office*,
   No. 19-CV-1294, 2020 WL 736683 (D. Minn. Jan. 29, 2020), *report
   and recommendation adopted*, No. CV 19-1294 (DWF/TNL), 2020
   WL 733105 (D. Minn. Feb. 13, 2020) .................................................... 28

*Summerhill v. Terminix, Inc.*,
   637 F.3d 877 (8th Cir. 2011) ................................................................ 10

*Thunander v. Uponor, Inc.*,
   887 F. Supp. 2d 850 (D. Minn. 2012) .................................................... 10

*Valspar Refinish, Inc. v. Galord's, Inc.*,
   764 N.W.2d 359 (Minn. 2009) .............................................................. 21

*Westley v. Bryant*,
   No. 14-CV-5002, 2015 WL 2242161 (D. Minn. May 12, 2015) ............ 27, 28, 29, 30

*Wiita v. City of Minneapolis*,
   No. C0-95-2609, 1996 WL 250550 (Minn. Ct. App. May 14, 1996) ...................... 23

*Wild v. Rarig*,
   302 Minn. 419 (1975) ............................................................... 10, 11, 12

*Williamson v. Harden*,
   214 W. Va. 77 (2003) ......................................................................... 19

**Statutes**

Minn. Stat. § 541.07(1) ................................................................................. 2, 8

**Rules**

L. R. 7.1(b)(2) ............................................................................................... 22

Jamie Kreil hereby moves to dismiss the Complaint filed by Brock Fredin pursuant to Federal Rule of Civil Procedure 12(b)(6) and to designate Fredin a vexatious litigant, and states as follows in support.

## INTRODUCTION

In February of 2017, several women spoke out about Brock Fredin's sexually abusive behaviors ranging from stalking to rape. This case marks the eleventh meritless *pro se* lawsuit Fredin has filed in this Court concerning that subject matter. Fredin has sued everyone whose name he associates with the allegations—often more than once—including his accusers, the news media, judges, prosecutors, and his own former attorneys, frequently bringing claims similar to those he asserts here. This Court has dismissed all of his lawsuits but two, in which the defendants recently moved for summary judgment after Fredin failed to take any discovery whatsoever. Fredin's Complaint in this case is, if anything, more deficient than in the others. The Court should dismiss it and end this stream of vindictive litigation by declaring Fredin a vexatious litigant.

Fredin's latest target, Jamie Kreil, stated in a public Facebook post dated February 22, 2017 that Fredin had raped her seven years earlier. That post has since featured prominently in several of Fredin's lawsuits against third parties. On September 3, 2020, upon request, Kreil allowed the defendant in one of those cases to submit her declaration in support of a motion for summary judgment.

1

Fredin filed a hastily drafted Complaint against Kreil just one week later. The claims set out in that Complaint—which relate to Kreil's 2017 Facebook post and recent declaration in this Court—fail as a matter of law.

First, all of Fredin's claims concerning the 2017 Facebook post are time-barred. *See* Minn. Stat. § 541.07(1). Apparently recognizing as much, Fredin contends that the limitations period for these claims should be tolled because he "did not discover [Kreil's] identity" prior to her September 3, 2020 declaration, despite his "due diligence." *See* Am. Compl. ¶¶ 13, 43-45. But Minnesota law holds that, due diligence or not, "such ignorance does not toll statutes of limitations." *Johnson v. Winthrop Labs. Div. of Sterling Drug, Inc.*, 291 Minn. 145, 151 (1971). Regardless, Fredin indisputably failed to exercise ordinary diligence in seeking out Kreil's identity. Indeed, this Court has already found that Fredin's failure to diligently pursue that information—despite its clear relevance to Fredin's many lawsuits in this Court—is "hard[ ] to explain," as the need to do so would be "apparent to the least sophisticated litigant." Order at 9, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Oct. 29, 2019).

Moreover, Fredin's claims related to Kreil's declaration fail because the declaration is subject to the absolute privilege that applies under Minnesota law to "[v]oluntary witness testimony given in . . . [an] affidavit." *Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, 306 (Minn. 2007). The privilege applies not only to

2

defamation, but also to "claims sounding in defamation—that is claims where the injury stemmed from and grew out of the defamation." *Id.* at 309. Fredin's claims concerning Kreil's declaration all fall firmly into that category. And even if the declaration was not absolutely privileged, each of Fredin's claims related to it share the same defects that have led this Court to dismiss most of Fredin's prior complaints for failure to state a claim.

Fredin has spent three years filing lawsuit after meritless lawsuit in this Court. He has not only wasted the Court's time and resources, he has misused its power to harass women like Kreil and others. At this point, Fredin has filed 11 such lawsuits. There is little doubt that, absent an order from this Court, there will be a twelfth. In addition to dismissing Fredin's Complaint with prejudice, the Court should "place reasonable restrictions on" Fredin's ability to file future actions given his history of "fil[ing] non-meritorious actions for obviously malicious purposes and . . . generally abus[ing] judicial process." *In re Tyler*, 839 F.2d 1290, 1293 (8th Cir. 1988).

## BACKGROUND

On February 22, 2017, Kreil wrote a social media post on Facebook stating that Fredin had raped her. *See* Am. Compl. Ex. A. A third party, Lindsey Middlecamp, shared an image of Kreil's post (with Kreil's name redacted) through Twitter later that day. *Id.* ¶ 12; *see also* Compl. ¶ 13, *Fredin v. Middlecamp*,

3

Case No. 0:17-cv-03058 (D. Minn. July 18, 2017). Five months later, on July 18, 2017, Fredin filed the first of his lawsuits in this Court against Middlecamp. *See* Compl., *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. July 18, 2017).[1] His complaint alleged that Kreil's Facebook post and similar allegations about him Middlecamp shared via Twitter were false and defamatory. *See id.* ¶ 13.

Fredin then proceeded to file *nine* additional lawsuits in this Court based on the same or related subject matter, as discussed further in Section IV. Most named Middlecamp, two other women whose allegations Middlecamp shared via Twitter, or both.[2] Other targets included Minnesota state court judges and court personnel,[3] prosecutors,[4] a police officer,[5] a prominent local law firm,[6] attorneys for Fredin's accusers,[7] Fredin's own attorneys,[8] a newspaper,[9] and a

---

[1] "The Court may properly consider public records, including court records, on a motion to dismiss." *Powers v. City of Ferguson*, 229 F. Supp. 3d 894, 899 (E.D. Mo. 2017) (citing *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)).

[2] *See Fredin v. Miller et al.*, Case No. 0:18-cv-00466 (D. Minn.); *Fredin v. Clysdale et al.*, Case No. 0:18-cv-00510 (D. Minn.); *Fredin v. Street et al.*, 0:19-cv-02864 (D. Minn.); *Fredin v. Miller*, Case No. 0:19-cv-02907(D. Minn.); *Fredin v. Miller et al.*, Case No. 0:19-cv-03051 (D. Minn.).

[3] *See Fredin v. Clysdale et al.*, Case No. 0:18-cv-00510 (D. Minn.); *Fredin v. Street et al.*, 0:19-cv-02864 (D. Minn.).

[4] *See Fredin v. Olson et al.*, Case No. 0:18-cv-02911 (D. Minn.).

[5] *See Fredin v. Clysdale et al.*, Case No. 0:18-cv-00510 (D. Minn.).

[6] *See Fredin v. Miller et al.*, Case No. 0:19-cv-03051 (D. Minn.).

[7] *See id.*

[8] *See Fredin v. Halberg Criminal Defense et al.*, Case No. 0:18-cv-02514 (D. Minn.); *Fredin v. Halberg Criminal Defense et al.*, Case No. 0:19-cv-03068 (D. Minn.).

[9] *See Fredin v. City Pages et al.*, Case No. 0:19-cv-00472 (D. Minn.).

reporter.[10] Each lawsuit related to or stemmed from Middlecamp's social media posts, and several specifically referenced Kreil's 2017 Facebook post.[11]

During the period that Fredin filed and litigated these serial lawsuits, he was convicted of violating a restraining order obtained against him by one of the women he repeatedly sued. *See* Mem. at 9-10, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Oct. 24, 2019). Fredin thus was incarcerated from October 17, 2018 to June 12, 2019. *Id*. But Fredin's first case against Middlecamp proceeded apace, with Fredin participating from prison until his release. *See* Order at 7, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Oct. 29, 2019). The Court ultimately dismissed Fredin's claim for abuse of process as deficiently pled. *See* Order, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Sept. 26, 2018). The discovery period for Fredin's other claims closed on September 30, 2019 without Fredin taking any timely discovery. *See* Order at 4, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Oct. 29, 2019).

Fredin filed a motion to extend the deadline the day discovery closed, which the Court denied because "Fredin did not show good cause for not even beginning to seek discovery . . . in a timely fashion." *Id.* at 4-5. Fredin then filed

---

[10] *See id*.

[11] *See, e.g.*, Compl. ¶¶ 43, 49, *Fredin v. Miller et al.*, Case No. 0:18-cv-00466 (D. Minn. Feb. 16, 2018); Am. Compl. ¶¶ 84, 88, *Fredin v. Clysdale et al.*, Case No. 0:18-cv-00510 (D. Minn. Mar. 2, 2018); Compl. ¶ 14, *Fredin v. City Pages et al.*, Case No. 0:19-cv-00472 (D. Minn. Feb. 25, 2019).

another motion seeking limited discovery related to Kreil's Facebook post. *See id.* at 5. But the Court again found that Fredin "fail[ed] to show good cause for his failure to commence discovery within the period allotted by the scheduling order." *Id.* at 6. Indeed, the Court noted that his "failure to ask for" information related to Kreil's 2017 Facebook post in particular was "hard[ ] to explain," as the need to do so would have been "apparent to the least sophisticated litigant" given its importance to Fredin's case. *Id.* at 6-7. The Court thus held that because Fredin failed to diligently pursue that information and "'cavalierly disregarded' the Court's Pretrial Scheduling Order not once or twice but repeatedly," he was not entitled to discovery related to Kreil's Facebook post. *Id.* at 9.

On July 23, 2020, Middlecamp filed a motion for summary judgment, arguing that Fredin had failed to take any discovery and thus could not prove his claims. *See* Mem., *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. July 23, 2020). After Fredin opposed, Middlecamp filed a reply brief on September 3, 2020 attaching a short declaration from Kreil concerning her 2017 Facebook post. *See* Compl. Ex. A. Fredin filed a motion to strike the declaration the following day. *See* Mot. to Strike, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Sept. 4, 2020). The motions for summary judgment and to strike remain pending.

One week after Middlecamp filed Kreil's declaration with her reply brief, Fredin filed this lawsuit against Kreil. Shortly thereafter, he filed an Amended

6

Complaint with virtually no substantive changes. Fredin alleges that Kreil "filed a knowingly false third-party declaration" in the *Middlecamp* action, and that she falsely accused Fredin of rape in her 2017 Facebook post. Am. Compl. ¶¶ 10, 12. Fredin further contends that he was unable to learn Kreil's identity prior to the filing of her declaration in the *Middlecamp* action, despite "four (4) things he completed to discover" it: (1) contacting police departments in Hennepin County; (2) "[c]ontact[ing] the records departments within the Minnesota Bureau of Criminal Apprehension"; (3) filing his second motion to take late discovery in the *Middlecamp* action; and (4) "[a]ttempting to engage in lawsuits . . . in hopes of uncovering the underlying knowingly false allegation." *Id.* ¶ 13. He thus "asserts the applicability of equitable tolling as to the underlying statute of limitations" based on this "due diligence." *Id.* Based on the foregoing, Fredin brings claims for defamation, conspiracy to defame, abuse of process, fraud, and intentional infliction of emotional distress (IIED) against Kreil related to her 2017 Facebook post and declaration. *See id.* ¶¶ 26-75.

## LEGAL STANDARD

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In deciding a motion to dismiss

under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant," but "need not accept as true wholly conclusory allegations" or "legal conclusions drawn by the pleader from the facts alleged." *Sierra Club v. Clinton*, 689 F. Supp. 2d 1147, 1154 (D. Minn. 2010). "A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." *Id.*

## ARGUMENT

I)      **Fredin's claims related to Kreil's 2017 Facebook post are time-barred.**

Fredin brings claims for defamation, conspiracy to defame, and IIED based on Kreil's 2017 Facebook post. *See* Am. Compl. ¶¶ 30, 32, 41, 43, 67. The statute of limitations for these claims under Minnesota law is two years. *See* Minn. Stat. § 541.07(1).[12] The limitations period began to run on publication of the Facebook post on February 22, 2017, *see Shepard v. TheHuffingtonPost.com, Inc.*, No. CIV. 12-cv-1513, 2012 WL 5584615, at *2 (D. Minn. Nov. 15, 2012), *aff'd*, 509 F. App'x 556 (8th Cir. 2013), and ran out more than a year ago, on February 22, 2019. These claims are therefore time-barred and must be dismissed. Indeed, Fredin brought

---

[12] Fredin's conspiracy to defame claim is governed by the same statute of limitations as his defamation claim. *See Kaufmann v. Sheehan*, 707 F.2d 355, 356-57 (8th Cir. 1983).

these same claims concerning (in part) the same Facebook post nineteen months ago, *see* Compl. ¶ 14, *Fredin v. City Pages et al.*, Case No. 0:19-cv-00472 (D. Minn. Feb. 25, 2019), and the Court dismissed them as untimely. *See Fredin v. City Pages*, No. 19-CV-472, 2020 WL 3064721, at *6 (D. Minn. May 19, 2020), *report and recommendation adopted*, No. CV 19-472 (DWF/TNL), 2020 WL 3062537 (D. Minn. June 9, 2020). Fredin's claims have not become *less* time-barred since then.\

Apparently recognizing that these claims come too late, Fredin "asserts the applicability of equitable tolling as to the underlying statute of limitations." Am. Compl. ¶ 13. He contends that, while he knew of the 2017 Facebook post, he "did not discover" Kreil's identity "until September 3, 2020," despite the "four (4) things he completed to discover the source." *Id.* ¶¶ 13, 32-34, 43-45. Fredin argues this "due diligence" saves his untimely claims. *Id.* He is wrong.

Minnesota law holds that, due diligence or not, mere "ignorance does not toll statutes of limitations." *Johnson*, 291 Minn. at 151; *see also Ernst v. Hinchliff*, 129 F. Supp. 3d 695, 728 (D. Minn. 2015), *aff'd*, 652 F. App'x 479 (8th Cir. 2016). Even if a plaintiff exercises reasonable diligence, a "plaintiff's lack of knowledge of the cause of action is irrelevant unless the defendant has actively concealed its existence." *Sanchez v. State*, 816 N.W.2d 550, 561 (Minn. 2012). Accordingly, "[c]ourts have no power to extend or modify statutory limitation periods" where, as here, a plaintiff merely tries and fails to timely learn the facts underlying his

9

claim. *Johnson*, 291 Minn. at 151. Fredin is thus incorrect that "[e]quitable tolling applies" because he "did not discover" Kreil's identity "until September 3, 2020," despite his "due diligence." Compl. ¶¶ 13, 32-34; 43-45.

Moreover, while fraudulent concealment of a tort can toll the statute of limitations, Fredin has not pled fraudulent concealment here. For example, Fredin alleges only that Kreil declined to come forward and identify herself. Compl. ¶¶ 14, 24. But under Minnesota law, "mere silence is not sufficient" to plead fraudulent concealment. *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 867 (D. Minn. 2012). Moreover, fraudulent concealment is subject to the heightened pleading standard of Rule 9(b). *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). Fredin fails to plead the necessary "'who, what, when, where, and how.'" *Id.* (quoting *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007)).

In any event, Fredin *cannot* plead fraudulent concealment. The doctrine does not apply if the plaintiff "'knows that a cause of action exists in his favor,'" whether or not the plaintiff "'know[s] the details of the evidence by which to establish his cause of action.'" *Wild v. Rarig*, 302 Minn. 419, 451 (1975) (quoting 54 C.J.S. Limitations of Actions s 206e). Fredin indisputably knew of the 2017 Facebook post and of his potential claims related to it *years* ago. Indeed, he filed several lawsuits concerning that post within the limitations period. *See, e.g.,*

Compl., *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. July 18, 2017).

Fredin alleges only that, because he was ignorant of Kreil's identity, he did not

"'know the details of the evidence by which to establish his cause of action'"

against her specifically. *Wild*, 302 Minn. at 451 (quoting 54 C.J.S. Limitations of

Actions s 206e). The way to "escape the statute of limitations" under such

circumstances is to file a "John Doe pleading" within the limitations period.

*Johnson v. Soo Line R. Co.*, 463 N.W.2d 894, 899 (Minn. 1990). Fredin's

longstanding knowledge of the Facebook post precludes him from pleading

fraudulent concealment and tolling the statute of limitations here.

Finally, Fredin did not act with "due diligence" in seeking Kreil's identity.

Am. Compl. ¶ 13. Indeed, this Court has already held as much. Fredin failed

even to timely ask for that information in litigation he filed centering on Kreil's

2017 Facebook post. *See* Order at 5-7, *Fredin v. Middlecamp*, Case No. 0:17-cv-

03058 (D. Minn. Oct. 29, 2019). The Court found that Fredin's failure to do so was

"hard[ ] to explain," as the need to request that information would have been

"apparent to the least sophisticated litigant." *Id.* at 6-7. Instead of pursuing

Kreil's identity with ordinary diligence, Fredin "'cavalierly disregarded' the

Court's Pretrial Scheduling Order not once or twice but repeatedly." *Id.* at 9. The

Court thus denied Fredin's motion to obtain discovery related to Kreil's identity

out of time—a motion that (incredibly) Fredin relies on in his Complaint as *evidence* of his own "due diligence." *See* Am. Compl. ¶ 13.

Fredin cannot show Kreil's identity "could not have been discovered sooner by reasonable diligence." *Collins v. Johnson,* 374 N.W.2d 536, 541 (Minn. Ct. App. 1985). Fredin was aware of the 2017 Facebook post and had the means to discover its author's identity long ago. As "'he d[id] not avail himself of those means which the law provides for prosecuting or preserving his claim,'" no act of concealment by Kreil or anyone else could have tolled the limitations period. *Wild*, 302 Minn. at 451 (quoting 54 C.J.S. Limitations of Actions s 206e).[13]

## II)   Fredin's claims related to Kreil's declaration are barred by the absolute litigation privilege.

Fredin brings claims for abuse of process, fraud, and IIED based on Kreil's declaration submitted to this Court on September 3, 2020. *See* Am. Compl. ¶¶ 47-65, 68-70; Ex. A. Each is barred by the absolute privilege that applies under

---

[13] It bears noting that Fredin's claim that he did not know Kreil wrote the 2017 Facebook post is demonstrably false, as explained in a recent brief (and not denied by Fredin in his response) filed in the *Middlecamp* action. *See* Opp., *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Sept. 23, 2020). Moreover, as noted in Kreil's declaration (and again not contested in Fredin's Complaint), the 2017 Facebook post has been set to "public" since its publication, meaning that anyone can find and view it. *See* Compl. Ex. A. It is frankly incredible that Fredin claims not to have done so. While Fredin's arguments regarding equitable tolling fail as a matter of law, should the Court hold otherwise, Kreil will seek early summary judgment on the issue prior to full discovery.

Minnesota law to "[v]oluntary witness testimony given in . . . [an] affidavit."

*Newgard*, 729 N.W.2d at 306. Accordingly each must be dismissed with prejudice.

"Statements, even if defamatory, may be protected by absolute privilege in a defamation lawsuit if the statement is (1) made by a judge, judicial officer, attorney, or witness; (2) made at a judicial or quasi-judicial proceeding; and (3) the statement at issue is relevant to the subject matter of the litigation." *Id*. at 306. The privilege applies not just to defamation claims, but to "claims sounding in defamation—that is claims where the injury stemmed from and grew out of the defamation." *Id*. at 309. Claims sound in defamation, for example, when "the basis of [the plaintiff's] complaint is that [the defendant] made false statements when she knew that those statements would harm [the plaintiff]." *Id*. at 310; *see also id.* (finding claims for breach of confidences, invasion of privacy, and civil conspiracy based on a declaration to sound in defamation and applying absolute privilege).[14] The Minnesota Supreme Court has explained that the privilege is broadly construed; "public policy favors the application of absolute privilege

---

[14] *See also Freier v. Indep. Sch. Dist. No. 197*, 356 N.W.2d 724, 733 (Minn. Ct. App. 1984) (holding that "defamation and emotional distress are merely two different labels for the same alleged tort in this case, and that the doctrine of absolute privilege applies with equal force to both claims."); *Issaenko v. University of Minnesota*, No. 13-cv-3605, 2016 WL 8198306, *8 (D. Minn. Jan. 25, 2016) ("When a claim is based on allegedly defamatory statements, regardless of the label of the claim, any privilege that applies to the allegedly defamatory statements applies with equal force to any other claims grounded in the same conduct.").

because absolute privilege seeks to encourage witnesses to participate in judicial proceedings so that the search for truth may be fruitful." *Id.* at 309.

The gravamen of Fredin's abuse of process, fraud, and IIED claims is that Kreil submitted a "knowingly false" declaration reaffirming her own defamatory statements, and in doing so hurt Fredin's defamation lawsuits concerning those statements.[15] With respect to each, his alleged "injury stemmed from and grew out of the defamation." *Id.* at 309. Indeed, these claims are merely a thinly veiled rehash of Fredin's defamation claims against Kreil and Middlecamp. Each boils down to the assertion that Kreil "made false statements when she knew that those statements would harm [Fredin]." *Id.* at 310. "[A] plaintiff cannot elude the absolute privilege by relabeling a claim that sounds in defamation" in this manner. *Pinto v. Internationale Set, Inc.*, 650 F. Supp. 306, 309 (D. Minn. 1986).

Moreover, the absolute privilege would apply to Fredin's claims even if they did not plainly sound in defamation. The Minnesota Court of Appeals in *Newgard* found that "[t]he public policy reasons for applying judicial immunity

---

[15] *See* Compl. ¶¶ 52-55 (for abuse of process, alleging that Fredin was injured because he was prevented from "testing Defendant's false claim" and the Court may "dismiss [his] lawsuits"); *id.* ¶¶ 62-64 (for fraud, alleging that Fredin was injured because Kreil made "knowingly false allegations" that were "material to the contested claims" in his lawsuits); *id.* ¶¶ 70-74 (for intentional infliction of emotional distress, alleging Fredin was injured because he could not "confront" Kreil about "her accusations" and thus the Court may "dismiss [his] lawsuits").

to defamatory communications also apply with equal force to other torts that arise from a person's participation in the judicial process," and dismissed non-defamation claims without finding that they sounded in defamation. *Mahoney & Hagberg v. Newgard*, 712 N.W.2d 215, 220 (Minn. Ct. App. 2006). The Minnesota Supreme Court agreed that "[i]f public policy dictates that testimony by a witness is protected by absolute privilege as against a defamation claim, the same policy may be served through application of the privilege to bar all legal claims based on that same testimony." *Newgard*, 729 N.W.2d at 309. But the Court determined the plaintiff's claims "sound[ed] in defamation," and thus it "need not reach the question of whether absolute privilege applies to claims not sounding in defamation." *Id.* at 310.

If the highest state court "has not addressed an issue" like this one, federal courts "must predict how the court would rule, and . . . follow decisions from the intermediate state courts when they are the best evidence of [state] law." *Eubank v. Kansas City Power & Light Co.*, 626 F.3d 424, 427 (8th Cir. 2010). In *Newgard*, the Minnesota Court of Appeals adopted the view that absolute immunity applies to *all* torts, while the Minnesota Supreme Court expressed approval but found it unnecessary to hold as much to resolve the case. *See* 729 N.W.2d at 310. There is every reason to believe that, if squarely presented with the issue, the Minnesota Supreme Court would adopt this broader formulation of the absolute privilege.

15

Kreil's declaration falls squarely within the absolute privilege. First, the statements in the declaration were "made by a . . . witness" in the course of providing testimony. *Newgard*, 729 N.W.2d at 306. Second, the declaration was part of "a judicial . . . proceeding," offered as evidence in support of a motion for summary judgment in this Court. *Id.* Third, Kreil's statements in the declaration were undeniably "relevant to the subject matter of the litigation," *id.*, as Fredin repeatedly asserts in his Amended Complaint. *See, e.g.*, Am. Compl. ¶¶ 54-55, 63, 73.[16] And no countervailing public policy concerns (such as professional confidentiality obligations) counsel against applying the absolute privilege here. *See Newgard*, 729 N.W.2d at 309. Kreil's declaration is quintessentially the sort of witness testimony that the absolute privilege exists to protect. *See id.* at 308 (noting the "[a]bsolute privilege exists to encourage witnesses to engage in open dialogue without the fear of facing civil liability for their acts"). None of this can come as a surprise to Fredin, as the Court explained to him in a prior opinion dismissing his claims that absolute privilege attaches to such declarations. *See Fredin v. Clysdale*, No. 18-CV-0510 (SRN/HB), 2018 WL 7020186, at *13 (D. Minn.

---

[16] While Kreil's statements would satisfy any standard of relevance, "relevance" in this context means only that "the statement has a connection to the case before the court, keeping in mind that any doubts about the relevance of the statement are resolved in favor of relevancy and pertinency." *Newgard*, 729 N.W.2d at 308.

Dec. 20, 2018), *report and recommendation adopted*, No. 18-CV-0510 (SRN/HB), 2019

WL 174949 (D. Minn. Jan. 10, 2019).

The absolute judicial privilege exists in large part because without it,

"witnesses . . . 'might be deterred by the prospect of subsequent, vexatious

litigation'" from offering testimony. *Newgard*, 712 N.W.2d at 219 (quoting *Briscoe*

*v. LaHue*, 460 U.S. 325, 336 n.15 (1983)). This case proves the wisdom of the rule.

Kreil offered testimony against Fredin, and Fredin retaliated with this meritless

lawsuit. If Fredin's claims are allowed to proceed, who would willingly testify on

Kreil's behalf, knowing that vexatious litigation is sure to follow?

**III)    Fredin's claims for fraud, abuse of process, and IIED fail for the same
reasons the Court has dismissed his claims in prior lawsuits.**

For all of the reasons discussed above, Fredin's claims fail short of any

consideration of the merits. But even beyond the insurmountable hurdles posed

by untimeliness and the absolute litigation privilege, Fredin has not pled viable

claims for fraud, abuse of process, and IIED. Indeed, these claims share the same

defects that have repeatedly led this Court to dismiss Fredin's similar claims in

prior lawsuits. The Court should do the same here.

**A) Fredin fails to allege a viable abuse of process claim.**

To plead an abuse of process claim under Minnesota law, the plaintiff

must allege "(a) the existence of an ulterior purpose, and (b) the act of using the

process to accomplish a result not within the scope of the proceeding in which it

17

was issued, whether such result might otherwise be lawfully obtained or not."

*Fredin v. Middlecamp*, No. 0:17-cv-3058-SRN-HB, 2018 WL 4616456, at *5 (D. Minn.

Sept. 26, 2018). In the last three years, Fredin has brought abuse of process claims

against Middlecamp (three times),[17] the two *Miller* defendants (twice apiece),[18] a

Saint Paul police detective,[19] and a prominent local law firm[20] that this Court has

dismissed for failure to state a claim. Despite having ample opportunities to

practice, Fredin again fails to plead a viable abuse of process claim here.

Fredin's abuse of process claim based on Kreil's declaration, *see* Am.

Compl. ¶¶ 47-57, fails to state a claim for at least four reasons. First, Fredin has

not alleged that Kreil "used" any "process" within the meaning of the tort.

"Process is defined as 'the proceedings in any action or prosecution; a summons

or writ, esp. to appear or respond in court.'" *Miller*, 2020 WL 3077708, at *8

(quoting *Eclipse Architectural Grp., Inc. v. Lam*, 814 N.W.2d 692, 697 (Minn. 2012)).

"'[P]rocess is so denominated because it proceeds or issues forth in order to bring

the defendant into court, to answer the charge preferred against him, and

---

[17] *Middlecamp*, 2018 WL 4616456, at *5; *Clysdale*, 2018 WL 7020186, at *10-11;
*Fredin v. Miller*, No. 19-cv-3051 (SRN/HB), 2020 WL 3077708, at *7-10 (D. Minn.
June 10, 2020).
[18] *Clysdale*, 2018 WL 7020186, at *10-11; *Miller*, 2020 WL 3077708, at *7-10.
[19] *Clysdale*, 2018 WL 7020186, at *10-11.
[20] *Miller*, 2020 WL 3077708, at *7-10.

signifies the writs or judicial means by which he is brought to answer.'" *Eclipse*,

814 N.W.2d at 697 (quoting Black's Law Dictionary 1325 (9th ed. 2009)).

That definition does not encompass the mere proffer of testimony by a

third-party witness. *See, e.g.*, *Williamson v. Harden*, 214 W. Va. 77, 81 (2003)

(explaining that witness testimony cannot support an abuse of process claim

because it "d[oes] not cause any process to issue, d[oes] not file any suit or

complaint, and d[oes] not request a court to take any action, whatsoever"). Kreil

is not a party to the *Middlecamp* action, and did not—indeed, *could* not—use those

proceedings to "issue[ ]" any "process," whether with an ulterior motive or

otherwise. *Middlecamp*, 2018 WL 4616456, at *5; *Cf. Miller*, 2020 WL 3077708, at

*10 (dismissing Fredin's similar abuse of process claim in a prior suit in part

because the "[d]efendants ha[d] no authority to bring criminal proceedings

against Fredin, and could not have done so").

Second, Fredin has not pled that Kreil attempted to "accomplish a result"

outside "the scope of the proceeding." *Middlecamp*, 2018 WL 4616456, at *5.

Fredin alleges only that Kreil offered testimony in an effort to end his lawsuit

against Middlecamp through summary judgment. Am. Compl. ¶¶ 52-55.[21] This

potential consequence of Kreil's declaration falls squarely *within* "the scope of

---

[21] Fredin indicates that the impact of Kreil's declaration extends to the *Miller* action as well. Compl. ¶¶ 52-55. It is unclear why, as Kreil's declaration was not filed in that case. This contention is wrong as a matter of law.

the proceeding." *Middlecamp*, 2018 WL 4616456, at *5. Accordingly, this claim fails for the same reasons explained by this Court in dismissing other of Fredin's abuse of process claims. *See, e.g.*, *Miller*, 2020 WL 3077708, at *7-10 (dismissing Fredin's abuse of process claim in part because the defendants "used the civil legal process to obtain an HRO against Fredin," which "was not outside the bounds of the civil proceedings").

Third, Fredin has pled mere "conclusory allegations" as to Kreil's ulterior purposes, which, without supporting factual allegations, cannot sustain a claim. *Microsoft Corp. v. Ion Techs. Corp.*, No. CIV 05-1935 JNE/SRN, 2006 WL 2085429, at *6 (D. Minn. July 25, 2006). Here, Fredin supplies only bald assertions that Kreil acted with ulterior motives. This is insufficient, as this Court has explained to Fredin more than once in dismissing his other abuse of process claims for the same reason. *Middlecamp*, 2018 WL 4616456, at *5; *see also Clysdale*, 2018 WL 7020186, at *10-11.

Lastly, Fredin was required to plead the alleged abuse of process caused him injury either to "person or property." *Clysdale,* 2018 WL 7020186, at *10. He has failed to do this too, aside from another conclusory allegation. Am. Compl. ¶ 57. Nor could he plead as much at this point, as the Court has not yet ruled on the motion in support of which Middlecamp submitted Kreil's declaration.

**B) Fredin's fraud claim fails because Fredin fails to plead that *he* relied on the allegedly false statements at issue.**

Fredin contends that Kreil defrauded him when she "filed a September 3, 2020 third-party declaration," in which she made "knowingly false allegations as fact." Compl. ¶¶ 59, 62. As this Court explained in dismissing previous fraud claims brought by Fredin, this "fraudulent misrepresentation . . . claim fails because he does not allege, nor can a reasonable inference be drawn from his allegations, that he relied on any of the allegedly false statements." *Clysdale*, 2018 WL 7020186, at *11; *see also Miller*, 2020 WL 3077708, at *12 (dismissing Fredin's fraud claim because he had "not alleged that in making the[ ] allegedly false [statements], [the defendant] did so in order to induce Fredin to rely upon them," and "if he had, such an allegation would be implausible"). He instead alleges that Kreil's "intent [wa]s to solicit *the [C]ourt* to act on the false declaration." Compl. ¶ 65 (emphasis added). This is insufficient, as Fredin must surely know by now. In any event, Fredin cannot plead that he suffered damages at this point, as the Court has yet to rule on Middlecamp's motion for summary judgment. *See Valspar Refinish, Inc. v. Galord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009) (elements of fraud include "that [the plaintiff] suffered pecuniary damages").

21

**C) Fredin's IIED claim fails because he does not allege sufficiently outrageous conduct.**

To plead a claim for IIED, "the conduct [alleged] must be extreme and outrageous." *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003). With respect to Kreil's conduct in the *Middlecamp* litigation, Fredin's allegations fail to meet that high bar.

Conduct is "extreme and outrageous" only if it is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 439 (Minn. 1983); *Cf. Jeffers v. Convoy Co.*, 636 F. Supp. 1337, 1342-43 (D. Minn. 1986) (listing examples of extreme and outrageous behavior including "mutilating a corpse" and "threatening a school girl with prison and public disgrace unless she signed a confession of immoral conduct."). Fredin contends that Kreil "filed [a] third-party declaration at the summary judgement reply stage to prevent Plaintiff from responding," and "actively and knowingly withheld her identity despite being materially aware of *Fredin v. Middlecamp*." Compl. ¶¶ 71-72. With respect to the former, the Court's Local Rules expressly contemplate the filing of declarations with summary judgment reply briefs. *See* 1999 Advisory Committee's Note to LR 7.1(b)(2). Even if a litigant were to submit such a declaration when not authorized by the Local Rules, it is hard to see how doing so could be "utterly intolerable to the civilized community.'" *Hubbard*, 330 N.W.2d at 439.

22

The same is true of Kreil's alleged failure to notify Fredin of her identity. A claim for intentional infliction of emotional distress requires the plaintiff to plead the defendant *did something*, and will not lie where the plaintiff alleges only that the defendant "did nothing." *Wiita v. City of Minneapolis*, No. C0-95-2609, 1996 WL 250550, at *2 (Minn. Ct. App. May 14, 1996). No Minnesota authority supports the proposition that Kreil's alleged conduct here meets the "deliberately high standard" necessary to sustain such a claim. *Iyorbo v. Quest Int'l Food Flavors & Food Ingredients Co.*, No. CIV. 03-5276, 2003 WL 22999547, at *2 (D. Minn. Dec. 19, 2003); *see also Miller*, 2020 WL 3077708, at *13 (dismissing Fredin's three IIED claims in a prior case for failure to allege "extreme and outrageous" conduct).

**IV)  The Court should designate Fredin a vexatious litigant.**

"'Defendants have a right to be free from harassing, abusive, and meritless litigation,'" and thus "'[f]ederal courts have a clear obligation to exercise their authority to protect litigants from such behavior.'" *In re Tyler*, 839 F.2d at 1293 (quoting *People of the State of Colorado v. Carter*, 678 F. Supp. 1484, 1486 (D. Colo. 1986)). To that end, "[f]ederal courts have the inherent power to impose sanctions to regulate their dockets, promote judicial efficiency, and deter frivolous filings." *City of Shorewood v. Johnson*, No. CIV. 11-374 JRT/JSM, 2012 WL 695855, at *4 (D. Minn. Mar. 5, 2012). Fredin has filed 11 meritless lawsuits in this

23

Court over the course of just three years, repeatedly bringing the same sorts of claims against the same defendants concerning the same subject matter. This stream of harassing litigation must end. The Court should designate Fredin a vexatious litigant and add his name to the Court's list of restricted filers.

A brief history of Fredin's litigation in this Court demonstrates the need for such an order. Fredin's first two cases, *Fredin v. Middlecamp*, No. 0:17-cv-03058, and *Fredin v. Miller et al.*, No. 0:18-cv-00466, are the only actions he has filed in this Court to proceed to discovery. But Fredin did not pursue discovery in either. He "'cavalierly disregarded' the Court's Pretrial Scheduling Order not once or twice but repeatedly," and made no serious effort to prove up his claims. Order at 9, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Oct. 29, 2019).

Instead, Fredin put his energy into harassing filings, such as a "frivolous" sanctions motion wherein Fredin accused the defendants of "tortur[ing], kidnapp[ing], and assault[ing]" him, *see* Order at 3, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. May 18, 2020), and rambling letters demanding apologies from the Court for ruling against him. Letter at 2, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. June 29, 2020). When faced with a motion for summary judgment based on his failure to take discovery, Fredin responded with an opposition composed largely of *ad hominem* attacks on the defendants, their counsel, and the Court. *See, e.g.*, Opp. at 3-6, *Fredin v. Middlecamp*, Case No.

24

0:17-cv-03058 (D. Minn. Aug. 21, 2020). He further stated that he had "reached the peaceful Constitutionally protected vigilante stage," and would "simply exercise his rights to engage in peaceful constitutionally protected protest" should the Court rule against him in the future. *Id.* at 6.

The *Middlecamp* and *Miller* cases are Fredin's most successful in this Court. The *eight* lawsuits Fredin filed after them concerning the same and related subject matter have all been dismissed at the pleading stage. In brief:

- *Fredin v. Clysdale et al.*, Case No. 0:18-cv-00510 (D. Minn. Feb. 22, 2018): Fredin again filed suit against Middlecamp and the two *Miller* defendants, adding a police officer and court official involved in the restraining orders Middlecamp and the *Miller* defendants obtained against him. A week later, Fredin filed a 100-page amended complaint adding two Minnesota state court judges and another court official. The complaint concerned the restraining orders, as well as the same social media posts at issue in the *Middlecamp* and *Miller* actions, and brought many of the same sorts of claims Fredin asserts here. The Court dismissed the complaint for failure to state claim. *See* Order, *Fredin v. Clysdale et al.*, Case No. 0:18-cv-00510 (D. Minn. Feb. 21, 2019).

- *Fredin v. Halberg Criminal Defense et al.*, Case No. 0:18-cv-02514 (D. Minn. Aug. 27, 2018): Fredin sued the attorneys who represented him in the above restraining order proceedings, as well as in two contempt hearings at which Fredin was found to have violated those restraining orders. The Court dismissed the case for failure to prosecute. *See* Order, *Fredin v. Halberg Criminal Defense et al.*, Case No. 0:18-cv-02514 (D. Minn. Feb. 25, 2019).

- *Fredin v. Olson et al.*, Case No. 0:18-cv-02911 (D. Minn. Oct. 11, 2018): Fredin sued the Saint Paul City Attorney's Office and the attorney who prosecuted his violations of the above restraining orders. He further alleged a conspiracy between the government, Middlecamp, and the *Miller* defendants involving the social media posts at issue

in the other cases. The Court denied Fredin's request to proceed *in forma pauperis* and dismissed the complaint *sua sponte* for failure to state a claim. Order, *Fredin v. Olson et al.*, Case No. 0:18-cv-02911 (D. Minn. Mar. 7, 2019).

- *Fredin v. City Pages et al.*, Case No. 0:19-cv-00472 (D. Minn. Feb. 25, 2019): Fredin sued a publication and reporter responsible for a news article concerning allegations of stalking against him, accusing the defendants of fabricating and "soliciting" false allegations, including Kreil's 2017 Facebook post. The Court dismissed Fredin's complaint as untimely, but declined the defendants' request to designate Fredin a vexatious litigant because "at th[at] point, Fredin's conduct ha[d] not risen to the level that justifie[d] placement on the District's restricted filer list." Report and Recommendations at 19, *Fredin v. City Pages et al.*, Case No. 0:19-cv-00472 (D. Minn. May 19, 2019).

- *Fredin v. Street et al.*, 0:19-cv-02864 (D. Minn. Nov. 8, 2019): Fredin again sued Middlecamp, adding the judge and referee who presided over proceedings related to Middlecamp's restraining order against him. The allegations again concerned the social media posts at issue in *Middlecamp* and *Miller*, as well as state court proceedings during which Fredin was found to have violated the restraining order. The Court again dismissed Fredin's complaint for failure to state a claim, and again declined to designate Fredin as a vexatious litigant "*at th[at] time.*" *Fredin v. Street*, No. 19-CV-2864 (SRN/HB), 2020 WL 1277507, at *3 (D. Minn. Feb. 5, 2020) (emphasis in original), *report and recommendation adopted*, No. 19-CV-2864 (SRN/HB), 2020 WL 1277529 (D. Minn. Mar. 17, 2020).

- *Fredin v. Miller*, Case No. 0:19-cv-02907 (D. Minn. Nov. 14, 2019): Fredin attempted to remove state court restraining order proceedings related to one of the *Miller* defendants to this Court after the Minnesota Supreme Court declined review of his appeal. Fredin ultimately voluntarily dismissed the case. *See* Order, *Fredin v. Miller*, Case No. 0:19-cv-02907 (D. Minn. Feb. 6, 2020).

- *Fredin v. Miller et al.*, Case No. 0:19-cv-03051 (D. Minn. Dec. 9, 2019): Fredin again sued Middlecamp and the two *Miller* defendants, the law firm of Dorsey and Whitney LLP, and two attorneys practicing at that firm. The Complaint concerned Fredin's prison sentence for

violating one of the restraining orders against him. The Court again dismissed Fredin's Complaint for failure to state a claim, noting Fredin had brought a number of the same claims against the same defendants that the Court had dismissed in prior cases. *See* Order, *Fredin v. Miller et al.*, Case No. 0:19-cv-03051 (D. Minn. June 10, 2019).

- *Fredin v. Halberg Criminal Defense et al.*, Case No. 0:19-cv-03068 (D. Minn. Dec. 11, 2019): Fredin again sued the law firm that defended him in the restraining order proceedings discussed above. The Court again dismissed Fredin's Complaint for failure to state a claim. *See* Order, *Fredin v. Halberg Criminal Defense et al.*, Case No. 0:19-cv-03068 (D. Minn. May 27, 2020).

This case, the *eleventh* in the saga, is proof that Fredin's pattern of abusive litigation will continue absent court intervention. The Court has twice denied requests to declare Fredin a vexatious litigant, but recently indicated the balance was close to tipping the other way. *See Street*, 2020 WL 1277507, at *3. Kreil respectfully submits that if the issue was a close one before, it should not be now.

"In determining whether a filing injunction is warranted, courts consider the following factors: (1) the party's history of litigation, particularly whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had an objectively good faith basis for pursuing the litigation; (3) whether the party has caused needless expense to other parties or has posed an unnecessary burden on the courts; and (4) whether other sanctions would adequately protect the court and other parties." *Westley v. Bryant*, No. 14-CV-5002, 2015 WL 2242161, at *10 (D. Minn. May 12, 2015). Each factor weighs heavily in favor of designating Fredin a vexatious litigant and adding him to the Court's list of restricted filers.

First, Fredin has filed 11 "vexatious, harassing, or duplicative lawsuits," *id.*, in this Court over the course of just three years. The Court has dismissed all of his cases on the pleadings but two, in which Fredin failed to pursue discovery and instead dedicated his energy to harassing filings denigrating the litigants and the Court. This Court has designated individuals as vexatious litigants based on records far less impressive than this. *See, e.g.*, *id.* (five meritless cases in under five years); *Stayton v. Mower Cty. Sheriff Office*, No. 19-CV-1294, 2020 WL 736683, at *4 (D. Minn. Jan. 29, 2020), *report and recommendation adopted*, No. CV 19-1294 (DWF/TNL), 2020 WL 733105 (D. Minn. Feb. 13, 2020) (four meritless lawsuits in four years); *Sassower v. Carlson*, 930 F.2d 583, 584 (8th Cir. 1991) (two duplicative and meritless suits in one year).

Second, Fredin lacked an "objective[ ] good faith basis for pursuing the litigation" in this case and others. *Westley*, 2015 WL 2242161, at *10. As discussed above, Fredin's claims here fail for the same reasons the Court has articulated in previous orders dismissing Fredin's serial complaints. And this is not the first time Fredin has filed claims he should have known would fail. One does not, for example, sue state court judges over their rulings *twice* with any reasonable expectation of success. While Fredin is proceeding *pro se* here, he cannot at this point hide behind that status to avoid the consequences of his actions. As this Court has observed, over the course of the many lawsuits Fredin has filed in this

Court he has shown that he is a "shrewd and sophisticated litigant" with "a firm grasp of both procedural and substantive law." Order at 6, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. May 18, 2020). Fredin can thus no longer "use his unrepresented status as a shield or, for that matter, a sword." *Id.*

Third, Fredin has "caused needless expense to other parties [and] has posed an unnecessary burden on the courts." Westley, 2015 WL 2242161, at *10. Fredin has generated an incredible amount of litigation in a very short time, suing at least 21 defendants through 11 lawsuits over the course of just three years. His filings in these cases have at times stretched 100 pages, bringing as many as 20 separate claims in a single complaint. Defending these lawsuits has required extensive motions practice even when they have been dismissed at the pleading stage. And in the *Middlecamp* and *Miller* actions, the only cases Fredin has filed to have proceeded beyond that stage, bogged down the parties and the Court with "frivolous" filings. *See, e.g.*, Order at 3, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. May 18, 2020).[22]

Finally, no "other sanctions would adequately protect the court and other parties." *Westley*, 2015 WL 2242161, at *10. Fredin has filed lawsuit after lawsuit against the women who spoke out against him. Indeed, he has gone further than

---

[22] Notably, Fredin has apprised counsel for Kreil that he may soon continue this pattern by filing three motions in this case, including a motion to disqualify counsel, that seem likely to be frivolous based on Fredin's descriptions.

29

that, mounting a campaign of extrajudicial harassment against those women that has at times jeopardized their "safety and privacy," resulting in his incarceration. *Miller v. Fredin*, No. A16-0613, 2017 WL 280974, at *3 (Minn. Ct. App. Jan. 23, 2017). Now that Fredin has confirmed Kreil's identity as the author of the 2017 Facebook post, it is hard to believe that Kreil can expect any different. Fredin's deluge of litigation would pose a tremendous burden on any defendant. His deliberate use of the Court has an instrument of intimidation and harassment against Kreil and other women like her makes the human toll here an order of magnitude worse. But even setting that aside, no sanction short of designating Fredin a vexatious litigant can spare Kreil, other future defendants, and the Court from the burden of Fredin's ongoing campaign of abusive litigation. And there can be little doubt that, just as there was an eleventh meritless lawsuit, there will be a twelfth, a thirteenth, and a fourteenth unless this Court acts.

Kreil respectfully asks that the Court enter an order, as it has in cases like this one, enjoining Fredin "from filing any further lawsuits, pleadings, or other papers in the District of Minnesota concerning the defendant[ ], facts, or issues involved in this or related actions unless he (1) is represented by an attorney licensed to practice before this Court, or (2) obtains prior written approval from a judicial officer of this District." *Westley*, 2015 WL 2242161, at *11.

## CONCLUSION

Fredin has filed a defective Complaint here that fails for the same reasons that have led the Court to dismiss his claims time and again. It is time to put an end to this stream of meritless and burdensome litigation. The Court should dismiss Fredin's Complaint and declare Fredin a vexatious litigant.

DATED:  October 15, 2020          **ROBINS KAPLAN LLP**

By:   /s/ *Anne M. Lockner*
Anne M. Lockner (0295516)
J. Haynes Hansen (Bar No. 0399102)
Ena M. Kovacevic (Bar No. 0400149)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
T: (612) 349-8500
F: (612) 339-4181
alockner@robinskaplan.com
ekovacevic@robinskaplan.com
hhansen@robinskaplan.com

*Counsel for Defendant Jamie Kreil*