# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Brock Fredin,

     Plaintiff,

     v.

Jamie Kreil,

     Defendant.

Case No. 0:20-cv-01929-SRN-HB

## MEMORANDUM OF LAW IN SUPPORT OF JAMIE KREIL'S EMERGENCY MOTION FOR TERMINATING SANCTIONS, A TEMPORARY RESTRAINING ORDER, AND ATTORNEYS' FEES

Jamie Kreil hereby moves the Court to (1) enter terminating sanctions; (2) issue a temporary restraining order enjoining Fredin from his ongoing campaign of harassment; (3) award Kreil attorneys' fees and costs; and (4) enter any other sanctions the Court believes to be necessary and appropriate under its inherent authority, and states as follows in support.

## INTRODUCTION

Two months ago, Brock Fredin threatened the Court that if it would not punish his perceived enemies, he would resort to "vigilante" tactics. *See* Opp. to MSJ at 6, *Fredin v. Middlecamp*, 0:17-cv-03058 (Aug. 21, 2020). He has since made good on that threat, embarking on a campaign of extrajudicial harassment and

intimidation designed to undermine these and other proceedings. Four days after Kreil moved to dismiss Fredin's Amended Complaint and designate him a vexatious litigant, Fredin retaliated by (1) buying various web domain names corresponding to the names of Kreil's counsel; (2) posting defamatory screeds at those web addresses regarding Kreil's counsel; and (3) uploading bizarre and disturbing videos repeating similar allegations to his YouTube channel, "Judicial Protest." Fredin's targets include not just a partner but two junior associates, whose Google search results now display websites and videos falsely accusing them of racism, criminal conduct, and unethical behavior. The message is clear: represent Fredin's opponents in Court and suffer threatening and defamatory web publications attached to your name.

Unfortunately, Kreil's counsel are far from Fredin's only victims. Fredin has created at least 22 other websites and several additional videos concerning his perceived enemies from this Court and others, including vulgar attacks on Judge Bowbeer. *See* Mot. for TRO, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058-SRN-HB (D. Minn. Oct. 12, 2020). There can be little doubt that these "vigilante" tactics represent a concerted effort to distort the proceedings in this and Fredin's other lawsuits through harassment and intimidation. Indeed, Fredin has openly used these defamatory publications to try to extort a favorable settlement from the defendants in two of his other lawsuits. *See id.* at 4.

Fredin's actions constitute bad faith "conduct [that] abuses the judicial process," warranting sanctions under the Court's inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). Accordingly, Kreil respectfully asks that the Court enter an order (1) issuing terminating sanctions and dismissing this action with prejudice; (2) issuing a temporary restraining order requiring that Fredin remove and not re-post his defamatory websites and videos, or fashioning some alternative sanction to stanch Fredin's ongoing campaign of harassment; (3) awarding Kreil fees and costs incurred in bringing this Motion; and (4) imposing any other sanctions the Court deems necessary and appropriate to remedy Fredin's misconduct.

## BACKGROUND

This case is one of eleven vexatious and harassing lawsuits Brock Fredin has filed in this Court over the past three years.[1] Not content to bury his victims in an avalanche of meritless litigation, Fredin has also employed extrajudicial

---

[1] See *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn.); *Fredin v. Miller et al.*, Case No. 0:18-cv-00466 (D. Minn.); *Fredin v. Clysdale et al.*, Case No. 0:18-cv-00510 (D. Minn.); *Fredin v. Street et al.*, 0:19-cv-02864 (D. Minn.); *Fredin v. Miller*, Case No. 0:19-cv-02907(D. Minn.); *Fredin v. Miller et al.*, Case No. 0:19-cv-03051 (D. Minn.); *Fredin v. Clysdale et al.*, Case No. 0:18-cv-00510 (D. Minn.); *Fredin v. Street et al.*, 0:19-cv-02864 (D. Minn.); *Fredin v. Olson et al.*, Case No. 0:18-cv-02911 (D. Minn.); *Fredin v. Halberg Criminal Defense et al.*, Case No. 0:18-cv-02514 (D. Minn.); *Fredin v. Halberg Criminal Defense et al.*, Case No. 0:19-cv-03068 (D. Minn.); *Fredin v. City Pages et al.*, Case No. 0:19-cv-00472 (D. Minn.).

means to harass and intimidate his perceived enemies. In particular, Fredin has engaged in a sustained campaign of cyber-harassment against women (like Kreil) who he views as having wronged him, ultimately resulting in his incarceration from October 17, 2018 to June 12, 2019.[2]

When the Court declined to rule in Fredin's favor in two of the above lawsuits, Fredin vowed to resort to "vigilante" tactics. *See* Opp. to MSJ at 6, *Fredin v. Middlecamp*, 0:17-cv-03058 (Aug. 21, 2020). Fredin then redoubled his harassment, this time targeting people associated with his lawsuits. Between July and September of 2020, Fredin created 22 websites attacking everyone he believed to have crossed him in court, including judges, law clerks, a juror, opposing counsel, and prosecutors. *See* Mot. for TRO at 2-4, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058-SRN-HB (D. Minn. Oct. 12, 2020). These websites, hosted

---

[2] *See* Mem. at 9-10, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Oct. 24, 2019); *see also Miller v. Fredin*, No. A18-1154, 2019 WL 3293766, at *2 (Minn. Ct. App. July 22, 2019), *review denied* (Oct. 15, 2019) (affirming the district court's finding that Fredin had violated a harassment restraining order "by creating and placing content about [his victim] on the internet"); *State v. Fredin*, No. A19-0085, 2020 WL 1983050, at *1 (Minn. Ct. App. Apr. 27, 2020), *review denied* (July 23, 2020) (affirming Fredin's conviction for violating a restraining order related to Fredin's harassing web posts concerning another of his victims); *Schaefer v. Fredin*, No. A19-0657, 2020 WL 1921101, at *2 (Minn. Ct. App. Apr. 20, 2020), review denied (July 23, 2020) (affirming the district court's finding that Fredin violated a restraining order "by creating posts on specific websites" concerning another of his victims).

at domains corresponding to the victims' names, include personal details and defamatory allegations against each. *See id.*

Fredin also created a YouTube channel, "Judicial Protest," to which he has uploaded videos with similar screeds aimed at opposing counsel in his various lawsuits and this Court. *See* Judicial Protest, YouTube.com (last visited Oct. 19, 2020), https://tinyurl.com/y2q7qszt. Among these are vulgar videos attacking Judge Bowbeer for ruling against Fredin in related litigation. *See id.* Fredin's videos likewise include a wildly offensive and homophobic false commercial for the defendants' counsel in other of Fredin's lawsuits, which has accumulated more than *7,000 views* as of the filing of this Motion. *See id.*

Fredin not only published the foregoing websites and videos, he improperly used them to pressure counsel for the defendants in two of his other lawsuits to provide favorable settlement terms. *See* Breyer Decl. Ex. 17, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058-SRN-HB (D. Minn. Oct. 12, 2020). Fredin temporarily removed his defamatory publications concerning the defendants' counsel on the condition that he receive a favorable settlement offer. *Id.* When the defendants' counsel refused to provide terms to his liking, Fredin re-posted the website and video. Mot. for TRO at 4, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058-SRN-HB (D. Minn. Oct. 12, 2020). Since that time, Fredin has made several

5

additional videos attacking counsel for the defendants in those cases, posting them to his "Judicial Protest" YouTube channel. *See* Lockner Decl. ¶ 30.

On October 15, 2020, Kreil moved to dismiss Fredin's Amended Complaint and to designate him a vexatious litigant. A few days later, Fredin retaliated by deploying these same tactics against counsel for Kreil. Fredin created websites corresponding to the names of Kreil's counsel, including a partner and two junior associates. *See id.* ¶¶ 3-6. These websites include a variety of false, scurrilous, and defamatory allegations, including:

- Kreil's counsel are conspiring with the Court and engaged in an "obvious quid-pro-quo [sic] and corrupt enterprise to prejudice the federal court and cases before Judge Nelson," *id.* Ex. C;

- Kreil's counsel "fabricates allegations in an effort to smear local citizens," *id.* Exs. D, E, F;

- Kreil's counsel have engaged in illegal behavior and are "crooked," "abusive," and "a danger to all Minnesota families," *id.* Exs. A, B, C, D, E, F;

- Kreil's counsel are unethically seeking to "curry[ ] favor with the U.S. Attorneys [sic] Office" in this case, *id.* Exs. A, B, C;

- Kreil's counsel are "racist" and deliberately "only hire[ ] white attorneys" based on "reports" from unnamed sources, *id.* Ex. A;

6

- Kreil's counsel clerked for a "racist" judge and chose to work at Robins Kaplan due to racism; *id.* Ex. C; and

- Kreil's counsel "conspire[ ] with and support[ ] radical left-wing racist attorneys and prosecutors who abuse local citizens," *id*. Ex. A.

Each website concludes by asserting that Kreil's counsel should be disbarred. *Id.* Exs. A, B, C. Fredin further included personal attacks against Kreil herself (although without naming her), calling Kreil "vile" and reiterating some of the false allegations he makes in this case. *Id.* Exs. A, B, C.

Around the same time Fredin created these websites, he uploaded three videos to his "Judicial Protest" YouTube channel making similar allegations against Kreil's counsel. *Id.* Exs. D, E, F. Each is set to (occasionally disturbing and offensive) stock footage, interspersed with pictures of Kreil and her counsel. *See id.* ¶¶ 18-26. Each also has a title asserting that the subject is Minnesota's "most corrupt" or "most abusive" attorney. *Id.* Exs. D, E, F. A list of the websites and YouTube videos of which Kreil's counsel are aware is set forth in the Declaration of Anne Lockner at paragraph 6.[3]

Both the videos and the websites appear in the Google search results for Kreil's counsel. *Id.* ¶ 27. As a result, Fredin's falsehoods are causing ongoing

---

[3] Kreil will submit electronic, archived copies of the videos and asks that the Court use those rather than the live links to the extent possible so as not to increase the links' search rankings through repeated viewings.

harm to the professional reputations of Kreil's counsel. *Id.* ¶ 28. Given Fredin's erratic behavior and history of criminal harassment, Fredin's actions have further put Kreil's counsel in reasonable fear of their own and their families' safety and privacy. *Id.* ¶ 29. Kreil thus brings this Motion to put a stop to Fredin's extrajudicial intimidation tactics.

## LEGAL STANDARD

Courts have the inherent authority "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). "This power reaches both conduct before the court and that beyond the court's confines." *Id.* at 44. "Over the years, the Supreme Court has found inherent power to include the ability to dismiss actions, assess attorneys' fees, and to impose monetary or other sanctions appropriate" to redress abuse of the judicial process. *Harlan v. Lewis*, 982 F.2d 1255, 1259 (8th Cir. 1993). Courts may also issue injunctive relief under their inherent authority. *See, e.g.*, *Blodgett v. Hanson*, No. CV 12-0301 (JRT/JJG), 2012 WL 12897878, at *3 (D. Minn. Oct. 30, 2012), *report and recommendation adopted*, No. CIV. 12-301 JRT/JJG, 2013 WL 1249221 (D. Minn. Mar. 26, 2013). "[A] finding of bad faith is not always necessary to the court's exercise of its inherent power to impose sanctions," but is necessary to impose certain kinds of sanctions (like attorneys' fees). *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 745, 751 (8th Cir. 2004). Bad faith exists where

8

there is "reckless misconduct combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001).

## ARGUMENT

### I)   The Court should issue terminating sanctions dismissing this action based on Fredin's extrajudicial harassment and intimidation tactics.

Courts have the inherent authority to impose terminating sanctions where *pro se* litigants have tainted proceedings by means of a "campaign of insults and improper influence charges with the intent to harass and intimidate the Court and [the party's] opponents." *Blum v. Schlegel*, 91-CV-633S, 1996 U.S. Dist. LEXIS 21598, at *20 (W.D.N.Y. May 9, 1996); *see also Campbell v. Baylard, Billington, Dempsey & Jenson, P.C.*, No. 4:17-cv-02390-JAR, 2018 U.S. Dist. LEXIS 144227, at *14 (E.D. Mo. Aug. 24, 2018) (imposing terminating sanctions in part because a party "engaged in bad-faith conduct intended to abuse the judicial process and harass Defendants"); *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, No. 00 C 5658, 2002 WL 1433717, at *11, *38 (N.D. Ill. July 2, 2002) (imposing terminating sanctions where a party sent threatening letters to opposing counsel intended "to sabotage the litigation" through "intimidat[ion]"); *Bellet v. City of Buffalo*, No. 03-CV-00027, 2011 U.S. Dist. LEXIS 149724, at *7 (W.D.N.Y. Dec. 30, 2011) (imposing terminating sanctions where a "plaintiff repeatedly made baseless accusations against the court" of conspiring against him); *Colida v.*

9

*Panasonic Corp. of N. Am.*, No. 09 C 1786, 2011 U.S. Dist. LEXIS 49055, at *20 (N.D. Ill. May 3, 2011) (imposing terminating sanction in part because the plaintiff disrupted the litigation through "repeated racist and abusive statements to opposing counsel"). Kreil respectfully submits that terminating sanctions are appropriate here.

Fredin's websites and videos represent a deliberate effort to influence the proceedings here and in other of Fredin's lawsuits through harassment and intimidation. Fredin's attacks on Kreil's counsel are clear acts of retaliation, coming just days after Kreil moved to dismiss Fredin's Amended Complaint and to declare him a vexatious litigant. Lockner Decl. ¶¶ 3-6. They include false allegations of racism, criminal activity, and unethical behavior calculated to damage counsel's professional reputations. *Id.* ¶¶ 9-26. In the context of Fredin's history of criminal harassment, these publications have predictably caused Kreil's counsel considerable concern for their own and their families' safety and privacy due to their representation of Kreil in this matter. *Id.* ¶ 29. And Fredin has openly used similar tactics as improper leverage to obtain favorable settlement terms in related cases. *See* Mot. for TRO at 4, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058-SRN-HB (Oct. 12, 2020). Such actions dictate a finding of bad faith through "reckless misconduct combined with . . . harassment . . . [and] an improper purpose." *Gomez*, 255 F.3d at 1134.

That would be bad enough, but it is not all. Fredin has directed further abuse to judges and court personnel who have played roles in the many adverse decisions issued against him. *See id*. at 2-4. His targets include Judge Bowbeer, who Fredin has accused of "protect[ing] corrupt law enforcement officers," and (set against vulgar stock footage) of "conceal[ing] misconduct and refus[ing] to protect men." Lockner Decl. ¶ 31. He has further falsely claimed that Judge Bowbeer's rulings against him in a related case (which are directly relevant to this one) stemmed not from his own misconduct, but from improper animus. *See id*. And Fredin has baselessly accused Judge Nelson of conspiring with Kreil's counsel in a an "obvious quid-pro-quo [sic] and corrupt enterprise." *Id*. Ex. C. In short, Fredin is engaged in an open attempt to undermine the legitimacy of these proceedings and to punish the Court for ruling against him.

Though inexcusable, Fredin's actions are not surprising—he is simply making good on his explicit and repeated threats against the Court. Over the course of three years of serial litigation, Fredin has shown an escalating pattern of disrespect for the Court and disregard of its authority. Among other things, Fredin filed a letter in June demanding apologies from the Court for ruling against him, claiming that the Court was conspiring with the defendants in his cases, and warning that the Court should brace itself for "immediate peaceful legitimate protest." Letter, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn.

11

June 29, 2020). Fredin similarly used his opposition to summary judgment in a related case to threaten he had reached the "vigilante stage," and would take the law into his own hands if the Court would not punish his perceived enemies. Opp. at 6, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Aug. 21, 2020).[4] Not coincidentally, these warnings came around the time that Fredin embarked on his smear campaign against the Court and opposing counsel. *See* Mot. for TRO at 2-4, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058-SRN-HB (Oct. 12, 2020). They also mirror the title of Fredin's YouTube channel: "Judicial Protest."

Fredin has unequivocally demonstrated his lack of respect for the Court's authority and the judicial process. This Court has accorded Fredin significant leeway given his *pro se* status, and ensuring *pro se* litigants are treated fairly is understandably an objective of the Court. But it is time for the Court to intercede. Fredin's self-professed "vigilante" tactics aimed at intimidating the Court and counsel have tainted and disrupted these proceedings beyond tolerable limits. His "vigilante stage" will undoubtedly continue unless the Court sends a clear message. Under the circumstances, terminating sanctions are appropriate.

---

[4] Notably, this case arises directly out of the summary judgment briefing in which Fredin made this threat. Fredin's claims in this case largely pertain to a declaration submitted in support of that motion for summary judgment. *see* Compl. Ex. A.

Although it is a severe sanction, "[w]hen a litigant's conduct abuses the judicial process, dismissal of a lawsuit is a remedy within the inherent power of the court." *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694 (8th Cir. 2001). As discussed above, Courts have imposed terminating sanctions where parties have engaged in less egregious conduct than Fredin's. *See supra* pgs. 9-10. Counsel is not aware of another case in which a party has explicitly threatened the Court that he would resort to "vigilante" tactics if the Court would not punish his perceived enemies. Counsel is similarly unaware of another case in which a litigant has acted on such threats so extravagantly—broadly disseminating harmful and inflammatory falsehoods outside of the proceedings through numerous websites and videos, clearly intending to damage counsel and the Court. Nor, for that matter, is counsel aware of any other case in which a litigant has made his intent to improperly influence litigation comparably clear by openly trying to extort favorable settlements. Fredin's campaign of extrajudicial harassment and intimidation stands in a class all its own.

No sanction short of dismissal can redress this misconduct. *See, e.g.*, *Fid. Nat'l Title Ins. Co.*, 2002 U.S. Dist. LEXIS 11915, at *41 (holding no lesser sanction than dismissal would suffice where a party "circumvent[ed] the judicial process and employ[ed] improper means" to achieve their goals in the litigation). This is particularly true given that Fredin has announced that he views himself as a

"vigilante" beyond the power of the Court. *See, e.g.*, *Blum*, 1996 U.S. Dist. LEXIS 21598, at *30 (holding that terminating sanctions were appropriate where there was reason to believe a party's "abusive tactics would continue undeterred" if the case were allowed to proceed). It is difficult to see how this litigation can continue given all that Fredin has done to taint and discredit it. Even if the Court orders Fredin to remove these websites and videos—as it should—nothing can undo the damage Fredin has already done, or serve as a sufficient assurance that Fredin will not resort to the same "vigilante" tactics again. The use of dirty tricks like those employed by Fredin here is a bell that cannot be unrung.

Moreover, "[m]isconduct may exhibit such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court." *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993). "[T]he most severe in the spectrum of sanctions . . . must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *NHL v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976).

Kreil's counsel have taken on this case *pro bono* to defend against the latest installment in Fredin's meritless serial lawsuits. It will be considerably harder for the target of Fredin's *next* lawsuit to find representation if it is clear that Fredin can (and will) engage in the above conduct and escape unscathed. The same is true of other future lawsuits involving litigants willing to resort to this sort of harassment to deter counsel from representing their victims. The court should send a strong message to Fredin and other unscrupulous litigants who may use such tactics in light of the harm this conduct inflicts on the judicial process. Who wouldn't think twice when taking on a representation it comes at the cost of defamatory attacks and personal safety concerns?

"[T]he court, jealous of its integrity and concerned about deterrence, [is] entitled to send a message, loud and clear." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1122 (1st Cir. 1989). The Court should do so here. Fredin has deliberately circumvented the judicial process, tainted these proceedings, and flaunted the Court's authority. Accordingly, the Court should enter terminating sanctions and dismiss Fredin's claims in this case with prejudice.

**II)  The Court should order Fredin to remove his false and defamatory websites and videos, or impose a continuing monetary sanction that accrues until he does so.**

The Court's inherent authority affords it broad latitude in fashioning "other sanctions appropriate 'for conduct which abuses the judicial process.'"

*Harlan*, 982 F.2d at 1259 (quoting *Chambers*, 111 S. Ct. at 2133). This includes the power to enjoin the harassing extrajudicial conduct of litigants in connection with cases before the Court. *See, e.g.*, Order, *Wells Fargo Bank, NA v. Worldwide Shrimp Company*, et al., Case No. 1:17-cv-04723 (N.D. Ill. Jan. 9, 2020) (granting a motion for sanctions in connection with a defamatory website created by one party concerning the other party and requiring that the website be removed and "its content . . . not be reposted"); *Myart v. Taylor*, No. SA: 5:16-CV-736-DAE, 2016 WL 5376227, at *4–5 (W.D. Tex. Sept. 26, 2016) (enjoining a party from further "harassment in connection with th[e] suit" against the opposing party through extrajudicial communications); *cf. Blodgett*, 2012 WL 12897878, at *3 (noting the availability of injunctive relief under the Court's inherent authority to redress bad faith litigation); *Lewis v. S. S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976) ("Injunctive relief, where warranted, can be a useful tool to aid a court in controlling the conduct of litigants.").

Kreil respectfully submits that, in addition to dismissing the case, the Court should require Fredin to remove and not re-post, in any form or variation, the false, defamatory, and harassing contents of the websites and videos set out in paragraph 6 of the Declaration of Anne Lockner, as well as any websites and videos with the same or similar contents. Alternatively, the Court should impose monetary sanctions accruing daily until Fredin removes these allegations and

any similar harassing or defamatory publications he has created concerning Kreil's counsel and the Court from the internet.

"[T]he relevant factors to consider when assessing the propriety of preliminary injunctive relief include: (1) the likelihood of success on the merits; (2) the presence or risk of irreparable harm; (3) the balancing of the harms of granting or denying an injunction; and (4) the public's interest." *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 401–02 (8th Cir. 2009). While some courts have held that these factors may not apply under circumstances like those presented here, *see Myart*, 2016 WL 5376227, at *4, to the extent they do, they weigh heavily in favor of granting the requested injunction.

First, as discussed above, Kreil has demonstrated a strong likelihood of prevailing on her argument that Fredin subjected himself to sanctions under this Court's inherent authority. *See id.* (noting that the analysis focuses on the need for sanctions rather than the merits of the case when injunctive relief is sought as a sanction for litigation conduct). Indeed, it is difficult to see how Fredin can contend otherwise given the incredible breadth of his misconduct. And to the extent Fredin raises a defense under the First Amendment, courts manifestly "have the power to enjoin harassing communication." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005). A litigant like Fredin who invokes the power of the Court subjects himself to the Court's "'power to impose silence,

respect, and decorum . . . and submission to . . . lawful mandates.'" *Chambers*, 501 U.S. at 43 (quoting *Anderson*, 6 Wheat. at 227). The First Amendment poses no hurdle to the Court's exercise of this traditional power to redress attempts at harassment and intimidation by litigants appearing before it.

Second, Fredin's false and defamatory publications have caused and will continue to cause irreparable harm. As discussed above, Fredin's harassing websites and videos have placed Kreil's counsel in reasonable fear for their own and their families' safety and privacy. Lockner Decl. ¶ 29. Psychological harm of this nature is irreparable in the relevant sense. *See, e.g.*, *Myart*, 2016 WL 5376227, at *5. And this apprehension is reasonable given Fredin's criminal history of harassment and his recent designation of himself as a "vigilante." Moreover, Fredin's vile falsehoods will continue to tarnish the reputations of Kreil's counsel as long as they remain on the internet. Lockner Decl. ¶ 28. "Because damage to one's reputation is a harm that cannot be remedied by a later award of money damages, the threat of reputational harm may form the basis for preliminary injunctive relief." *Kroupa v. Nielsen*, 731 F.3d 813, 820 (8th Cir. 2013).

Third, the balance of harms tips strongly in favor of granting injunctive relief. The issuance of an injunction will do no more than curtail Fredin's efforts to harass and intimidate the Court and Kreil's counsel through extrajudicial means. Fredin should never have engaged in this behavior at all. Conversely,

Kreil's counsel will continue to experience the psychological and reputational harms discussed above in the absence of an injunction.

Fourth, the public interest strongly favors injunctive relief—particularly the "public's interest in the integrity of the court system." *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 171 (3d Cir. 2004). As discussed above, Fredin's efforts to deter counsel from representing his victims through intimidation and harassment carry substantial implications for the integrity of the judicial process. Declining to curtail this conduct can only encourage its use in future litigation. Moreover, false statements imputing an "improper motive" to the Court mislead the public and undermine its faith in the judicial system, which is likewise contra the public interest. *Blum*, 1996 U.S. Dist. LEXIS 21598, at *27.

For the reasons detailed above, the Court should enter an order requiring that Fredin remove the websites and videos listed in paragraph 6 of the Declaration of Anne Lockner, as well as any other publications he may have created repeating the same or similar harassing allegations, and that Fredin not re-post the same or similar allegations anywhere. Alternatively, if the Court is not inclined to grant injunctive relief, it should exercise its inherent authority to craft "other sanctions appropriate 'for conduct which abuses the judicial process.'" *Harlan*, 982 F.2d at 1259 (quoting *Chambers*, 111 S. Ct. at 2133). In particular, the Court should impose a monetary sanction accruing every day

Fredin leaves the above publications—and any other publications making the same or similar false and harassing allegations—on the internet.

### III)  The Court should award Kreil her fees and costs incurred in bringing this Motion.

"[A]n assessment of attorney's fees is undoubtedly within a court's inherent power." *Chambers*, 501 U.S. at 45. Such a sanction requires "[a] bad faith finding," as where a litigant "defile[s] 'the temple of justice.'" *Stevenson*, 354 F.3d at 751 (quoting *Chambers*, 501 U.S. at 46). Kreil respectfully submits that, in addition to dismissing the case and granting the injunctive relief requested above, an award of attorneys' fees incurred in bringing this Motion is justified.

The "purpose of the inherent power is both to vindicate judicial authority . . . and to make the non-violating party whole." *Purchasing Power, LLC v. Bluestem Brands*, Inc., 851 F.3d 1218, 1225 (11th Cir. 2017) (citing *Chambers*, 501 U.S. at 45-46). Here, an award of attorneys' fees and costs is necessary to serve both purposes. As to the latter, Kreil's counsel was forced to expend considerable time and effort bringing this Motion to redress Fredin's egregious misconduct. Fredin must have known and intended this consequence, as this is precisely the response Fredin's campaign of harassment has elicited in other cases. *See* Mot. for TRO, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058-SRN-HB (Oct. 12, 2020).

An award of fees is further necessary to deter Fredin from engaging in similar conduct in the future. As discussed above, Fredin is a serial litigant who

has filed 11 cases in this Court in just three years. *See supra* pg. 3. Fredin is similarly a prolific author of defamatory websites and videos, having created *dozens* of them in a relatively short time. *See supra* pgs. 3-8. Merely dismissing one of Fredin's numerous lawsuits, or forcing him to remove a handful of his many defamatory web publications, is likely inadequate to "send a message" that is sufficiently "loud and clear" under the circumstances. *Aoude*, 892 F.2d at 1122. Given the conduct at issue and the larger context in which it arises, monetary sanctions are warranted as well. *Cf.* Order at 6, *Fredin v. Middlecamp*, Case No. 0:18-cv-00466, (D. Minn. May 18, 2020) (holding that Fredin's excuses were insufficient to "insulate him from a monetary sanction for knowingly making a false accusation of wrongdoing against Defendants or their counsel").

Finally, as discussed above, there can be little doubt that Fredin's conduct rises to the level of "bad faith." *Stevenson*, 354 F.3d at 751. There is no conceivable *good faith* justification for Fredin (1) initiating a blizzard of litigation against women like Kreil; (2) declaring himself a "vigilante" when he received rulings with which he disagreed; and (3) openly engaging in a campaign of harassment and intimidation in retaliation against the Court for ruling against him, and against Kreil's counsel for representing their client. If such conduct does not "defile 'the temple of justice,'" nothing does. *Stevenson*, 354 F.3d at 751 (quoting *Chambers*, 501 U.S. at 46).

## CONCLUSION

Although this case has been pending only for a short time, the misconduct at issue in this Motion is the culmination of three years of serial misconduct by a vexatious litigant. That misconduct has now, among other things, tainted this litigation beyond recovery, unjustly sought to damage the reputations of Kreil's counsel, and publicly undermined the Court's authority. It is time for the Court to intercede. Kreil respectfully asks that the Court (1) enter terminating sanctions and dismiss this action with prejudice; (2) order that Fredin remove and not re-post the false and harassing matter set out in the web publications listed in paragraph 6 of the Declaration of Anne Lockner, or enter some alternative sanction designed to stanch the harassment; (3) award Kreil her fees and costs incurred in bringing this Motion; and (4) enter any other sanctions the Court deems necessary and appropriate to redress Fredin's misconduct.

DATED:  October 21, 2020        **ROBINS KAPLAN LLP**

By: __/s/ *Anne M. Lockner*_____
Anne M. Lockner (0295516)
J. Haynes Hansen (Bar No. 0399102)
Ena M. Kovacevic (Bar No. 0400149)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
T: (612) 349-8500
F: (612) 339-4181
alockner@robinskaplan.com
ekovacevic@robinskaplan.com
hhansen@robinskaplan.com

*Counsel for Defendant Jamie Kreil*