**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| BROCK FREDIN,<br><br>              Plaintiff,<br><br>--against--<br><br>JAMIE KREIL,<br><br>              Defendant. | Case No.  20-CV-01929<br><br><br>**MEMORANDUM OF LAW IN OPPOSITION TO EMERGENCY SANCTIONS AND TRO AND SUPPORT OF SUA SPONTE CROSS SANCTIONS ASSERTED AGAINST DEFENDANT AND ROBINS KAPLAN** |

Plaintiff Brock Fredin ("Plaintiff") proceeding *pro se*, hereby alleges the following against Defendant Jamie Kreil ("Defendant Kreil"):

## MEMORANDUM OF LAW IN SUPPORT OF CROSSS SANCTIONS AND OPPOSITION TO TRO

Plaintiff Brock Fredin ("Plaintiff"), proceeding *pro se*, hereby submits this memorandum of law in opposition to Defendant and Robins Kaplan attorneys Anne M. Lockner, J. Haynes Hansen, and Ena Kovacevic emergency motion for sanctions and a temporary restraining order ("TRO") and in support of his motion to *sua sponte* cross sanction within the Court's inherent authority under Rule 11 imposed on Defendant Jamie Kreil ("Defendant") and attorney Anne M. Lockner ("Attorney Lockner"), J. Haynes Hansen ("Attorney Hansen"), and Ena Kovacevic ("Attorney Kovacevic") collectively ("Named Attorneys", "Robins Kaplan," or "Attorneys").

## INTRODUCTION

Defendant has acted in concert to rig multiple state court and federal lawsuits by deploying false, fabricated, and absurd propaganda on the Internet used to disparage Plaintiff and his previous counsel Attorney Nathan Hansen.  Defendant in concert with Lindsey Middlecamp, Grace Miller,

1

and Catherine Schaefer published over fifty (50) tweets, including a fabricated rape allegation, re-tweeted and viewed by hundreds of thousands of people where this Court has said that it would not infringe on her or her surrogate's First Amendment rights.  Fredin v. Middlecamp, Civil No. 17-3058 (SRN/FLN) (D. Minn. Apr. 13, 2018)  During the pendency of *Fredin v. Middlecamp* and *Fredin v. Miller*, Defendant acted in concert with the above parties to continue harassing Plaintiff (while he was defenseless) with new Twitter campaigns on an account named @Webster associated with Defendant's surrogates e.g., Lindsey and David Middlecamp.  Defendant's *pro bono* lawyers now come to this Court unethically requesting relief not on behalf of their supposed client in this action but on behalf of themselves.  It is clear that Robins Kaplan could care less about Defendant Jamie Kreil and are exploiting this lawsuit for their own benefit.  As a result, Defendant and her Attorneys filed a frivolous emergency motion for cross sanctions and a temporary restraining order ("TRO") on October 21, 2020 where they have no standing to ask for such relief which would otherwise violate Plaintiff's First Amendment rights to engage in constitutionally protected criticism.  Indeed, Robins Kaplan is financing Defendant's legal expenses not to help Defendant Jamie Kreil.  Instead, they are using this litigation to harass Plaintiff on behalf of Special Assistant United States Attorney Lindsey Middlecamp and to curry favor with the United States Attorneys' Office.

If Robins Kaplan or Defendant Kreil want to move for a temporary injunction on these websites, they need to file a personal lawsuit where they name themselves as a Plaintiff or a party. Robins Kaplan and attorney Anne M. Lockner are trying to short circuit this action in order to gain relief they are simply not entitled.  The fact the Robins Kaplan are financing Lindsey Middlecamp's harassment where they failed to do basic due diligence to investigate Defendant Jamie Kreil's fabricated allegations is unconscionable and yet another act of attorney misconduct.

2

Defendant Jamie Kreil contends she filed a police report with the Saint Louis Park Minnesota

Police department.  On October 23, 2020 the Saint Louis Park Police Department came back with

yet another written FOIA production once again detailing that their police department does not

have any report from Defendant Jamie Kreil, let alone any police report from her alleging "rape",

or any police report whatsoever made against Plaintiff:



(*See* Fredin Decl. November 5, 2020 Ex. A.)  The fact that Robins Kaplan are trying to finance a

blatantly fabricated allegation (where they failed to complete basic due diligence to investigate the

matter) and to represent themselves (and not Defendant Jamie Kreil) in this lawsuit is a matter of

public concern and therefore eligible for the exercise of constitutionally protected First

Amendment criticism speech.

Moreover, Defendants Kreil and Robins Kaplan vexatious litigation argument in the *instant*

motion and in their motion to dismiss calls into question the their fitness to practice law.  The

argument is not based on any actual vexatious litigation in any court particularly the District of

Minnesota or the Eighth (8th) Circuit.  Instead, Robins Kaplan bring in pleadings that are irrelevant

and not part of this proceeding.  Robins Kaplan are operating in some racketeering scheme with

numerous attorneys to provide free legal representation from top tier high dollar Minneapolis law firms to anyone opposed to Plaintiff to make Defendant Kreil and her surrogates immune to any accountability for their scheme.  This includes Attorney K. Jon Breyer, Kutak Rock, Adam C. Ballinger, George Singer, Leita Walker, Mark Jacobson, Michael Olafson, Lindquist and Vennum/ Ballard Spahr,, Karmen McQuitty, University of Minnesota legal services, Daniel J. Goldberg, Michael Boulette, Messerli Kramer, Peter R. Mayer, David Green, Dorsey and Whitney, Lindsey Middlecamp (in her professional role), Mary Ellen Heng, Minneapolis City Attorneys' Office, Steven Heng, Stephen Christie, Maria Dewolfe, Tara Patet, Saint Paul City Attorneys' Office, and at least three (3) lawyers from the Minnesota Attorney General's Office.  Defendant and her surrogates Lindsey Middlecamp, Catherine Schaefer, and Grace Miller have not had to spend a single dime in legal expense (for any matter whatsoever) while Plaintiff and his close family has been bankrupted.  In total, this is at least twenty-three (23) lawyers that have taken part in this harassment scheme against Plaintiff.  **Enough is enough.**  The fact that so much money has been spent to attack an untrained *pro se* litigant and he is still surviving speaks to the merit in this action. Defendant and her attorneys must be *sua sponte* sanctioned for filing multiple concerted frivolous sanctions and vexatious litigation motions. Moreover, it remains highly ironic that Robins Kaplan are arguing vexatious litigation by filing their sixth (6) baseless motion in concert with multiple firms.  Under no conditions will any of these websites or videos ever be taken down.

## FACTUAL BACKGROUND

1.  On October 21, 2020 Defendant and her attorneys filed an emergency motion seeking sanctions and a temporary restraining order.

2.  In addition, Defendant and her attorneys improperly filed declarations under seal.

## GOVERNING STANDARD

4

The Court can *sua sponte* "[o]n its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." *See* Fed. R. Civ. P. 11   Affirming *sua sponte* imposition of $25,000 sanction under Rule 11 where counsel "violated Rule 11 by pursuing frivolous defenses and claims with the purpose of delaying [resolution]"   *MHC Investment Co. v. Racom Corp.,* 323 F.3d 620 (8th Cir. 2003); *St. Paul Reinsurance Co. v. Commercial Fin. Corp.,* 198 F.R.D. 508 (N.D. Iowa 2000) (requiring lawyer to write a bar article as a sanction)

Four (4) factors govern temporary restraining orders and preliminary injunctions:

> To warrant preliminary injunctive relief, the moving party must show (1) probability of success on the merits; (2) threat of irreparable harm to the movant absent the injunction; (3) the balance between harm and the injury that the injunction's issuance would inflict on other interested parties; and (4) public interest.  *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 729 n. 3 (8th Cir. 2008) (en banc) (citing *Dataphase Systems, Inc. v. C.L. Sys. Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

A temporary restraining order considers the harm that will occur prior to an opportunity for the Court to hold a hearing on a motion for preliminary injunction (which must be considered on an expedited basis). Fed. R. Civ. P. 65(b).  A preliminary injunction considers the harm that will occur prior to a trial on the merits.  *Miller v. Foley*, 317 N.W.2d 710, 712 (Minn. 1982) Minnesota has two unique factors: (1) the nature and background of the relationship between the movant and nonmovant; and (2) administrative burdens of enforcement. *Dahlberg Bros., Inc. v. Ford Motor Co.*, 137 N.W.2d 314 (Minn. 1965).  *Dexon Computer, Inc. v. Modern Enterprise Solutions, Inc.*, No. A16-0010 (Minn. Ct. App. Aug. 1, 2016) (affirming preliminary injunction based on evidence from affidavit).  The ultimate decision of whether to grant or deny a permanent injunction lies within the district court's discretion.  *See Kittle-Aikeley v. Strong*, 844 F.3d 727, 735 (8th Cir. 2016) (en banc)

**ARGUMENT**

First, Defendant and Robins Kaplan do not have standing.  Defendant Kreil and Robins

Kaplan filed a sham emergency sanctions and preliminary injunction and vexatious litigation

motion.  And, must be *sua sponte* sanctioned.  Second, Defendant Kreil's emergency sanction

request must be denied.  Third, Defendant Kreil and Robins Kaplan fails all factors of *Dataphase*

and is not entitled to injunctive relief.

I.   **Robins Kaplan Has No Standing and Their Preliminary Injunction and Vexatious Litigation Request is Frivolous Requiring *Sua Sponte* Cross Sanctions**

As described above, Defendant Kreil has used this motion to harass Plaintiff and silence

exposure of their corrupt *pro bono* scheme used to curry favor with Lindsey Middlecamp.

Defendant and Robins Kaplan are attempting to short circuit this action by using a emergency

sanctions and frivolous temporary restraining order motion in place of a personal lawsuit seeking

relief that this Court simply cannot provide.  Defendant Kreil in concert with her surrogates has

destroyed Plaintiff's life, ruined his career, and attacked him in the media and on Twitter.

Defendant's attacks have not been relegated to Plaintiff but also included his previous counsel

attorney Nathan Hansen.  Making Defendant's requested relief even more laughable, over the

course of nearly four (4) years, Plaintiff never once raised a motion requesting that Defendant or

her surrogates First Amendment rights be infringed despite their massive publication.  And,

because Defendant and her surrogates have repeatedly attacked Plaintiff and his previous counsel,

Plaintiff has received astronomical and unethical retainer requests from local attorneys e.g.,

$100,000 just to represent him in this or related actions.[1]

---

[1] Based on extensive emails and multi-year contacts with multiple attorneys.  Evidence is available upon request.

6

Defendant Kreil and Robins Kaplan falsely state that Plaintiff has filed "vexatious …" lawsuits.  (*See* Def. TRO ¶ 7.)  Plaintiff's claims in this and related actions have been repeatedly proven to have merit.  This is the fifth or sixth baseless sanctions motion in concert with other firms requesting that Plaintiff be barred from legitimate redress.   Defendant Kreil and her surrogates have filed for 15 cases in state court alone and literally years of hearings to prevent Plaintiff's First Amendment rights.  In addition, Defendant Kreil and her surrogates self-admit they "fabricate" and invent "unique false information" to invent purported false rape allegation while blatantly lying about a police report to further preclude Plaintiff's constitutional rights.  As described above, no such police report has ever existed and the Saint Louis Park Police department once again came back with a written Freedom of Information Act (FOIA) production further evidencing Defendant Kreil's blatantly false allegations.  Enough is enough!

The following cases establish Plaintiff's strong likelihood of success in requesting that Defendant be *sua sponte* sanctioned for their concerted attempts with multiple law firms to file repeated vexatious or sanctions motions to infringe Plaintiff's access to the Courts:

- *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) (the ability to obtain civil redress is the "very essence of civil liberty.")

- *Bounds v. Smith,* 430 U.S. 817, 824, 828 (1977) (constitution guarantees the right to meaningful access to the Courts.)

- *Johnson v. Avery, 393 U.S. 483, 485, (1969) (*access to courts may not be denied or obstructed*)*

- *McDonald v. Smith,* 472 U.S. 479, 482 (1985) ("The right to petition . . . is implicit in the very idea of government, republican in form." (brackets, internal quotation marks, and citation omitted))

- *Yennie v. Gardner*, No. 19-CV-0111 CJW (N.D. Iowa Oct. 10, 2019) (Warning of *sua sponte s*anctions if party continues to file frivolous motions)

- *Carper v. Besse*, 4:12CV3244 (D. Neb. Apr. 29, 2013) (Warning of *sua sponte s*anctions if party continues to file frivolous motions)

- *Whitson v. LM Services, Inc.,* No. 4:01CV1744 SNL (E.D. Mo. Feb. 20, 2003) (cautioning against frivolous motions)

- *Kalincheva v. Neubarth*, 8:15CV44 (D. Neb. Nov. 28, 2017) (caution asserted against party for filing frivolous motions)

- *In re Tyler*, 839 F.2d 1290, 1293 (8th Cir. 1988) ("The Court may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process.")

- ***Ideal Instruments, Inc. v. Rivard Instruments*, 245 F.R.D. 381 (N.D. Iowa 2007) (Asserting *sua sponte* sanctions against party for filing an underlying frivolous preliminary injunction) *See* also *Ideal* 243 F.R.D. 322 (N.D. Iowa 2007)**

- *Cromer v. Kraft Foods North America, Inc.,* 390 F.3d 812 (4th Cir. 2004) (Holding that "prefiling injunction barring future filings in unrelated cases in district court constitutes overbroad and impermissible restriction")

- *Castle v. Appalachian Technical College*, 430 F. App'x 840 (11th Cir. 2011) (Asserting sanctions for frivolous motion practice)

- *Liebing v. Sand*, No. 17-CV-142-LRR (N.D. Iowa Mar. 26, 2018) (considering sua sponte sanctions against party and their attorneys)

- ***MHC Investment Co. v. Racom Corp.*, 323 F.3d 620 (8th Cir. 2003) (imposing $25,000 *sua sponte* sanction for delaying resolution)**

With respect to Robins Kaplan vexatious litigation argument in the *instant* motion and their motion to dismiss to bar Plaintiff from filing future lawsuits, Robins Kaplan's request would be yet another bogus prior restraint and must be *sua sponte* sanctioned. *Cromer v. Kraft Foods North America, Inc.,* 390 F.3d 812 (4th Cir. 2004) (precluding prior restraint on future lawsuits)

### a. Robins Kaplan's Requested Relief Would be a Prior Restraint and Infringe the First Amendment

The Court cannot impose prior restraint on constitutionally protected speech. *Near v. Minnesota*, 283 U.S. 697 (1931)  The only exception under *Near* would be for a national security concern or an actual threat.  None of which have occurred here.

### b. Robins Kaplan is Improperly Requesting Relief on Behalf of Themselves in an Action Where They are Supposedly Representing a Client

It is no secret that Robins Kaplan's *pro bono* representation is yet another hoax.  Robins Kaplan openly admit they're using this motion on behalf of themselves by falsely stating they are the subject of a "campaign of insults and improper influence charges with the intent to harass and intimidate the Court and [the party's] opponents."  The idea that Robins Kaplan are attempting to short circuit this action by using this motion as their own personal lawsuit requesting relief on behalf of themselves is a clear violation of Minnesota Rules of Professional Conduct Rule 1.7 which provides:

> • a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a **third person**, or by a personal interest of the lawyer.  (*See* 1.7)

This is even more important considering that Plaintiff consulted with Robins Kaplan concerning these lawsuits long before they began representing Defendant Jamie Kreil in this action.  Robins Kaplan failed to engage in a conflict check.  Moreover, Plaintiff has spoken to Robins Kaplan attorneys about these actions long before they began representing Defendant Jamie Kreil and before any lawsuit was filed against her surrogates Lindsey Middlecamp or Grace Miller. In other words, because Robins Kaplan are representing themselves in this action, making requests to limit criticism of themselves, which invariably makes themselves a "third person" with respect to Rule 1.7 (because they are not a party), it bars their request and raises serious "professionalism concerns". *Mid-State Aftermarket Body Parts, Inc. v. MQVP,* Inc., No. 4:03CV00733 JLH (E.D. Ark. May 4, 2009)

### c.  Did Not Take Place Within Court Proceedings

The terminating sanctions case law used by Robins Kaplan e.g., *Blum v. Schlegel*, 91-CV-633S, 1996 U.S. Dist. LEXIS 21598 requires that the litigant repeatedly made outrageous personal insults in proceedings before the Court e.g., in pleadings, hearings, or depositions.

The problem with their above statement is that Defendant and Robins Kaplan do not identify any actual statements (in or out of court) that they allege is "intimidation" or an "insult". More importantly, Defendant and Robins Kaplan do not allege that any of the alleged criticism took place within any actual court proceeding. Instead, they falsely claim that a YouTube video and an associated website is an "insult" requiring sanctions. The Court does not have the inherent authority to impose the requested relief on any criticism independent of Court proceedings. Robins Kaplan stated Plaintiff "improperly used them to pressure counsel for the defendants in two of his other lawsuits to provide favorable settlement terms." (*See* Def. TRO ¶ 5.) This is simply not true. Plaintiff was acting in good faith to settle. The fact that Robins Kaplan would have full access to privately discussed settlement discussions between Plaintiff and one individual client of Karl Johann Breyer's speaks to Defendant Kreil, Robins Kaplan's and Kutak Rock's bad faith efforts and backchannel communication to harass Plaintiff in concert with numerous law firms. Mr. Breyer has deliberately and falsely represented to this Court all along that Ms. Middlecamp, Miller, and Schaefer all independently encountered Plaintiff. And, tries to engage in settlement discussions where he is not only leaking the supposed confidential discussions to other firms but batching them all together as one so as to provide a lack of accountability to Ms. Middlecamp, Kreil, and Schaefer. After four (4) years, FOIA evidence obviously shows their scheme began well before Plaintiff ever knew who Ms. Middlecamp or Schaefer ever were. Plaintiff had never met, seen, or spoken to Ms. Schaefer or Middlecamp prior to their attacks. This Court denied Plaintiff's right to discovery in further attempts to prevent exposure of Ms. Middlecamp felony

conduct (including admissions of fabricating evidence) and therefore protect the United States Attorneys' Office. The fact this Court would allow an Assistant United States Attorney, Ms. Middlecamp, to blatantly admit to fabricating evidence in matters before this Court without referring the misconduct so as to protect the public is completely outrageous. The integrity of the judicial system is at stake. This is particularly so where others have emailed this Court desperately pleading that Ms. Middlecamp has also ruined their life by fabricating bogus allegations. And, her entire Internet platform is premised upon the same or similar conduct.

## II.       Emergency Sanctions Request Must be Denied

Plaintiff need not even address the merits of Defendant Kreil's absurd emergency sanctions request. The idea that criticizing Robins Kaplan is an "emergency" is laughable. Furthermore, it should be taken under consideration that Ms. Lockner should be *sua sponte* sanctioned for filing declarations under seal in an effort to conceal public criticism of her scheme. (*See* Dock. No. 19-20.) Plaintiff incorporates the above and below arguments in support of his opposition to Defendant's emergency sanction request. Plaintiff further incorporates his future opposition papers to Defendant Kreil's motion to dismiss to address the merits of Defendant Kreil's emergency sanctions request.

## III.      Preliminary Injunction Factors

### a.  Nature and Background

The District Court of Minnesota treats this factor as one that strives to maintain the "status quo ante." *See Dahlberg Bros., Inc. v. Ford Motor Co.*, 137 N.W.2d 314 (Minn. 1965) (affirming issuance of temporary injunction to enjoin termination of Ford dealership based, in part, on fact that the "status quo ante" was that the dealership was still in effect).

Administrative Burdens.  Courts have declined to issue injunctions where judicial oversight and enforcement of the requested injunction would be great.  *Alt. Med. & Pharmacy, Inc. v. Express Scripts, Inc.*, No. 4:14 CV 1469 CDP (E.D. Mo. Oct. 7, 2014) (affirming refusal to issue injunction that would have imposed on the court a "continuing duty of supervision" over the parties' or their clients)

### b.  <u>Lack of Success on the Merits</u>

As described below, several cases establish strong reasons to deny Defendant Kreil's injunction under the First Amendment right to free speech:

- *Iowa Right to Life Committee v. Williams,* 187 F.3d 963 (8th Cir. 1999) ("the potential harm to independent expression and certainty in public discussion of issues is great and the public interest favors protecting core First Amendment freedoms.")

- *Parents, Families, & Friends of Lesbians & Gays, Inc. v. Camdenton R-III School District,* 853 F. Supp. 2d 888 (W.D. Mo. 2012) (Injunctions "must not discriminate against websites expressing a positive viewpoint toward LGBT individuals.")

- *Taylor v. Haugaard,* 360 F. Supp. 3d 923 (D.S.D. 2019) (First Amendment generally bars government or public officials from retaliating against an individual for exercising his or her right to free speech)

- *Calvin Klein Cosmetics v. Lenox Laboratories*, 815 F.2d 500 (8th Cir. 1987) (Recognizing that a preliminary injunction is an extraordinary remedy)

- *Walker v. Wegner*, 477 F. Supp. 648 (D.S.D. 1979) (Deprivation of first amendment freedoms, even for a short period, constitutes irreparable injury)

- *Bloom v. O'Brien,* 841 F. Supp. 277 (D. Minn. 1993) (Finding that the plaintiffs' burden of demonstrating a chilling effect was met when exercising a First Amendment right would subject a plaintiff to criminal prosecution)

- *Faegre Benson v. Purdy*, No. 04-1189 (8th Cir. Apr. 4, 2005) (Denying sanctions on a preliminary sanction over a critical website)

- *McCarthy v. Fuller*, 810 F.3d 456 (7th Cir. 2015) (Vacating and thus denying an injunction related to a website" so broad and vague that it threatens to silence [a party] completely")

- *Blockowicz v. Williams,* 630 F.3d 563 (7th Cir. 2010) (requiring an injunction to issue only after a party prevailed in a personal defamation lawsuit)

- *1-800 Contacts, Inc. v. Whenu.com, Inc.*, 414 F.3d 400 (2d Cir. 2005) (reversing and denying injunction to enjoin company from placing content in the form of pop-ups                                   on                                   websites)

- *SunEarth, Inc. v. Sun Earth Solar Power Co.*, No. 13-17622 (9th Cir. Nov. 16, 2016) (denying sanctions request in reference to website material)

- *Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) (Denying injunction request to remove YouTube video because an injunction can only issue on a 'clear showing of                                   irreparable                                   harm'.)

- *Prager Univ. v. Google LLC*, 951 F.3d 991 (9th Cir. 2020) (Denying injunction related to classification of YouTube videos)

"While 'no single factor is determinative,' the likelihood of success factor is the most important" *See Medtronic, Inc. Derivative Litig.*, 68 F. Supp. 3d 1054 (D. Minn. 2014) (citing *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013))

The following cases establish strong reasoning to deny Defendant Kreil's injunction under the First Amendment right to free speech:

- *J.S. v. Blue Mountain School District,* 650 F.3d 915 (3d Cir. 2011) (First Amendment rights violated when a policy used to sanction litigant for creating a parody online profile that mocked and demeaned a public official)

- *Nuacke v. City of Park Hills*, 284 F. 3d 923 (8th Cir. 2002) (government or public officials took adverse action motivated by exercise of constitutional rights, and that adverse action caused her to suffer an injury that would chill a person of ordinary firmness       from       continuing       that       protected       activity)

- *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (*1980*) (First Amendment right of access to the Courts and free speech to publish the results of proceedings)

Defendant Kriel and all Robins Kaplan attorneys are public officials:

- Upon information and belief, Defendant Kreil is or was PhD student at the University of Minnesota and long-time non-tenured PhD educated faculty in the English or Adult Education department where she teaches English. Because Defendant Kreil accepts public funds by way of the University of Minnesota and represented or represents the University of Minnesota as a staff member, she is a

public official.  Because Robisn Kaplan is likely receiving funding from various organizations both individually and in concert with other firms to fund the legal expense for Defendant Kreil, their preliminary injunction request is arguably a government                                                                                                                                    action.

- Anne M. Lockner is a board member of the Advocates for Human Rights, the Basilica Landmark, and The Fund for Legal Aid.  She is also involved in the Mid-Minnesota Legal Aid.  Any of these organizations arguably accepts public funds and her public official status is cemented considering she's a board member representing        public        organizations        accepting        public        funds.

- J. Haynes Hansen is a former clerk to Minnesota Court of Appeals Judge Dianne Bratvold.

The Eighth Circuit has repeatedly disfavored any government restriction imposed on the First Amendment.  Because Robins Kaplan is likely receiving funding from quasi-public or government organizations  for its pro bono representation, their preliminary injunction motion is arguably a "government action" for purposes of the following: *Calzone v. Missouri Ethics Commission,* Case No. *A17-2654, (8th Cir. 2019) (November 1, 2019); Johnson v. Minneapolis Park & Recreation Bd*, 729 F.3d 1094 (8th Cir. 2013); *D.M. v. Minnesota State High School League*, No. 18-3077 (8th Cir. 2019); *Gerlich v. Leath*, 152 F. Supp. 3d 1152 (8th Cir. 2017) ; *Rodgers v. Bryant*, Case No. 17-3219 (8th Cir. 2019) (November 7, 2019) (holding "Arkansas antiloitering law that bans begging in a manner that is harassing, causes alarm …" unconstitutional); See also *Knight First Amendment Inst. at Columbia Univ. v. Trump*, Case No. 1:17-cv-5205 (S.D.N.Y.), No. 18-1691 (2d Cir.) (July *9, 2019)*

The movant must show that he is "likely to prevail on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731–33 & n. 4 (8th Cir.2008)  Here, Defendant Kreil and Robins Kaplan fail the most important *Dataphase* factor as described above.

**c.  Defendant Does Not Suffer Irreparable Injury Absent the Injunction**

Defendant Kreil will not suffer irreparable harm because she is not the subject of any criticism. Robins Kaplan alleges the criticism is directed squarely at them and Robins Kaplan or any of its attorneys' are not a party to this litigation. Here, the balance of equities tips decidedly in Plaintiffs favor. If Defendant Kreil or Robins Kaplan attorneys' believe their argument has merit, which it does not, they have an avenue of relief in filing a personal lawsuit in state or federal court naming themselves as a party and Plaintiff as a defendant. On the other hand, if the Court grants a preliminary injunction, Plaintiff will suffer irreparable harm. *Phelps-Roper v. Nixon,* 545 F.3d 685, 689-90 (8th Cir. 2008) Moreover, it would further enable Defendant Kreil to attack Plaintiff with false propaganda to thousands of people online. For an injunction to be appropriate, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) *See* also *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (quoting *Iowa Utilities Bd. v. Fed. Commc'ns Comm'n,* 109 F.3d 418, 425 (8th Cir. 1996)

### d. Comparison of Harm

In determining whether a preliminary injunction should issue, the Court must consider whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113

Plaintiff suffers immense injury if his First Amendment rights are abridged. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") see also

Assuming *arguendo*, if this Court had standing to issue a preliminary injunction, which it does not, it would theoretically be required to similarly order Defendant Kreil and her surrogates to remove their bogus and false attacks against Plaintiff. As a result of Defendant Kreil's false

rape allegation, which was disseminated to hundreds of thousands of people vis-à-vis Lindsey Middlecamp's @CardsAgstHrsmt account and a bogus *City Pages* article (which is a failed and defunct newspaper that is no longer in business because of its false reporting), where Defendant Kreil even blatantly lied by alleging she documented her purported allegation with a police report, which does not exist and never has existed, where Robins Kaplan engages in yet more attorney misconduct by failing to engage in due diligence in verifying the non-existent report, Plaintiff has suffered immense harm that no individual should ever have to face e.g., torture, extrajudicial renditions, thousands of dollars in legal expenses, loss of a connection to his beloved dogs, loss of access to his dying mother, ruined career, and false imprisonment.  Plaintiff has suffered immense harm and will continue to suffer immense harm because of Defendant Kreil's attacks that exist on Twitter, Facebook, and the local media still today (nearly four years later).

### e.  Public Interest

The following cases establish strong reasons to deny Defendant Kreil's injunction under the First Amendment right to free speech:

- *Frisby v. Schultz*, 487 U.S. 474, 479 (1988) (The public interest is served by free expression on issues of public concern)

- *First Nat'l Bank of Boston* v. *Bellotti*, 435 U.S (1978). at 766 ("[t]he First Amendment, in particular, serves significant societal interests.")

Robins Kaplan are acting in concert with several law firms to mute any accountability to Defendant Kreil or her surrogates by way of financing *pro bono* legal expense and representation. The idea that Robins Kaplan is financing fabricated allegations to curry favor with the United States Attorneys' Office or the Minneapolis City Attorneys' Office is a matter of public concern entitling Plaintiff to the exercise of his First Amendment rights.

### CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court *issue sua sponte* sanctions under its inherent Rule 11 authority against Defendant Jamie Kreil and her attorneys Anne M. Lockner, Haynes Hansen, and Ena Kovacevic.  Moreover, Plaintiff respectfully requests this Court deny Defendant Jamie Kreil's emergency sanction and preliminary injunction request.


Dated: November 5, 2020
Saint Croix Co., WI




s/ Brock Fredin
Brock Fredin
Saint Croix Co., WI 54002
(612) 424-5512 (tel.)
brockfredinlegal@icloud.com
*Plaintiff, Pro Se*

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 5, 2020, I filed the foregoing with the Clerk of

Court through the CM/ECF system which will automatically send electronic mail notification of such

filing to the CM/ECF registered participants as identified on the Electronic Mail Notice List:

Anne M. Lockner

Dated: November 5, 2020
Saint Croix Co., WI

s/ Brock Fredin
Brock Fredin
Saint Croix Co., WI 54002
(612) 424-5512 (tel.)
brockfredinlegal@icloud.com
*Plaintiff, Pro Se*

18