# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Brock Fredin,

      Plaintiff,

      v.                                                          Case No. 0:20-cv-01929-SRN-HB

Jamie Kreil,

      Defendant.

**Reply in Support of Jamie Kreil's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and to Designate Brock Fredin a Vexatious Litigant**

**Introduction**

Fredin does not make a serious effort to resist Kreil's Motion to Dismiss. As explained in Kreil's opening brief, Fredin bases his claims here on (1) Kreil's 2017 Facebook post and (2) Kreil's declaration filed in this Court on September 3, 2020. *See* Mem. in Supp. at 7-8; *see also* Am. Compl. ¶¶ 10, 12, 26-75, Ex. A. His claims based on the 2017 Facebook post are time barred, *See* Mem. in Supp. at 8-12, and his claims based on the declaration are barred by the absolute litigation privilege. *See id*. at 12-17. The foregoing disposes of Fredin's entire Amended Complaint. Moreover, Fredin's claims concerning Kreil's declaration share the same flaws that led the Court to dismiss his claims in prior suits. *Id.* at 17-23.

Fredin barely acknowledges any of this in his Opposition. He asserts in passing that he is entitled to "equitable tolling" of his time-barred claims, *see* Opp. at 4-5, but fails to address (much less distinguish) the authority cited in Kreil's opening brief holding otherwise. *See* Mem. in Supp. at 8-12. Fredin does not so much as mention the absolute litigation privilege in his Opposition. *See id*. at 12-17. And Fredin makes no effort to dispute that his abuse of process, fraud, and IIED claims all fail for the same reasons this Court has repeatedly dismissed his similar claims in prior lawsuits. *See id.* at 17-23.

As to Kreil's request that the Court designate Fredin a vexatious litigant, Fredin again fails to respond to the substance of Kreil's opening brief. *See id.* at

1

24-30. Nor, for that matter, does Fredin address his recent misconduct in this litigation—the subject of Kreil's Motion for Sanctions (Dkt. 17)—that confirms beyond any doubt that the Court should designate Fredin a vexatious litigant. Fredin merely asserts that the First Amendment precludes a pre-filing injunction here (though it plainly does not), and directs the Court to a separate brief that makes little mention of the issue. *See* Opp. at 10.

In sum, Fredin's claims fail as a matter of law, his behavior warrants a pre-filing injunction, and Fredin can barely be bothered to argue otherwise. Fredin dedicates more of his brief to blaming Kreil's counsel for George Floyd's death than to responding to Kreil's arguments and authority. Particularly in light of Fredin's failure to respond to the substance of Kreil's opening brief, the Court should dismiss Fredin's Amended Complaint with prejudice and add Fredin to the Court's list of restricted filers.

## Argument

### I. Fredin fails to show that equitable tolling saves his time-barred claims concerning Kreil's 2017 Facebook post.

Fredin does not dispute that his defamation, conspiracy to defame, and IIED claims concerning Kreil's 2017 Facebook post are untimely. *See* Mem. in Supp. at 8-9. Nor could he, as the statute of limitations ran on those claims nearly two years ago. *See id.* And Fredin does not contest that he fails to plead—indeed, *cannot* plead—that Kreil fraudulently concealed his cause of action, as would be

necessary under Minnesota law for Fredin to toll the statute of limitations based on his claimed ignorance of Kreil's identity. *See id*. at 9-11. Rather, Fredin asserts, in a few conclusory sentences, that he is entitled to "equitable tolling" because he "pursu[ed] his rights diligently," but "some extraordinary circumstance stood in his way." Opp. at 4-5. Fredin is wrong for at least three reasons.

First, the doctrine Fredin invokes does not apply. Minnesota law governs the tolling of limitations periods for Fredin's state-law claims. *See, e.g.*, *Ernst v. Hinchliff*, 129 F. Supp. 3d 695, 728 (D. Minn. 2015), *aff'd*, 652 F. App'x 479 (8th Cir. 2016). As relevant here, Minnesota recognizes two forms of tolling. *See Sanchez v. State*, 816 N.W.2d 550, 561 (Minn. 2012). First, it recognizes tolling based on the plaintiff's ignorance of their cause of action—but *only* if the plaintiff is able to show fraudulent concealment. *Id.* Second, Minnesota law permits tolling where "a state actor or some other 'paramount authority' prevented" timely filing, and the plaintiff has diligently pursued his or her legal rights. *Id.* at 562 (quoting *St. Paul, M. & M. Ry. Co. v. Olson*, 87 Minn. 117, 120 (1902)).

Here, the only barrier to filing suit Fredin identifies is his claimed ignorance of Kreil's identity and resulting belief that Kreil "did not exist." *See* Am. Compl. ¶ 13-14, 24; Opp. at 5. Minnesota law requires that Fredin show fraudulent concealment in order to toll the statute of limitation for his claims

3

based on that claimed ignorance. *See Sanchez*, 816 N.W.2d at 561; *see also Wild v. Rarig*, 302 Minn. 419, 450 (1975).

Recognizing that he cannot do so, Fredin attempts to equate his own ignorance, which "does not toll statutes of limitations" under Minnesota law, *Johnson v. Winthrop Labs. Div. of Sterling Drug, Inc.*, 291 Minn. 145, 151 (1971), with a barrier to suit interposed by "'paramount authority,'" which *does* allow tolling. *Olson*, 87 Minn. at 120. But Fredin identifies no state actor or similar "'invincible necessity'" that restrained him from filing suit, as distinct from his own alleged ignorance. *Sanchez*, 816 N.W.2d at 562 (quoting *Olson*, 87 Minn. at 120). Certainly, the Court did not bar Fredin from filing suit, as Fredin implies, *see* Opp. at 5; it merely refused to permit him to take untimely discovery in parallel litigation (as discussed below) that presented just one avenue for Fredin to learn of his claims. Fredin effectively asks that the Court apply the "discovery rule," under which ignorance tolls statutes of limitations without fraudulent concealment, in direct contravention of Minnesota law. *See Johnson*, 291 Minn. at 150-51.

In any event, Fredin fails to satisfy either criteria of the tolling doctrine on which he relies. As to the first (diligence), Fredin contends that he "exercised due diligence in seeking [Kreil]'s identity" by "filing lawsuits," specifically "*Fredin v. Middlecamp*," and by "filing limited discovery motions" in that litigation. Opp. at 5. But as explained in Kreil's opening brief, Fredin failed to take any timely

discovery in the *Middlecamp* litigation. *See* Mem. in Supp. at 11-12. When he filed a motion seeking discovery into Kreil's identity out of time, the Court denied it because "Fredin 'cavalierly disregarded' the Court's Pretrial Scheduling Order not once or twice but repeatedly, and . . . offered no evidence whatsoever that he was diligent in his efforts to comply with it." Order at 9, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Oct. 29, 2019); *see also id.* at 8 (denying discovery because Fredin did not "diligently *beg[i]n* discovery within the time prescribed by the scheduling order," much less complete it). Indeed, the Court found it was "hard[ ] to explain" why Fredin "fail[ed] to ask for [Kreil's identity] during the discovery period," as its relevance "would have been apparent to the least sophisticated litigant." *Id.* at 6-7.

The Court recently reaffirmed in its Order granting summary judgment in the *Middlecamp* litigation that "Fredin certainly had the opportunity to timely conduct discovery in th[at] case" in order to determine Kreil's identity, "but did not do so." Order at 29, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Nov. 13, 2020). It noted that while Fredin claimed the Court "unfairly denied him the opportunity to conduct discovery," the Court's Order well documented his "failure to comply with the deadlines and terms of the Pretrial Scheduling Order, and his failure to show good cause for not complying." *Id.* at 3.

Rather than establish that Fredin acted diligently, his conduct in the *Middlecamp* litigation precludes such a showing. Fredin cannot demonstrate that his diligence in seeking Kreil's identity through the *Middlecamp* case satisfies the "necessarily . . . high" standard to toll his untimely claims, *Sanchez*, 816 N.W.2d at 561, when this Court has held Fredin's marked *lack* of diligence foreclosed even a modest extension of the discovery period. Fredin makes no effort to argue otherwise, despite relying solely on the *Middlecamp* litigation to establish his diligence for purposes of tolling here, *see* Opp. at 5, and despite Kreil raising the above issue at length in her opening brief. *See* Mem. in Supp. at 11-12.

With respect to the second factor, Fredin contends that two "extraordinary circumstance[s]" precluded him from timely filing. Opp. at 4-5. First, he asserts that he "was denied discovery" in the *Middlecamp* case. *Id.* at 5. But as discussed above, that is not accurate. Rather, Fredin failed even to "*beg[i]n* discovery within the time prescribed by the scheduling order," and thus the Court denied his motion to take discovery out of time because he "'cavalierly disregarded' the Court's Pretrial Scheduling Order not once or twice but repeatedly." Order at 8-9, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Oct. 29, 2019). In other words, Fredin was not "denied discovery," Opp. at 5—he just failed to take it. Fredin has no one to blame but himself. And tolling is available under Minnesota

6

law "only when some factor completely outside the claimant's control prevented him from meeting a statutory deadline." *Sanchez*, 816 N.W.2d at 561.

Fredin contends the second "extraordinary circumstance" that prevented him from timely filing suit was that Kreil "intentionally withheld her identity and acted with her surrogates to hide her affidavit [in the *Middlecamp* litigation] to a period in which Plaintiff could not respond." Opp. at 4-5. This second "extraordinary circumstance" is merely a rehash of the first. Fredin complains that he was unable to identify Kreil in connection with the *Middlecamp* litigation, without acknowledging that he simply "fail[ed] to ask for [Kreil's identity] during the discovery period." Order at 6-7, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Oct. 29, 2019).

"The burden is on the plaintiff seeking relief from the running of the statute of limitations to show that the statute should be tolled." *Bartlett v. Miller & Schroeder Municipals, Inc.*, 355 N.W.2d 435, 441 (Minn. Ct. App. 1984). And "the standard . . . to toll statutes of limitations" under Minnesota law "is necessarily a high one." *Sanchez*, 816 N.W.2d at 561. The only justification Fredin supplies for tolling the limitations period here is his conduct in litigating the *Middlecamp* action. *See* Opp. at 4-5. But Fredin's conduct in that litigation does not help him meet his burden—it forecloses him from doing so. *See* Order at 8-9, *Fredin v.*

7

*Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Oct. 29, 2019). The Court should

therefore dismiss Fredin's untimely claims based on Kreil's 2017 Facebook post.

## II. Fredin fails to dispute that the absolute litigation privilege bars his remaining claims concerning Kreil's declaration.

Fredin makes no mention of the absolute litigation privilege in his

Opposition, despite the fact that it bars his only timely claims. *See* Mem. in Supp.

at 12-17. Specifically, Fredin does not dispute that (1) the absolute privilege

applies to his claims for abuse of process, fraud, and IIED (to the extent his IIED

claim concerns Kreil's declaration rather than the 2017 Facebook post); (2) that

Kreil's declaration falls squarely within the privilege; or (3) that Fredin's claims

based on the declaration must therefore be dismissed. *See id*. Particularly given

Fredin's failure to oppose this aspect of Kreil's Motion, the Court should dismiss

Fredin's claims based on Kreil's declaration with prejudice. *See Njema v. Wells*

*Fargo Bank, N.A.*, 124 F. Supp. 3d 852, 867 (D. Minn. 2015) (noting that a plaintiff's

failure to respond to arguments in a motion to dismiss results in waiver of the

plaintiff's argument on that unaddressed point).

## III. Fredin does not contest that his abuse of process, fraud, and IIED claims all fail for the same reasons the Court has dismissed his similar claims in prior lawsuits.

Just as Fredin makes no effort to address the absolute litigation privilege,

he fails even to acknowledge that his abuse of process, fraud, and IIED claims

share the same defects that led the Court to dismiss his similar claims in several

earlier lawsuits. *See* Mem. in Supp. at 17-23. In addition to the absolute litigation

privilege, these defects merit dismissal of those claims.

First, Fredin fails to address any of the fatal flaws in his abuse of process

claim Kreil points out in her opening brief. *See* Mem. in Supp. at 17-20. He does

not contest that (1) Kreil did not (and could not) use any "process" within the

meaning of the tort as a mere third-party witness; (2) Kreil did not attempt to

accomplish any result outside the scope of the proceeding; (3) Fredin supplies

only conclusory allegations to support his claim that Kreil acted with an ulterior

motive; and (4) Fredin fails to plausibly allege that he suffered damages. *See id.*

Nor does Fredin dispute that these are grounds on which the Court has

dismissed his similar abuse of process claims in prior cases. *See, e.g., Fredin v.*

*Miller*, No. 19-CV-3051 (SRN/HB), 2020 WL 3077708, at *8 (D. Minn. June 10,

2020); *Fredin v. Clysdale*, No. 18-CV-0510 (SRN/HB), 2018 WL 7020186, at *11 (D.

Minn. Dec. 20, 2018), *report and recommendation adopted*, No. 18-CV-0510

(SRN/HB), 2019 WL 174949 (D. Minn. Jan. 10, 2019); *Fredin v. Middlecamp*, No.

0:17-CV-3058-SRN-HB, 2018 WL 4616456, at *5 (D. Minn. Sept. 26, 2018). Rather

than respond to these arguments, Fredin merely lists citations to cases in other

jurisdictions without analysis, none of which cure the foregoing defects.[1]

---

[1] For example, Fredin cites cases in which individuals made false police reports
for ulterior purposes leading to the plaintiff's arrest, but fails to explain how
Kreil caused any similar "process" to issue. *See Martucci v. Milford Borough*, No.

Second, Fredin does not address the fact that his fraud claim again fails to allege that *Fredin himself* relied on any fraudulent statements. *See* Mem. in Supp. at 21. And again, Fredin does not contest that this Court has dismissed his prior fraud claims for precisely this reason. *See Clysdale*, 2018 WL 7020186, at *11; *Miller*, 2020 WL 3077708, at *12. Rather than attempt to shore up this evident deficiency in his claim, Fredin embarks on an irrelevant tangent about the "suspicious timing" of Kreil's declaration. *See* Opp. at 8.

Third, Fredin does not respond to the authority Kreil cites showing that his IIED claim based on her declaration does not allege sufficiently "outrageous" conduct. *See* Mem. in Supp. at 22-23. Nor does Fredin dispute that this is the same reason the Court has dismissed Fredin's similar claims in other litigation. *See, e.g.*, *Miller*, 2020 WL 3077708, at *13. Fredin instead dedicates his energy to defending his IIED claim based on Kreil's 2017 Facebook post. *See* Opp. at 9-10.

---

3:17-1671, 2018 WL 1755728, at *8-10 (M.D. Pa. April 10, 2018); *Crockett v. City of New York*, No. 11-CV-4378 (PKC), 2015 WL 5719737, at *11 (E.D.N.Y. Sept. 29, 2015). He cites cases in which parties exploited legal processes over which they exerted control for unfair advantage, but fails to explain how those cases apply to a third-party who merely offers testimony in a civil action. *See PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, No. 16-403-LPS-CJB, 2017 WL 3821107, at *10 (D. Del. Aug. 31, 2017); *Heley v. J & M Sec., LLC*, No. 4:15CV01578, at *3 (E.D. Mo. May 10, 2016); *Ritterbusch v. Holt*, 789 S.W.2d 491, 492-93 (Mo. 1990). And he cites cases that do not appear to hold any relevant analysis whatsoever. *See Fisher v. King* No. 15-6134, 2016 WL 3940794, at *1-5 (E.D. Pa. July 20, 2016); *DeAngelis v. City of Bridgeport*, No. 3:14-cv-01618, at *11 (D. Conn. Sept. 5, 2017); *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691 (8th Cir. 2017).

But as discussed above and in Kreil's opening brief, Fredin's claim is time barred to the extent it concerns Kreil's 2017 Facebook post. *See* Mem. in Supp. at 8-12.

Finally, it bears noting that the Court recently granted summary judgment in the *Middlecamp* litigation without considering Kreil's declaration. *See* Order at 31, *Fredin v. Middlecamp*, Case No. 0:17-cv-03058 (D. Minn. Nov. 13, 2020). Each of Fredin's claims above require that Fredin show that Kreil's declaration injured him. *See, e.g.*, *Clysdale*, 2018 WL 7020186, at *11 (noting the injury requirements of abuse of process and fraud claims); *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438 (Minn. 1983) (noting that an IIED claim will lie only if the Plaintiff can show "a contemporaneous physical injury, or . . . the invasion of a legal right"). The Court's recent decision forecloses Fredin from making that showing, and supplies yet another reason to dismiss the foregoing claims with prejudice.

## IV.   Fredin fails to address the substance of Kreil's request that the Court designate him a vexatious litigant.

Kreil's opening brief provides a detailed history of Fredin's ignoble tenure as one of the District's most frequent filers over the last three years. *See* Mem. in Supp. at 24-27. Kreil has since filed a Motion for Sanctions (Dkt. 17), which details Fredin's recent campaign of extrajudicial harassment and intimidation. Fredin does not contest any aspect of Kreil's account of his vexatious conduct. Instead, Fredin perfunctorily asserts that the First Amendment prevents the Court from entering a pre-filing injunction against him. *See* Opp. at 10. He

11

further directs the Court to a separate brief that makes little mention of Kreil's request that the Court designate him a vexatious litigant. *See id.*

"[T]here is 'no constitutional right of access to the courts to prosecute an action that is frivolous or malicious.'" *In re Tyler*, 839 F.2d 1290, 1292 (8th Cir. 1988) (quoting *Phillips v. Carey*, 638 F.2d 207, 208 (10th Cir. 1981)). Accordingly, "[t]he Court may, in its discretion, place reasonable restrictions on a[ ] litigant" like Fredin "who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process." *Id.* at 1293 (quoting *People of the State of Colorado v. Carter*, 678 F. Supp. 1484, 1486 (D. Colo. 1986)). "To deter such activity, a district court may bar litigants from any additional filings without first obtaining leave from the court." *City of Shorewood v. Johnson*, No. 11-374-JRT-JSM, 2012 U.S. Dist. LEXIS 28534, at *28 (D. Minn. Jan. 12, 2012). No case—including that cited by Fredin—holds that the First Amendment prevents courts from entering pre-filing injunctions when warranted. *See Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004) (noting that courts have "the authority to limit access to the courts by vexatious and repetitive litigants").

Fredin further refers the Court to his Opposition to Kreil's Motion for Sanctions. But that brief does not include any significant discussion of Kreil's request to designate Fredin a vexatious litigant. Fredin asserts (without citation) that his "claims in this and related actions have been repeatedly proven to have

12

merit." Opp. to Mot. for Sanctions (Dkt. 28) at 7. But Fredin does not dispute any aspect of Kreil's account of his serial litigation in this Court, which shows that is hardly the case. *See* Mem. in Supp. at 24-27. Beyond that, Fredin merely repeats his incorrect assertion that the First Amendment precludes the Court from entering a prefiling injunction. *See* Opp. to Mot. for Sanctions (Dkt. 28) at 8.

Fredin otherwise fails to dispute that his conduct warrants designating him a vexatious litigant. *See* Opp. at 10. For all of the reasons set out in Kreil's opening brief, *see* Mem. in Supp. at 23-30, as well as Kreil's brief in support of her Motion for Sanctions (Dkt. 17), Fredin's stream of meritless lawsuits and open abuse of the judicial process more than warrant such relief.

## Conclusion

Fredin has failed to oppose (or even acknowledge) the arguments and authority raised in Kreil's opening brief. He makes no serious effort to save his claims, or to avoid a pre-filing injunction. The Court should dismiss Fredin's Amended Complaint with prejudice and designate Fredin a vexatious litigant.

DATED:  November 17, 2020       **ROBINS KAPLAN LLP**

By:   /s/ *Anne M. Lockner*
Anne M. Lockner (0295516)
J. Haynes Hansen (Bar No. 0399102)
Ena M. Kovacevic (Bar No. 0400149)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
T: (612) 349-8500
F: (612) 339-4181
alockner@robinskaplan.com
ekovacevic@robinskaplan.com
hhansen@robinskaplan.com

*Counsel for Defendant Jamie Kreil*