UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Brock Fredin,<br><br>    Plaintiff,<br><br>v.<br><br>Jamie Kreil,<br><br>    Defendant. | Case No. 0:20-cv-01929-SRN-HB |

**Jamie Kreil's Fee Petition for Attorneys' Fees
Related to Kreil's Motion for Sanctions**

As directed by the Court in its November 23, 2020 Order (Dkt. 39), Jamie Kreil submits as follows in support of her fee petition, and respectfully requests that the Court award attorneys' fees in the amount of $26,748.50, as well as any additional fees the Court deems appropriate.

**Introduction**

Brock Fredin engaged in an "online assault on the reputations of opposing counsel, judges, and court staff in order to bully Defendants into favorable settlement terms and influence this Court's rulings." Order (Dkt 39) at 14. This fee petition concerns counsel's necessary efforts, undertaken on an expedited basis, to curtail this misconduct that "defiled 'the temple of justice.'" *Id.* at 27 (quoting *Stevenson v. Union Pac. R.R.*, 354 F.3d 739, 751 (8th Cir. 2004)).

Fredin's misconduct forced Kreil's counsel to invest time in a Motion for Sanctions that would otherwise have generated billings of $44,633.50. Lockner Decl. ¶ 4, Ex. B. Were Kreil to seek the full amount of fees unavoidably incurred in addressing Fredin's misconduct, including his recent contempt of the Court's Order on Kreil's Motion, they would exceed $63,510. *Id.* ¶ 13, Exs. B, C, D, E. Kreil instead seeks only her fees specifically related to drafting and editing her Motion for Sanctions and its supporting documents—to the exclusion of legal research and similarly necessary tasks—which amount to $26,748.50. *Id.* ¶ 3, Ex A. Kreil so limits her request solely to ensure that, by any measure, it is just and

1

proportionate. This fee request is reasonable in its own right, but is especially so given the extraordinary misconduct that occasioned Kreil's Motion for Sanctions, as well as the continuing burden on Kreil's counsel imposed by Fredin's open contempt of the Court's Order (Dkt. 39). Indeed, for the reasons discussed below, the Court can and should depart upward from this amount at its discretion.

**Background**

Brock Fredin created "dozens" of "inflammatory, baseless, demeaning, and disturbing" web publications, which he "explicitly attempted to leverage . . . to obtain favorable settlement terms," and further used to threaten the Court with "retaliation . . . for any ruling against him." Order (Dkt. 39) at 13. Fredin's "unequivocally malicious" conduct, *id.* at 25, forced Kreil's counsel to set aside other work and seek relief from the Court on an expedited basis. Lockner Decl. ¶¶ 10, 11, 15. Counsel prepared 40 pages of briefing, four declarations, and numerous exhibits (Dkts. 17-19, 23, 32-34, 3) on a tight schedule. All the while, Fredin continued to create "graphic, degenerate, and repugnant" content to further his campaign of intimidation and harassment. Order (Dkt. 39) at 25.

Kreil filed a Motion for Sanctions (Dkt. 15), which the Court largely granted on November 23, 2020. *See* Order (Dkt. 39). The Court enjoined Fredin from further "vigilante" tactics, declared him a vexatious litigant, and "order[ed] Fredin to pay the reasonable attorneys' fees incurred in bringing Kreil's Motion

2

for Sanctions." *Id.* at 27. But Fredin *still* did not relent, vowing in a letter to the Court that he "will not abide by the directives set forth in [the] November 23, 2020 Order," Letter (Dkt. 48) at 2, and creating additional web publications to further violate the Court's Order. *See* Mem. in Supp. (Dkt. 53) at 1. This forced Kreil's counsel to expend *additional* time and resources in preparing a Motion to Show Cause (Dkt. 51). Moreover, despite having already informed the Court that he would not comply with its November 23, 2020 Order, Fredin further made a baseless request for leave to file a motion to reconsider, *see* Letter (Dkt. 48) at 2, necessitating an opposition from Kreil (Dkt. 50). Fredin has now filed a frivolous Motion to Vacate (Dkt. 69), which will only further burden counsel's time. And Fredin has already filed a notice of appeal regarding the Court's Order (Dkt. 49), which will likewise pose a continuing burden on counsel's time.

Fredin's egregious and continuing "bad-faith conduct toward Kreil," Order (Dkt. 39) at 27, has forced Kreil's counsel to expend considerable time and resources. The time Kreil's counsel spent on the Motion for Sanctions alone would have generated billings of $44,633.50 had counsel been able to dedicate that time to other work. Lockner Decl. ¶ 4, Ex. B. This does not account for the time counsel expended on related matters, such as a motion for an order to show cause (worth $7,902.50), responding to the request for reconsideration (worth

3

$1,774), and preparing the instant fee petition (worth $9,200).[1] *Id.* ¶¶ 5-7, Exs. C, D, E. The foregoing is all time that could have—and should have—been free for counsel to dedicate to other matters.

The time Kreil's counsel spent on the foregoing was both necessary and proportionate. *See id.* ¶ 9. Moreover, Fredin's ongoing contempt of the Court's Order (Dkt. 39) makes clear that Kreil's counsel can expect to dedicate significant *additional* time and resources to the issue going forward. Nonetheless, Kreil seeks only fees related to drafting and editing her Motion for Sanctions and supporting documents, totaling $26,748.50, Lockner Decl. ¶ 12, Ex. B, as opposed to all potential "fees incurred in bringing" the Motion. Order (Dkt. 39) at 27. This amount omits fees for legal research, strategy discussions, and other necessary tasks that counsel would typically include in a fee petition. Lockner Decl. ¶ 12. It further omits "fees on fees" and other activities related to enforcing the Court's Order on Kreil's Motion for Sanctions. *Id.*

In short, Kreil seeks only a fraction of the sum that would make her and her counsel whole for the above efforts to curtail Fredin's "over-the-top and out-of-court retaliatory actions against Defendants, their counsel, and this Court." Order (Dkt. 39) at 25. Kreil so limits her request solely to ensure that, by any

---

[1] "Time spent preparing fee applications is generally compensable." *El-Tabech v. Clarke*, 616 F.3d 834, 843-44 (8th Cir. 2010).

4

measure, it is equitable and proportionate. But as discussed below, the Court can and should depart upward from this figure at its discretion.

## Argument

Kreil seeks fees for 49.5 hours spent preparing her Motion for Sanctions and accompanying filings, which (if billed at counsel's customary rates) would have generated billings totaling $26,748.50. This amount is both reasonable and fair, and leaves substantial room for upward adjustment should the Court deem it appropriate.

"The 'most useful starting point' for determining a reasonable attorney's fee is the lodestar, which is the product of a reasonable hourly rate and the number of hours reasonably expended on the matter." *Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 575 (8th Cir. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "A district court also may weigh other considerations to determine whether an attorney's fee should be adjusted upward or downward from the lodestar." *Id.* In particular, the Eighth Circuit has instructed:

> In determining the amount of attorney's fees the court should consider these 12 factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and

5

>length of the professional relationship with the client; and (12) awards in similar cases.

*Winter v. Cerro Gordo Cty. Conservation Bd.*, 925 F.2d 1069, 1074 n.8 (8th Cir. 1991).

As an initial matter, "in calculating the lodestar, courts should consider whether counsel have already exercised their billing discretion to reduce the hours requested." *Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV 13-02529 MMM (VBKx), 2015 U.S. Dist. LEXIS 188824, at *146 n.282 (C.D. Cal. May 29, 2015). As discussed above, Kreil seeks approximately half of her fees related to the Motion for Sanctions, and only a fraction of the overall fees Kreil could seek under the circumstances. Kreil respectfully submits that this voluntary reduction more than subsumes any potential downward departure the Court might otherwise impose.

In any event, both the time expended on the Motion for Sanctions and the billing rates of Kreil's counsel are reasonable. As to the former, the time Kreil's counsel spent preparing the Motion was commensurate to the task. The Motion addressed broad-ranging misconduct—spanning multiple lawsuits and dozens of online publications—requiring extensive briefing on an expedited schedule. Given the unique and egregious nature of Fredin's misconduct, Kreil's counsel had no ready model to follow in preparing these filings. Lockner Decl. ¶ 9. The multiple remedies necessary to address Fredin's misconduct each entailed their own complex legal analysis. *See* Mem. in Supp. (Dkt 17) at 9-21. Moreover, the fact that Fredin *escalated* his campaign of harassment and intimidation during the

6

briefing on the Motion for Sanctions only further complicated and expanded the issues necessarily addressed by the Motion. And the number of hours (49.5) is comparable to or lower than hours courts have deemed reasonable to prepare complex sanctions motions.[2] But again, counsel is not aware of any close comparator, and the time necessary to prepare a motion concerning garden variety litigation misconduct is not the same as the time required to respond to the "over-the-top and out-of-court retaliatory actions against Defendants, their counsel, and this Court" that took place here. Order (Dkt. 39) at 25.

Moreover, counsel's customary billing rates, ranging from $440-$725 per hour, *see* Lockner Decl. ¶ 14, are consistent with rates charged by similar firms, and comparable to rates approved by the Court in other cases.[3] And this fee

---

[2] *See Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, No. 14 C 00206, 2020 U.S. Dist. LEXIS 160474, at *10 (N.D. Ill. Sep. 2, 2020) (deeming 255 hours reasonable to prepare a sanctions motion with combined briefing totaling only 30 pages due to the "complexity of the motion for sanctions and reply brief"); *Ramos v. Swatzell*, No. ED CV 12-1089-TJH (SPx), 2018 U.S. Dist. LEXIS 228652, at *22 (C.D. Cal. Feb. 15, 2018) (deeming 92 hours spent on a complex sanctions motion to be reasonable); *Gibson v. Credit Suisse AG*, No. CV 10-1-JLQ, 2015 U.S. Dist. LEXIS 120708, at *31 (D. Idaho Sep. 8, 2015) (finding 80 and 84 hours to be reasonable hours expended on two sanctions motions); *Daimler AG v. A-Z Wheels LLC*, No. 16cv875-JLS-MDD, 2018 U.S. Dist. LEXIS 68110, at *2 (S.D. Cal. Apr. 23, 2018) (finding 69.4 hours pursuing a motion for sanctions to be reasonable); *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, Case No. 16-cv-1094-JTM-TJJ, 2018 WL 1992413 at *4 (D. Kan. Apr. 27, 2018) (finding 94.4 hours was reasonable to litigate a motion for sanctions).

[3] *See, e.g., Roeser v. Best Buy Co., Inc.*, No. 13-cv-1968 (JRT/HB), 2015 WL 4094052, at *12 (awarding attorneys' fees with "billing rates rang[ing] from $550 to $775

petition stems from sanctions imposed pursuant to the Court's inherent power. One "purpose of the inherent power is . . . to make the non-violating party whole." *Purchasing Power, LLC v. Bluestem Brands*, Inc., 851 F.3d 1218, 1225 (11th Cir. 2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). Absent Fredin's egregious misconduct, Kreil's counsel would have dedicated the time spent on Kreil's Motion for Sanctions to other, paying work, for which counsel would have received compensation at the above rates. *See* Lockner Decl. ¶¶ 10, 11, 15. A fee award at lesser rates would disserve the purpose of sanctions under the Court's inherent powers. This would be particularly unjust given what occasioned the Motion—Fredin's "online assault on the reputations of [Kreil's] counsel" that has not only imposed substantial burdens on counsel's time, but "put them in reasonable fear for their safety and privacy, as well as the safety and privacy of their families." Order (Dkt 39) at 5, 14.

The additional factors Courts consider in evaluating fee requests confirm that Kreil's requested fees are reasonable and that, if anything, the circumstances warrant an upward departure. The "the time and labor required" to address Fredin's misconduct through Kreil's Motion for Sanctions, *Winter*, 925 F.2d at 1074 n.8, was substantial. Lockner Decl. ¶ 9; Ex. A. And Fredin's open contempt

---

per hour," and as high as $880 for one senior partner) (D. Minn. July 7, 2015); *ResCap Liquidating Tr. v. Home Loan Ctr., Inc.*, 399 F. Supp. 3d 827, 848 (D. Minn. 2019) (approving billing rates of up to $675).

of this Court's Order granting that Motion suggests Fredin's misconduct will only continue to burden the time and resources of Kreil's counsel for the foreseeable future. *See* Mem. in Supp. of Mot. to Show Cause (Dkt. 53).

As discussed above, the unique and uniquely egregious nature of Fredin's misconduct raised "novel[ ] and difficult[ ] . . . questions" as to the necessary remedies, which required significant "skill" to effectively brief on an expedited basis. *Winter*, 925 F.2d at 1074 n.8. Doing so "preclu[ded]" Kreil's counsel from spending time on other, paying matters. *Id.*; *see also* Lockner Decl. ¶¶ 10, 11, 15. The fees at issue represent only a fraction of "the customary fee" Kreil's counsel would have otherwise charged for that time. *Winter*, 925 F.2d at 1074 n.8.

Moreover, counsel labored under significant "time limitations imposed by . . . the circumstances." *Id.* The nature of Fredin's "online assault," Order (Dkt 39) at 14, necessitated a swift and decisive response, and thus Kreil's counsel sought and obtained relief on an expedited basis. The fact that Fredin "doubled down on his online smear campaign," Order (Dkt. 39) at 14, during briefing on Kreil's Motion for Sanctions underscored that urgency, leading Kreil to file her Reply (Dkt. 32) in half the time allotted by the Court's Briefing Order (Dkt. 22).

Kreil ultimately obtained substantial "results," *Winter*, 925 F.2d at 1074 n.8, with the Court enjoining Fredin's campaign of intimidation and harassment, designating Fredin a vexatious litigant, and awarding Kreil her attorneys' fees.

*See* Order (Dkt. 39). And while the Court initially declined to dismiss Fredin's Amended Complaint as a sanction, it stated that "if the Court learns of additional bad-faith conduct toward Kreil, including violations of the injunction described in this Order, the Court will reconsider its decision not to terminate [Fredin's] lawsuit." *Id.* at 27. Given Fredin's open contempt of the Court's Order, it remains to be seen whether the Court will grant this final piece of relief Kreil sought in her Motion for Sanctions. *See* Mem. in Supp. of Mot. to Show Cause (Dkt. 53).

As for "the experience, reputation, and ability of [Kreil's] attorneys," *Winter*, 925 F.2d at 1074 n.8, counsel are graduates of top law schools, veterans of state and federal clerkships, and practitioners at one of the area's top law firms. Lockner Decl. ¶¶ 16, 17, 18, 19, Exs. F, G, H, and I. Kreil's counsel took an "'undesirab[le]' . . . case" on a *pro bono* basis, *Winter*, 925 F.2d at 1074 n.8, as a public service, and to help the victim of a "vexatious" and "'abusive'" litigant. Order (Dkt. 39) at 24 (citation omitted). Notably, Fredin sought, through "disturbing and vile" means, Order (Dkt. 39) at 25, to deter competent counsel from representing his perceived enemies. As this Court observed, such conduct damages the "'integrity and credibility of the civil justice system.'" *Id.* at 26 (citation omitted). The Court can and should mitigate that damage not only by deterring unscrupulous litigants like Fredin, but by compensating counsel who stand by their clients through such abuse.

The overall amount Kreil seeks here is similar to fee awards in similar cases.[4] *See Winter*, 925 F.2d at 1074 n.8. And this again is only a fraction of the fees Fredin's misconduct forced Kreil's counsel to forego, and does not account for his ongoing contempt of the Court's Order. Kreil respectfully submits that $26,748.50 represents a floor on a reasonable fee award under the circumstances, from which the Court should depart upward at its discretion.[5]

Finally, "[j]ust what is a reasonable attorneys' fee is a matter peculiarly within the district court's discretion." *Greater Kansas City Laborers Pension Fund v. Thummel*, 738 F.2d 926, 931 (8th Cir. 1984). In particular, "[t]he district court has

---

[4] *See Portz v. St. Cloud State Univ.*, Civil No. 16-1115 (JRT/LIB), 2020 WL 6119960, at *3 (D. Minn. Oct. 16, 2020) (awarding $31,585 in attorney fees billed toward a contempt motion); *Mfg. Automation & Software Sys., Inc. v. Hughes*, Case No. CV 16-8962 CAS (KSx), 2018 WL 5914235 at *19-20 (awarding $41,129.38 as reasonable attorneys' fees and costs for the preparation and drafting of a motion for sanctions); *Infinity Headwear & Apparel v. Jay Franco & Sons, et al.*, 15-cv-1259 (JPO) (RLE), 2017 WL 4402541 at * (S.D.N.Y Oct. 2, 2017) (awarding $29,246.77 in attorneys' fees and costs as sanctions for discovery violations); *Apple Corps. v. Int'l Collectors Soc'y*, 25 F. Supp. 2d 480, 502 (D.N.J. 1998) (granting plaintiffs' counsel's application for attorneys' fees and costs totaling $131,675.02 based on a successful motion seeking a contempt order).

[5] It bears noting that, as the Court recently observed, Fredin has testified under oath that he earns an "annual salary of $160,000," and thus is well able to pay a substantial fee award without undue hardship. Order (Dkt. 59). But in any event, this Court has warned Fredin before that his "claimed financial condition" cannot "insulate him from a monetary sanction for knowingly making a false accusation of wrongdoing against Defendants or their counsel." Order (Dkt. 143) at 6, *Fredin v. Middlecamp*, Case No. 0:18-cv-00466, (D. Minn. May 18, 2020). There is little reason for the Court to save Fredin from the consequences of his own malicious actions, and there would be little justice in doing so.

great discretion in determining the proper amount of reasonable attorney fees to be awarded in a case where a party has been sanctioned." *Vallejo v. Amgen, Inc.*, No. 8:14CV50, 2017 U.S. Dist. LEXIS 115749, at *23 (D. Neb. May 30, 2017). This is not a normal case. The fee award at issue does not stem from a discovery dispute, or a fee-shifting provision found in a contract or statute, or a court filing lacking an appropriate legal or factual basis. The fees requested here are a small portion of those incurred in combating an "online assault on the reputations of opposing counsel, judges, and court staff in order to bully Defendants into favorable settlement terms and influence this Court's rulings." Order (Dkt 39) at 14. Counsel performed significant work under extraordinary circumstances to address Fredin's "unequivocally malicious" conduct. *Id.* at 25. It is only just that Fredin bear a meaningful portion of the cost of his malfeasance.

## Conclusion

This fee petition concerns a Motion for Sanctions the likes of which the undersigned has never had to file before, and hopes never to file again. Kreil's counsel have now spent well over 100 hours attempting to deal with Fredin's "over-the-top and out-of-court retaliatory actions against Defendants, their counsel, and this Court." Order (Dkt. 39) at 25. Given the circumstances, Kreil's requested fees are more than reasonable. The Court should award them in full, as well as any additional fees the Court deems appropriate.

| | |
|---|---|
| DATED:  December 7, 2020 | **ROBINS KAPLAN LLP** |
| | By: /s/ *Anne M. Lockner* |
| | Anne M. Lockner (0295516) |
| | J. Haynes Hansen (Bar No. 0399102) |
| | Ena M. Kovacevic (Bar No. 0400149) |
| | 800 LaSalle Avenue, Suite 2800 |
| | Minneapolis, Minnesota 55402 |
| | T: (612) 349-8500 |
| | F: (612) 339-4181 |
| | alockner@robinskaplan.com |
| | ekovacevic@robinskaplan.com |
| | hhansen@robinskaplan.com |
| | *Counsel for Defendant Jamie Kreil* |