## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

BROCK FREDIN,

               Plaintiff,

   --against--

LINDSEY MIDDLECAMP,

               Defendant.

Case No.  17-CV-3058

**DECLARATION OF BROCK FREDIN**

---

BROCK FREDIN,

               Plaintiff,

   --against--

GRACE MILLER,
CATHERINE SCHAEFER,

               Defendants.

Case No.  18-CV-466

**DECLARATION OF BROCK FREDIN**

---

BROCK FREDIN,

               Plaintiff,

   --against--

JAMIE KREIL,

               Defendant.

Case No.  20-CV-1929

**DECLARATION OF BROCK FREDIN**

---

STATE OF WISCONSIN   }
            ss:
COUNTY OF SAINT CROIX  }

   BROCK FREDIN, being duly sworn, deposes and says:

   1.  I am the Plaintiff in the above-captioned proceedings.  I submit this declaration in support of my response in *Fredin v. Middlecamp; Fredin v. Kreil; and Fredin v. Middlecamp*.

### **AUTHENTICATION OF DOCUMENTS**

   2.  Attached hereto as **Exhibit A** is a true and correct copy of my December 4, 2020 motion to vacate the Court's November 23, 2020 Order.

   3.  Attached hereto as **Exhibit B** is a true and correct copy of October 8, 2020 settlement emails sent from Karl Johann Breyer to me.


Dated: December 18, 2020
Saint Croix Co., WI


              s/ Brock Fredin
              Brock Fredin
              Saint Croix Co., WI 54002
              (612) 424-5512 (tel.)
              brockfredinlegal@icloud.com
              *Plaintiff, Pro Se*



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

BROCK FREDIN,

                    Plaintiff,

        --against--                          District Court Case No.  17-CV-3058
                                             (SRN/HB)
LINDSEY MIDDLECAMP,


                    Defendants.


BROCK FREDIN,

                    Plaintiff,

        --against--                          District Court Case No.  18-CV-466
                                             (SRN/HB)
GRACE MILLER,
CATHERINE SCHAEFER,


                    Defendants.


BROCK FREDIN,

                    Plaintiff,

        --against--                          District Court Case No.  20-CV-01929
                                             (SRN/HB)
JAMIE KREIL,


                    Defendant.


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF's MOTION TO VACATE THE COURT'S UNCONSTITUTIONAL NOVEMBER 23, 2020 ORDER PURSUANT TO FED. R. CIV. P. 60(b)

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

FACTUAL BACKGROUND ..........................................................................3

STANDARD OF REVIEW ............................................................................6

ARGUMENT ..................................................................................................6

   A.  THE NOVEMBER 23 ORDER IS UNCONSTITUTIONAL AS IT ORDERED A PRIOR RESTRAINT AND DIRECTED THE REMOVAL OF SPEECH WITHOUT AN ADJUDICATION ON THE MERITS ......................................................7

   B.  THE NOVEMBER 23 ORDER IS UNCONSTITUTIONAL AS IT FAILED TO IDENTIFY WITH PARTICULARLY WHAT WAS OBJECTIONABLE OR OTHERWISE NOT PROTECTED BY THE FIRST AMENDMENT WITH RESPECT TO THE EXISTING WEBSITE AND YOUTUBE CONTENT ................................................10

   C.  THE NOVEMBER 23 ORDER IS AN UNCONSTITUTIONAL PRIOR RESTRAINT ON FUTURE SPEECH ............................................................................12

   E.  PLAINTIFF'S WEBSITES AND YOUTUBE VIDEOS WHICH CRITICISM DEFENDANTS' COUNSEL ARE PROTECTED UNDER THE FIRST AMENDMENT AS LEGITIMATE MATTERS OF PUBLIC CONCERN ...............................17

   F.  PLAINTIFF'S WEBSITES AND YOUTUBE VIDEOS SATIRICALLY MOCKING DEFENDANTS' COUNSEL ARE PROTECTED UNDER THE FIRST AMENDMENT AS PARODY ..................................................................................20

CONCLUSION ............................................................................................28

CERTIFICATE OF COMPLIANCE ...........................................................29

CERTIFICATE OF SERVICE .....................................................................30

## TABLE OF AUTHORITIES

*A.P.W.U. v. U.S. Postal Service*, 830 F.2d 294, 306 (D.C. Cir. 1987)...................25

*Accord Fisher v. Dees*, 794 F.2d 432, 437-38 (9th Cir. 1986) ................................26

*Advanced Training Sys., Inc. v. Caswell Equip. Co., Inc.*,

    352 N.W.2d 1, 11 (Minn. 1984).......................................................................8, 11

*Antigua Coll. of Med. v. Woodward*,

    837 F.Supp.2d 686, 696 (E.D.Mich. 2011)...........................................................22

*Auburn Police Union v. Carpenter*, 8 F.3d 886, 803 (1st Cir. 1993).............8, 11, 13

*Barnes v. McDowell*, 848 F.2d 725, 734 (6th Cir. 1988) .........................................16

*Blum v. Schlegel*, 18 F.3d 1005, 1012 n. 5 (2d Cir. 1994) ......................................22

*Busch v. Viacom Int'l, Inc.*, 477 F.Supp.2d 764, 777 (N.D.Tex. 2007) .................22

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,

    838 F.Supp. 1501, 1515-16 (N.D.Okl. 1993) .....................................................22

*Caroll v. President & Com'rs of Princess Anne*, 393 U.S. 175, 180 (1986).............9

*City of New York v. Mickalis Pawn Shop, LLC*,

    645 F.3d 114, 138 (2d Cir. 2011)..........................................................................7

*Connick v. Myers*, 46 U.S. 138, 145 (1983) ...........................................................20

*Conroy v. Kilzer*, 789 F.Supp. 1457, 1468 (D. Minn. 1992)...................................15

*Dun & Bradstreet, Inc. v. Greenmoss Builders*, 4

    72 U.S. 749, 780 (1985) .................................................................................16, 19

*Falwell*, 485 U.S. at 56 ...........................................................................................21

*Farah v. Esquire Magazine*, 736 F.3d 528, 536 (D.C. Cir. 2013)..........................23

*Fine v. Bernstein*, 726 N.W.2d 137, 144 (Minn. 2007)..........................................16

*Gannett Co. v. DePasquale*, 433 U.S. 358, 393 n. 25 (1979) ................................13

*Garrison v. Louisiana*, 379 U.S. 64, 77 (1964)......................................................16

*Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975)............................16

*Groucho Marx Prods. v. Day and Night Co.*,

    689 F.2d 317, 319 n. 2 (2d Cir. 1982)..................................................................22

*GTFM, Inc. v. Universal Studios, Inc.*, 79 U.S.P.Q.2d 1213, 1216 ......................25

*Hustler Magazine v. Falwell*, 485 U.S. 46 (1988)....................................................21

*In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985).........................7

*In re Outsidewall Tire Litigation*, 748 F.Supp.2d 557, 564 (E.D.Va. 2010)...........22

*L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26 (1st Cir. 1987)....................23

*Layshock v. Hermitage School*, 412 F.Supp.2d 502, 508 (W.D.Pa 2006) ..............22

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).........................................23

*Mink v. Know*, 566 F.Supp.2d 1217, 1226 (D.Col. 2008) ......................................27

*muller v. Fairfax County School Bd.*, 878 F.2d 1578, 1583 (4th Cir. 1989)............23

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 557 (1976).....................................13

*New York Times v. Sullivan*, 376 U.S. 254, 269 (1964) ....................................16, 17

*Nike, Inc. v. Just Did It Enterprises*, 6 F.3d 1225, 1227 (7th Cir. 1993)..................21

*Nolan v. Campbell*, 690 N.W.2d 638, 653 (Neb. 2004) ..........................................10

*Pittsburg Press Co.*, 413 U.S.at 390.......................................................................13

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Rel.*,

    413 U.S. 376, 390 (1973) ...................................................................................8

*Pring v. Penthouse Int'l, Ltd.*, 695 F.2d 438 (10th Cir. 1982) ................................23

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010)......................................................8

*Sid Dillion Chevrolet*, 559 N.W.2d 740, 747 (Neb. 1997)......................................8

*Snyder v. Phelps*, 562 U.S. 443, 453 (2011)............................................................19

*Southeastern Promotions Ltd. v. Conrad*, 420 U.S. 546, 550 (1975) ....................10

*Southeastern Promotions Ltd.*, 420 U.S. at 550 .....................................................19

*Tory v. Cochran*, 544 U.S. 734, 738 (2005)...................................................7, 11, 13

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) ..................6

*Yankee Pub., Inc. v. News Am. Pub. Inc.*, 809 F.Supp. 267 (S.D.N.Y. 1992).........26

iii

Statutes

Minn. Stat. § 609.748, Subd. 1(a)(1) .........................................................................12

Other Authorities

*Federal Practice and Procedure* § 2862 (2d ed.)......................................................7

Rules

Fed. R. Civ. P. 60(b)(4) & (6) ..............................................................................3, 6

**INTRODUCTION**

On November 23, 2020, this Court ignored two-hundred and fifty years of First Amendment precedent and issued a breathtakingly unconstitutional order restricting Plaintiff's free speech and his right to petition while threatening "detainment" if Plaintiff refused to comply.  Specifically, without a hearing or any adjudication by a jury (or factfinder) that the content was defamatory, harassing or otherwise not protected by the First Amendment, the Court issued an injunction directing Plaintiff remove certain websites and YouTube videos.  These websites and videos were unquestionably protected First Amendment speech as they:

- legitimately criticized a public official, namely U.S. Magistrate Judge Hildy Bowbeer, for her conduct on the bench;

- legitimately criticized attorneys K. Jon Breyer, Stephen C. Likes, Anne M. Lockner, L. Haynes Hansen, Ena Kovacevic and Charlie C. Gokey as well as their law firms Kutak Rock LLP and Robins Kaplan LLP for their attorney misconduct, unethical actions, racism and their facilitation of corrupt behavior of a Special Assistant U.S. Attorney Lindsay Middlecamp.  Plaintiff's criticisms in the websites and YouTube videos are valid and important issues of public concern; and

- satirically mocked and parodied attorneys Anne M. Lockner, L. Haynes Hansen, and K. Jon Breyer as well as their law firms Robins Kaplan LLP and Kutak Rock LLP with spoof advertisements (satire and parody are protected by the First Amendment).

Even more astonishing, the Court did not stop at merely directing Plaintiff to remove existing content. Instead, the Court issued a wide-sweeping prior restraint on Plaintiff's free speech by prohibiting him from publishing any content about the Court, the Court's staff, Defendants, Defendants' counsel and any future counsel retained by Defendants' for **five (5) years**. No Court – either state or federal – has even comes close to being so brazen or flippant towards the First Amendment and its protections. What is even more insidious and illustrative of an abuse of power, the Court wrapped its plainly unconstitutional injunction and directives in the cloak of its "inherent sanction power" to thwart Plaintiff's right to an adjudication on the merits and to be free from prior restraint of free speech under the First Amendment.

Nowhere in the Court's November 23 Order did it address any of the First Amendment concerns or issues that its directives or prior restraints raised. This is because the Court no doubt knew that its November 23 Order was blatantly unconstitutional and the Court banked on the fact that Plaintiff, a *pro se* litigant, would not be able to appreciate the serious legal and constitutional issues the Court's injunction invokes. This is truly unacceptable and smacks of a drumhead legal proceeding. This is particularly so given that the Court used its "inherent sanction power" to restrict Plaintiff from engaging in speech – without a trial, much less a meaningful opportunity to be heard – about a law firm, Robins Kaplan LLP, that the Court was not only was employed at, but had a significant ownership stake in prior to being appointed to the bench by President Barrack Obama.

As shown below, the Court's November 23 Order, which directs Plaintiff to remove certain content from the Internet and prohibits Plaintiff from prospectively publishing

content, is facially and unquestionably unconstitutional.  As a such, the November 23 Order

is void and must immediately be vacated pursuant to Fed. R. Civ. P. 60(b)(4) and (6).

## **FACTUAL BACKGROUND**

Beginning on January 19, 2017, Defendant Lindsay Middlecamp published over

fifty (50) tweets on Twitter targeting, disparaging and smearing Plaintiff.  (*See generally*

*Fredin v. Middlecamp*, Am. Compl. at Dkt. No. 5, *see also* Fredin Decl. at Ex. A, Printout

of Middlecamp Tweets.)  These tweets falsely accused Plaintiff of rape, accused him of

being a stalker, alleged that he was a predator towards women on dating apps and made

numerous other disparaging remarks.  (*See id*.)  Many of these tweets included Plaintiff's

photograph, which Defendant Middlecamp obtained through nefarious means.[1]  (*See id*.)

Additionally, among the tweets Defendant Middlecamp published on Twitter was a

Facebook post made by Defendant Jamie Kreil falsely accusing Plaintiff of rape.  (*See id*.)

Plaintiff brought the instant lawsuits alleging defamation against Defendants as a result of

these tweets and posts.  To this day, both Defendant Middlecamp's Twitter tweets and

Defendant Kreil's Facebook post remain publicly available and searchable through

Twitter, Facebook and Google.

During this litigation, Plaintiff published a series of websites and YouTube videos

about Defendants' counsel, who have engaged in outrageous and unethical conduct in

defending Defendants' atrocious and unlawful conduct, and Magistrate Judge Hildy

---

[1] Notably, Defendant Lindsay Middlecamp, a "Special Assistant U.S. Attorney" admitted
in state court proceedings to using "uniquely false information" that she "fabricated" – Defendant's
Middlecamp's own words, not Plaintiff's – in an effort to try to entrap Plaintiff and bring both
civil and criminal proceedings against him on behalf of her girlfriend.

Bowbeer.  Such conduct included, not the least of which, was Robins Kaplan LLP and Kutak Rock LLP – two of Minneapolis' most prominent law firms – offering Defendant Middlecamp and Defendant Kreil *pro bono* representation despite the fact that both women are upper-middle class and can afford counsel.  As Plaintiff has pointed out in his content, Defendants' counsel have clearly abused *pro bono* legal representation in an apparent attempt to curry favor with the U.S. Attorney's Office where Defendant Lindsay Middlecamp is employed.  Regardless, as stated above, Plaintiff's websites and videos fall into three (3) categories:  (i) YouTube videos stating facts about these proceedings and legitimately criticizing Magistrate Judge Bowbeer's performance on the bench in this case; (ii) YouTube videos and websites stating facts about these (and related) proceedings and legitimately criticizing them for attorney misconduct, unethical behavior, racism and their facilitation of corrupt behavior of defendant and Special Assistant U.S. Attorney Lindsay Middlecamp; and (iii) YouTube videos that spoof legal advertisements involving Anne M. Lockner, L. Haynes Hansen, and K. Jon Breyer as well as their law firms Robins Kaplan LLP and Kutak Rock LLP.  (*See generally*, *Fredin v. Kreil*, Lockner Decl. at Dkt. No. 23; 33-34; 36; 54.)

On October 12, 2020, Defendant Middlecamp, through her *pro bono* counsel K. Jon Breyer and Kutak Rock LLP, filed a motion requesting an injunction requiring the removal of Plaintiff's YouTube videos and websites as well as a prohibition restricting Plaintiff from publishing future content.  (*See Fredin v. Middlecamp*, Dkt. No. 214.)  On October 21, 2020, Defendant Kreil, through her *pro bono* counsel Anne M. Lockner of Robins Kaplan LLP, filed a motion asking for substantially similar relief.  (*See Fredin v. Kreil*,

Dkt. No. 15.)  Defendants asked that the Court issue the injunction under the Court's "inherent power to sanction," without the Court conducting a hearing or otherwise affording Plaintiff an adjudication on the merits as to whether the content in the YouTube videos and websites was protected by the First Amendment.

On November 23, 2020, the Court issued an order granting, in relevant part, Defendants' request for an injunction.  (*See Fredin v. Kreil*, Dkt. No. 39.)  Specifically, the Court issued an order: (i) requiring Plaintiff to remove his existing website and YouTube content about Defendants' counsel and Magistrate Judge Bowbeer; (ii) prohibited Plaintiff from publishing "substantially similar" content about Defendants, Defendants' counsel and Magistrate Judge Bowbeer for five (5) years; and (iii) prohibited Plaintiff, without an adjudication on the merits, from publishing content that violates Minn. Stat. § 609.748, Subd. 1(a)(1) about Defendants, Defendants' counsel, the Court's and the Court's staff. (*See id*.)  Notably, the Court issued the injunction under the guise of its "inherent sanction authority."  The Court conducted no hearing or adversarial adjudication on the merits prior to issuing the November 23 Order to determine whether any or all of Plaintiff's content was protected by the First Amendment.

Plaintiff brings now the instant motion seeking to vacate the Court's November 23 Order as violative of the First Amendment and the Due Process Clause of the Fifth Amendment.

5

## STANDARD OF REVIEW

Fed. R. Civ. P. 60(b) states that "[o]n motion and just terms, the court may relieve a party … from a final judgment, order, or proceeding… [where] the judgment is void… [or] any other reason that justifies relief." *See* Fed. R. Civ. P. 60(b)(4) and (6).

## ARGUMENT

"[A] void judgment [or order] is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment [or order] becomes final." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). Rule 60(b)(4) applies in the where "a judgment [or final order] is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id*. at 271 *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138 (2d Cir. 2011) ("a judgment is void under Rule 60(b)(4) of the Federal Rules of Civil Procedure if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process of law."). Specifically, a judgment or order "may be set aside on voidness grounds under Rule 6(b)(4) for violation of the due process clause…." *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985). A judgment or order "is void … if the court that rendered it … acted in a manner inconsistent with due process of law." *Federal Practice and Procedure* § 2862 (2d ed.).

In this case, the Court's November 23, 2020 Order must be set aside under Rule 60(b) because it is plainly unconstitutional, infringes on Plaintiff's First Amendment rights and was rendered in such as fashion so as to deny Plaintiff due process that must be afforded to him under well-established First Amendment precedent. Indeed, the Court

issued its prior restraint injunction under the guise of its "inherent power to sanction" directing Plaintiff to remove certain websites and YouTube videos without an adjudication on the merits as to whether the content was defamatory, harassing or otherwise not protected by the First Amendment.  Even more unbelievable, the Court issued a five (5) year unconstitutional prior restraint that prohibits Plaintiff from publishing any content about the Court, the Court's staff, Defendants, Defendants' counsel or any future counsel retained by Defendants.

As the Supreme Court has repeatedly held, "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."  *Tory v. Cochran*, 544 U.S. 734, 738 (2005).  It is apparent from the face of the order that the Court issued its November 23 Order without any due consideration to the First Amendment or Plaintiff's constitutional rights to criticize, parody or even engage in free speech.  As set forth below, the November 23 Order is void, unenforceable and must be vacated as unconstitutional pursuant to the First Amendment and the Due Process Clause of the Fifth Amendment.

A.     The November 23 Order Is Unconstitutional as It Ordered a Prior Restraint
       and Directed the Removal of Speech Without an Adjudication on the
       Merits

It is well-settled that a court cannot issue a prior restraint and direct the removal of speech via an injunction or otherwise without there first being an adjudication on the merits that the speech is not protected by the First Amendment.  The Supreme Court has affirmed this notion repeatedly.  Indeed, it has held that "[t]he special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the

speaker, before an adequate determination that it is unprotected by the First Amendment."
*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Rel.*, 413 U.S. 376, 390 (1973).  Put
another way, "a judicial injunction that prohibits speech *prior to a determination* that the
speech is unprotected [] constitutes a prior restraint."  *Auburn Police Union v. Carpenter*,
8 F.3d 886, 803 (1st Cir. 1993) (emphasis added); *Salinger v. Colting*, 607 F.3d 68 (2d Cir.
2010) ("Every injunction issued before a final adjudication on the merits risks enjoining
speech protected by the First Amendment."); *see also Sid Dillion Chevrolet*, 559 N.W.2d
740, 747 (Neb. 1997) ("Absent a prior adversarial determination that the complained of
publication is false or a misleading representation of fact, equity will not issue to enjoin a
libel or slander …."); *Advanced Training Sys., Inc. v. Caswell Equip. Co., Inc.*, 352 N.W.2d
1, 11 (Minn. 1984) (holding that trial court may only enjoin an individuals from making
defamatory statements "after a full jury trial" on the merits that the speech is fact or
otherwise unprotected by the First Amendment).

It cannot be disputed that there was no adjudication or determination on the merits
concerning whether Plaintiff's YouTube videos and websites were constitutionally
protected free speech.  Rather, Defendants and their counsel demanded an end-run around
the adversarial process of determining the constitutionality of Plaintiff's speech by
requesting that an injunction be issued through the Court's "inherent power to sanction."
Shockingly, the Court ignored the serious due process and First Amendment concerns of
Defendants' request and obliged their demand by issuing a sweeping injunction under the
guise of its "inherent power to sanction" directing Plaintiff to remove his YouTube videos
and websites without a full and fair trial (or even a hearing) on the merits.

The Court's November 23 Order consequently is unconstitutional and must be vacated immediately.  As the case law above sets forth, Plaintiff is entitled to a full trial on the merits in front of a jury on the issue of whether or not the speech contained in his existing YouTube videos and websites is protected by the First Amendment.  Anything less is a deprivation of Plaintiff's right to due process and accordingly unconstitutional.  *See Caroll v. President & Com'rs of Princess Anne*, 393 U.S. 175, 180 (1986) (holding that the lack or notice or meaningful opportunity to be heard renders a prior restraint on free speech invalid and unconstitutional).  Indeed, even the statute cited by the Court prohibiting Plaintiff's future speech – Minn. Stat. § 609.748, Subd. 1(a)(1) – requires an adversarial hearing before the Court can issue a harassment restraining order.  *See* Minn. Stat. § 609.748, Subd. 3 *et seq*.

If Defendants and their counsel want Plaintiff's existing YouTube videos and websites removed, their sole remedy is to initiate separate legal proceedings against Plaintiff and prove before a jury that the speech contained in the videos and websites is not protected by the First Amendment.  Underscoring that point, the Supreme Court has held that "a system of prior restraint avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system." *Southeastern Promotions Ltd. v. Conrad*, 420 U.S. 546, 550 (1975).  Accordingly, speech may only be enjoined where:  "(1) the burden of instituting judicial proceedings, and of proving that the material is unprotected [] rest[s] on the censor; (2) any restraint before judicial review can be imposed [is] only for a specified brief period and only to preserve the status quo; and (3) a prompt judicial determination [on the merits is] assured." *Id*.  The

Court's November 23 Order issuing an injunction prohibiting Plaintiff's speech meets none of these requirements.

Because Plaintiff was deprived a meaningful opportunity to be heard before a jury (or factfinder) and was denied an adversarial adjudication on the merits, the November 23 Order directing the removal of Plaintiff's existing YouTube videos and websites is unconstitutional and must be vacated as void.

B. <u>The November 23 Order Is Unconstitutional as It Failed to Identify with Particularly What Was Objectionable or Otherwise Not Protected by the First Amendment with Respect to the Existing Website and YouTube Content</u>

It is further well-settled that any restriction on speech must be narrowly tailored. Specifically, the Supreme Court has held that an order issued in the "area of First Amendment rights" must be "precis[e]" and narrowly "tailored" to achieve the "pin-pointed objective" of removal of unprotected speech. *Carroll*, 393 U.S. at 183-84. "In order for an injunction to pass constitutional muster, the suppression must be limited to the precise statements [] found to be libelous [or otherwise unprotected]." *Nolan v. Campbell*, 690 N.W.2d 638, 653 (Neb. 2004). In other words, an injunction must be "limited as it is to material found either libelous or disparaging after a full jury trial." *Advanced Training Sys.*, 352 N.W.2d at 11; *see also Auburn Police Union*, 8 F.3d at 903-04 (holding that injunction must be narrowly tailored when enjoining speech).

The Court's November 23 Order is neither "narrowly tailor," nor "precise" in enjoining Plaintiff's speech and directing the removal of all of Plaintiff's existing YouTube videos and websites concerning Defendants' counsel and Magistrate Judge Bowbeer. Indeed, the Court fails at any point in its 33-page order to specifically identify objectionable

speech in the videos and websites, much less conduct a detailed analysis as to why any statements in the videos and websites run afoul of or are otherwise unprotected by the First Amendment. Instead, the Court merely makes conclusory statements that the existing videos and websites are "degenerate," "harassing," "repugnant," "vulgar," "explicit" and "graphic" without identifying with any particularly the precise statements or content warranting such adjectives. (*See* November 23 Order at 8, 25.)

Based on these conclusory assertions and without any specificity as to the precise statements or content that the Court believes is unprotected by the First Amendment, the Court issued a sweeping injunction requiring Plaintiff to remove <u>all</u> of his existing YouTube videos and websites about Defendants' counsel and Magistrate Judge Bowbeer. This is despite the fact that Plaintiff's content contains speech that is unquestionably protected by the First Amendment. The Court's directives simply do not pass constitutional scrutiny. As the cases cited above show, any order directing the removal of Plaintiff's existing content must be "narrowly tailored" and directed at only speech that is not protected by the First Amendment. *See Tory v. Cochran*, 544 at 738 (holding that a prohibited on speech "should not "swee[p]" any "more broadly than necessary").

Since the Court has failed to identify what speech in the existing videos and website is unprotected by the First Amendment, the Court's order directing the removal of all of Plaintiff's existing content is consequently unconstitutional. Moreover, the Court's directives are plainly unconstitutional as they are not narrowly tailored to remove only unprotected speech. Instead, the Court's injunction directs Plaintiff to remove speech that is plainly within the purview of the First Amendment, namely legitimate criticism of public

11

officials, truthful statements, statements on matters of public concern and statements that are satirical and apparent parody.

      C.    <u>The November 23 Order Is an Unconstitutional Prior Restraint on Future Speech</u>

In the Court's November 23 Order, it further prospectively enjoined Plaintiff from engaging in speech and publishing content, otherwise called a "prior restraint." Specifically, the Court directed that Plaintiff is forbidden from publishing content that is "substantially similar" to his existing YouTube videos and websites, again without identifying what speech is unprotected in the existing content. (*See* November 23 Order at 30). Even more disturbing, the Court enjoined Plaintiff from publishing any "online media targeting Defendants, their counsel, or any judge of this Court or member of this Court's staff involved in this litigation" that may or may not fall under Minn. Stat. § 609.748, Subd. 1(a)(1). In other words, Court the prohibited Plaintiff from engaging in speech that <u>may</u> fall within the ambit of Minn. Stat. § 609.748, Subd. 1(a)(1) without any prior judicial determination that the speech is unprotected, despite the fact that the Minnesota statute requires such an adversarial hearing. *See* Minn. Stat. § 609.748, Subd. 3 *et seq*.

Again, a "judicial determination that prohibits speech prior to a determination [on the merits] that the speech is unprotected [] constitutes a prior restraint." *Auburn Police Union*, 8 F.3d at 903. A prior restraint – a "government regulation that limits or conditions in advance the exercise of protected First Amendment activity," which can include "a judicial injunction that prohibits speech prior to a determination that the speech is unprotected" – bears a "heavy presumption against its constitutional validity." *Id.*; *see also*

*Alexander v. U.S.*, 509 U.S. 544 (1993) (explaining that a prior restraint is suppression of speech by the government in advance of its actual expression or publication).  The Supreme Court has described the elimination of prior restraints as the "chief purpose" of the First Amendment.  *Gannett Co. v. DePasquale*, 433 U.S. 358, 393 n. 25 (1979); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 557 (1976) ("The main purpose of the First Amendment is to prevent all such previous restraints upon publications as had been practiced by other governments.").  "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."  *Tory v. Cochran*, 544 U.S. at 738.

These prospective directives and injunction prohibiting Plaintiff's publication of content are plainly unconstitutional prior restraints.  The November 23 Order prohibits Plaintiff from engaging in speech prior to, and effectively without, any judicial determination that the speech is not protected by the First Amendment.  As such, the Court's November 23 Order directing Plaintiff to refrain prospectively from engaging in speech or publishing content about Defendants, Defendants' counsel or the Court and its staff is an unconstitutional prior restraint.  *See Pittsburg Press Co.*, 413 U.S. at 390 ("The special vice of a prior restraint is that communication will be suppressed, either directing or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment.").  The November 23 Order must consequently be declared void and vacated.

13

D.     Plaintiff's YouTube Videos which Criticize Magistrate Judge Bowbeer Are
       Protected under the First Amendment as Legitimate Criticism of a Public
       Official

The Court does not contend or otherwise dispute that there is anything factually inaccurate about the two (2) videos Plaintiff published concerning Magistrate Judge Hily Bowbeer.  The videos make the following factual statements:

- "When a U.S. Attorney falsely accused a man of rape … Hildy Bowbeer systematically held up the case …" (*see* https://www.youtube.com/watch?v=SV7QSEob3fI);

- "When a U.S. Attorney falsely accused a man of rape … Hildy Bowbeer … went so far as to completely deny the man discovery …" (*see* https://www.youtube.com/watch?v=cKZQ-cgv974);

- "Meanwhile when another man reached out to the court claiming the U.S. Attorney also brought false allegations him, Hildy Bowbeer sealed the communication to protect the U.S. Attorney" (*see* https://www.youtube.com/watch?v=cKZQ-cgv974); and

- "What did U.S. Magistrate Judge Hildy Bowbeer do when a man was falsely accused of rape? Hildy Bowbeer refused to offer him any protection at all!" (*see* https://www.youtube.com/watch?v=SV7QSEob3fI).

Based on the record in this case, these are very clearly apparent facts about Magistrate Judge Bowbeer and her performance on the bench in this case, which again neither the Court nor Defendants refute or contest are false.

14

More importantly, Plaintiff has made legitimate criticisms of Magistrate Judge Bowbeer based on these apparent facts and the record in this case. Specifically, Plaintiff states in his videos:

- "Hildy Bowbeer protects corrupt law enforcement officers" (*see* https://www.youtube.com/watch?v=SV7QSEob3fI);

- "Hildy Bowbeer is currently handling the George Floyd Minneapolis Police Third Precinct arson case… What is Hildy Bowbeer going to cover up in this case?" (*see* https://www.youtube.com/watch?v=SV7QSEob3fI);

- "US Magistrate Judge Hildy Bowbeer Conceals Law Enforcement Abuse and Misconduct" (*see* https://www.youtube.com/watch?v=SV7QSEob3fI);

- "Judge Hildy Bowbeer – Doesn't Protect Men" (*see* https://www.youtube.com/watch?v=cKZQ-cgv974); and

- "Hildy Bowbeer – Radical Obama judge" (*see* https://www.youtube.com/watch?v=SV7QSEob3fI).

There is nothing harassing, invasive or otherwise objectionable about these statements, which are an exhaustive list of the statements made in the videos. They are all legitimate opinions and criticisms of Magistrate Judge Bowbeer's performance of her duties in this case and on the bench. *See Conroy v. Kilzer*, 789 F.Supp. 1457, 1468 (D. Minn. 1992) (holding that statements that 'accuse a public official of misconduct" are not "as a matter of law … sufficiently extreme or outrageous"); s*ee also Garrison v. Louisiana*, 379 U.S. 64, 77 (1964) ("The *New York Times* … public-official rule protects the paramount public interest in the free flow of information to the people concerning public officials, their

servants.  To this end, anything which might ouch on an official's fitness for office is relevant.").

The right to criticize or offer opinions about a public official is guaranteed by the First Amendment.  *See Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975) ("The right of an American citizen to criticize public officials and policies and to advocate peacefully ideas for change is 'the central meaning of the First Amendment.'" (*quoting New York Times v. Sullivan*, 376 U.S. 264 (1964)); *Barnes v. McDowell*, 848 F.2d 725, 734 (6th Cir. 1988) (noting that charges of public corruption are entitled to constitutional protection); *Fine v. Bernstein*, 726 N.W.2d 137, 144 (Minn. 2007) ("The First Amendment protects statements of opinion."); *see also Dun & Bradstreet, Inc. v. Greenmoss Builders*, 472 U.S. 749, 780 (1985) ("[W]hen an alleged libel involves criticism of a public official or a public figure, the need to nurture robust debate of public issues and the requirements that all state regulation of speech be narrowly tailored coalesce to require actual malice as a prerequisite to any recovery.").  Plaintiff's existing content is plainly protected speech criticizing a public official, namely U.S. Magistrate Judge Hildy Bowbeer, rendering the November 23 Order directing the removal of the two (2) videos unconstitutional.  More importantly, the Court's directive prospectively prohibiting "substantially similar" content containing criticisms of Magistrate Judge Bowbeer and the Court in general violated the First Amendment.

Because Plaintiff's existing YouTube videos concerning Magistrate Judge Bowbeer are factual and contain legitimate criticisms and opinions of her performance on the bench, the Court's November 23 Order directing the removal of the two videos (which fails to

perform any analysis as to Plaintiff's speech under the First Amendment) is unconstitutional, void and must be vacated. *See New York Times v. Sullivan*, 376 U.S. 254, 269 (1964) ("It is a prized American privilege to speak one's mind, although not always with perfect good tase, on all public institutions.").

E.   <u>Plaintiff's Websites and YouTube Videos which Criticism Defendants'
     Counsel Are Protected under the First Amendment as Legitimate Matters of
     Public Concern</u>

The vast majority of Plaintiff's existing content makes statements legitimately criticizing Defendants' counsel and raise important issues of public concern.  Specifically, Plaintiff's videos and content highlight the facts that:

- Robins Kaplan LLP and Kutak Rock LLP are abusing *pro bono* legal representation by representing multiple upper-middle class women in the instant matters (who have notably falsely accused Plaintiff, a *pro se* litigant who cannot afford counsel, of rape), despite the fact that Defendants can clearly afford to pay for legal representation;[2]

- Robins Kaplan LLP's and Kutak Rock LLP's abusive *pro bono* representation of Defendants is an apparent attempt to curry favor with the

---

[2] *See* https://www.youtube.com/watch?v=2ydfF2vm4MY;
https://www.youtube.com/watch?v=lUGyNosr974;
https://www.youtube.com/watch?v=tdyWcPA5k0I;
https://www.youtube.com/watch?v=LNOTm082pS8;
https://www.youtube.com/watch?v=UTk9cuQ6HmY; and
https://www.youtube.com/watch?v=pWPAHCN3iZQ.

U.S. Attorney's Office in this District *vis-à-vis* through Defendant Lindsey Middlecamp, a "Special Assistant U.S. Attorney"; [3]

- Robins Kaplan LLP and Kutak Rock LLP support law enforcement corruption and racism *vis-à-vis* their *pro bono* representation of Defendant Lindsey Middlecamp, a "Special Assistant U.S. Attorney" who operates an anonymous twitter where she admittedly "shames" primarily black men by posting nude and semi-nude photos of them without their consent and publishes other vulgar, inappropriate, prejudicial and defamatory content about individuals;[4]

- Robins Kaplan LLP is not the "diverse and inclusive" law firm it publicly claims to be based on a mere cursory search of its attorneys on its web page;[5]

- Robins Kaplan LLP and its attorneys are "Social Justice Warriors" that take radical stances in cases and enact radical progressive policies in their firm;[6] and

- Kutak Rock LLP and K. Jon Breyer have engaged in misconduct, namely by financing law enforcement misconduct through their *pro bono* representation of Defendant Lindsay Middlecamp, practicing law without a license in Wisconsin and by filing patently false affidavits.[7]

---

[3] *See id.*
[4] *See id.*
[5] *See* https://www.youtube.com/watch?v=QFVYNQnIecg.
[6] *See supra at fn. 1.*
[7] *See* https://www.youtube.com/watch?v=pWPAHCN3iZQ.

In their papers, Defendants do not contest or essentially refute any of these assertions. They mere claim that they are "disparaging," without any claim of falsity. Even if these statements were false (which they are not), it would be Defendants' and their counsels' burden to prove so in a court of law in front a jury before this speech can be censured and removed. *See Southeastern Promotions Ltd.*, 420 U.S. at 550.

Moreover, Plaintiff's statements concerning Robins Kaplan LLP, Kutak Rock LLP and their attorneys in the existing YouTube videos and websites are clear expressions of public concern protected by the First Amendment. Specifically, Plaintiff's statements concerning Defendants' counsel raise serious questions of corruption, attorney misconduct, the effective financing of law enforcement misconduct and racial bigotry about prominent law firms in Minneapolis and this community. *See Snyder v. Phelps*, 562 U.S. 443, 453 (2011) ("Speech deals with matters of public concern when it can be fairly considered as relating to any mater of political, social, or other concern to the community, … or when it is a subject of legitimate news interests; that is, a subject of general interest and of value and concern to the public" (internal citations and quotation marks omitted.). These statements and criticisms directed squarely at matters of public importance are protected under the First Amendment. *See Dun & Bradstreet*, 472 U.S. at 758-59 ("[S]peech on matters of public concern is at theheart of the First Amendment's protection" (internal quotation marks omitted)); *Snyder*, 562 U.S. at 452 (2011) ("The First Amendment reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open" (internal quotation marks omitted); *Connick v. Myers*,

46 U.S. 138, 145 (1983) ("[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection").

Indeed, if Defendants' publication of unverified, spurious and plainly disparaging allegations of rape of Twitter is a matter of public concern as held by this Court in its ordering granting Defendants' motion for summary judgment (*see Fredin v. Middlecamp*, Dock No. 237; *Fredin v. Miller*, Dock No. 206), then there can be no question that Plaintiff's videos and websites containing (uncontested) factual assertions of corruption, attorney misconduct, the effective financing of law enforcement misconduct and racial discrimination about two of the most prominent law firms in Minneapolis – Robins Kaplan LLP and Kutock Rock LLP – are also matters of public concern protected by the First Amendment.

F.   Plaintiff's Websites and YouTube Videos Satirically Mocking Defendants' Counsel Are Protected under the First Amendment as Parody

In its November 23 Order, the Court points to two (2) YouTube videos as the thrust for its unconstitutional injunction and prior restraint on Plaintiff's free speech.  The first video is a satirical spoof law firm advertisement about Robins Kaplan LLP and its partner Anne M. Lockner stating that Ms. Lockner is "Minneapolis's Sexist Attorney."  The second video is similarly a satirical spoof legal advertisement about Robins Kaplan LLP's associate L. Haynes Hansen as being an expert in ranching law while the wildly popular song "Ram Ranch"[8] plays as the soundtrack to the video.  It is important to note at the

---

[8]   The song "Ram Ranch" has over 14 million views on YouTube.  *See* https://www.youtube.com/watch?v=MADvxFXWvwE.  It has also been used in countless other

outset that neither Defendants nor the Court in its November 23 Order contend that Plaintiff's spoof videos contain "fighting words" or obscenities that would render the videos not protected by the First Amendment. As show below, both of these videos, along with others like it, are satirical spoofs and parodies clearly protected by the First Amendment.

"The First Amendment, which protects individuals from laws infringing free expression, allows [] ridicule in the form of parody. *Nike, Inc. v. Just Did It Enterprises*, 6 F.3d 1225, 1227 (7th Cir. 1993). Indeed, the Supreme Court has held unequivocally that the First Amendment protects satire and ridicule in the form of parody. *See Hustler Magazine v. Falwell*, 485 U.S. 46 (1988). That case draws close parallels to Plaintiff's speech in this case and is best explained as follows:

> The United States Supreme Court examined the issue [of whether parody is protected by the First Amendment] when *Hustler Magazine* published a **'parody' advertisement** featuring the likeness and name of Rev. Jerry Falwell. The parody portrayed Falwell and his mother as drunk and immoral, suggesting that the reverend was a hypocrite who preaches only when drunk. The advertisement prompted Falwell to sue *Hustler* for invasion of privacy, libel, and intentional infliction of emotional distress … The Supreme Court rejected [Falwell's claims] … The Court acknowledged that First Amendment protection is limited in cases involving obscenity and "fighting words" and recognized "that not all speech is of equal First Amendment importance." *Falwell*, 485 U.S. at 56. It concluded, however, that "publication of a caricature such as the ad parody" was protected by the First Amendment.

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 838 F.Supp. 1501, 1515-16 (N.D.Okl. 1993) (emphasis added); *see also Blum v. Schlegel*, 18 F.3d 1005, 1012 n. 5 (2d

---

YouTube videos and memes based on a simply cursory search of YouTube and Google. It is undeniably that Ram Ranch is part of the cultural zeitgeist.

Cir. 1994) (nothing that First Amendment protection is afforded to parody and satire). "[T]he Supreme Court has found parodies, political cartoons, and satires generally entitled to First Amendment protection and non-actionable." *Antigua Coll. of Med. v. Woodward*, 837 F.Supp.2d 686, 696 (E.D.Mich. 2011). Moreover, "broad scope [is] permitted [of] parody in First Amendment law." *Groucho Marx Prods. v. Day and Night Co.*, 689 F.2d 317, 319 n. 2 (2d Cir. 1982).

There is no question that Plaintiff's spoof parody law firm advertisements concerning Robins Kaplan LLP, Anne M. Lockner and L. Haynes Hansen are protected parody under the First Amendment, much like Hustler Magazine's parody advertisement of Reverend Falwell. Plaintiff published the videos with the obvious intent to mock and ridicule Defendants' counsel drawing inspiration from legal advertising and advertising on their own firm web site. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (explaining that parody is "literary or artistic work that imitates the characteristic style of an author or work for comic effect or ridicule"). Courts dealing with similar parodies and satirical content have found such speech to be protected. *See Layshock v. Hermitage School*, 412 F.Supp.2d 502, 508 (W.D.Pa 2006) (denying temporary restraining order where student's "creation of parody was conduct protected by the First Amendment"); *Busch v. Viacom Int'l, Inc.*, 477 F.Supp.2d 764, 777 (N.D.Tex. 2007) ("[T]he First Amendment protected parody, such as the 'fake endorsement' of Pat's Diet Shake at issue in the challenged broadcast …."); *In re Outsidewall Tire Litigation*, 748 F.Supp.2d 557, 564 (E.D.Va. 2010) (holding that defendant "had a legitimate First Amendment right to express himself … and to create parody of the plaintiff's organization" (internal quotation

marks omitted)); *See muller v. Fairfax County School Bd.*, 878 F.2d 1578, 1583 (4th Cir.

1989) (holding that teacher's letter criticizing board of education "spiced with satire" was

protected under the First Amendment); *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d

26 (1st Cir. 1987) (holding that noncommercial parody was protected and recognizing the

role of parody "as a form of social and literary criticism"); *Pring v. Penthouse Int'l, Ltd.*,

695 F.2d 438 (10th Cir. 1982) (holding defendants' bawdy "spoof" and "ridicule" of Miss

America pageant entitled to full range of First Amendment protection).   It was

consequently unconstitutional and a violation of Plaintiff's First Amendment rights for this

Court to order the removal of his parody spoof advertisement videos concerning Robins

Kaplan LLP, Anne M. Lockner and L. Haynes Hansen in its November 23 Order.

　　　　To underscore this point and the fact that Plaintiff's videos are protected speech, the

videos without question satisfy the hallmark of parody as outlined by numerous courts,

including the Supreme Court.  Specifically, no one could reasonably believe that Plaintiff's

mock legal advertisement are real or otherwise convey actual facts.  *See Milkovich v.*

*Lorain Journal Co.*, 497 U.S. 1, 20 (1990) ("[A] satire or parody must be assessed in the

appropriate content; it is not actionable if it cannot reasonably be interpreted as stating

actual facts about an individual" (internal quotation marks omitted).); *see also Farah v.*

*Esquire Magazine*, 736 F.3d 528, 536 (D.C. Cir. 2013); *see Pring*, 695 F.2d at 422 ("The

test is not whether the [content] is or is not characterized as 'fiction,' 'humor,' or anything

else … but rather whether the charges portions in context could be reasonably understood

as describing actual facts about the plaintiff or actual events in which she participated.").

Indeed, no reasonable person could believe the depictions or statements in Plaintiff's parody videos are real:

- No reasonable person would believe that a law firm would advertise that one of its attorneys is "Minneapolis' Sexiest Attorney";[9]

- Despite wearing thigh-high leather boots in a professional photograph published in "The Business Journals," which previously placed on Robins Kaplan LLP's website, no reasonable person would believe that Ms. Lockner – an objectively unattractive woman – is "Minneapolis' Sexiest Attorney";[10]

- No reasonable person would believe that the "Minneapolis Trail Lawyer's Association" (a fictional professional organization) would call a female attorney a "Femme Fatale" or that a law firm would advertise such an endorsement;[11]

- No reasonable person would believe that: (i) Ms. Lockner won a "wet t-shirt contest"; (ii) that the Minnesota Bar Association actually held a wet t-shirt contest; or (iii) that a law firm would actually advertise that Ms. Lockner won such a contest or accolade;[12] and

- No reasonable person would believe that an attorney or law firm would release an advertisement with "Ram Ranch" as the soundtrack (a well-known

---

[9] *See* https://www.youtube.com/watch?v=_JSkH5r52ao.
[10] *See id.*
[11] *See id.*
[12] *See id.*

24

> Internet meme), which recites such lyrics as "18 Naked Cowboys in the
> Shower at Ram Ranch."[13]

The statements and depictions in the YouTube videos are obviously not true and are satirical and parody.  "Narrative fiction … deserves considerable First Amendment protection."  *A.P.W.U. v. U.S. Postal Service*, 830 F.2d 294, 306 (D.C. Cir. 1987).  Plaintiff's videos are consequently protected expressions under the First Amendment as no reasonable person would take the content as anything other than a spoof law firm advertisement.

And, while Defendants, Defendants' counsel and the Court might not like the content in Plaintiff's spoof advertisements or find the content otherwise objectionable to their tastes, that does not mean that the content is not protected speech.  *GTFM, Inc. v. Universal Studios, Inc.*, 79 U.S.P.Q.2d 1213, 1216 ("To whatever extent, if any, one regards the parody as lewd or offensive, or whatever one actually appreciates its comedic value, is entirely irrelevant to the issue of whether this express of ideas should be afforded First Amendment protection, and judicial evaluations of the former sort will not be made.").  Indeed, courts have held that offensive content is clearly protected by the First Amendment as parody:

> The story is a gross, unpleasant, crude, distorted attempt to ridicule the Miss America contest and contestants.  It has no redeeming features whatsoever.  There is no accounting for the vast divergence in views and ideas.  However, the First Amendment was intended to cover them all.  The First Amendment is not limited to ideas, statements, or positions which are accepted; which are not outrageous; which are decent and popular; which are constructive or have some redeeming element; or which do not deviate from community standards

---

[13] *See* https://www.youtube.com/watch?v=8OKrqkvOCZM.

and norms; or which are within prevailing religious or moral standards. Although a story may be repugnant in the extreme to an ordinary reader, and we have encountered no difficulty in placing this [content] in such a category, the typical standards and doctrines under the First Amendment must nevertheless be applied.  The [content] itself should not have been tried for its moral standards.  Again, no matter how great its divergence may seem from prevailing standards, this does not prevent the application of the First Amendment.  The First Amendment standards are not adjusted to a particular type of publication or particular subject matter.

*Pring*, 695 F.2d at 443; *see also Yankee Pub., Inc. v. News Am. Pub. Inc.*, 809 F.Supp. 267 (S.D.N.Y. 1992) (noting that the "First Amendment protections do not apply only to those who speak clearly, whose jokes are funny, and whose parodies succeed").  This is so even where the subject of the parody is not a public figure. *See id*. at 442.

Plaintiff's spoof videos may be outlandish and, to use the Court's words, "degenerate" to the Court's disliking, but that is the point of the videos and what makes them protected by the First Amendment.  No reasonable person would believe that they are real law firm advertisements.  They are meant to entertain and mock Defendants' counsel. *Accord Fisher v. Dees*, 794 F.2d 432, 437-38 (9th Cir. 1986) ("'Destructive' parodies play an important role in social and literary criticism and thus merit protection even though they may discourage or discredit an original author.")  Indeed, given the outrageous accusations Defendants have made on social media about Plaintiff without repercussion and their counsels' shameful and egregious defense of Defendants' conduct in these proceeding that skirt ethical and moral boundaries only shows that Defendants' counsel – two of the largest and most prominent law firms in Minneapolis – are ripe for ridicule and mocking.  The sense of humor and sensibilities of Defendants' counsel and the Court are simply not

26

relevant or enough to overcome Plaintiff's right to freedom of expression.[14]  *See Mink v. Know*, 566 F.Supp.2d 1217, 1226 (D.Col. 2008) ("The Supreme Court makes clear that the First Amendment protects even speech that is 'patently offensive and is intended to inflict emotional injury,' when that speech "could not reasonably have been interpreted as stating actual facts …." (*quoting Falwell*, 485 U.S. at 50)).

Plaintiff's spoof parody videos about Robins Kaplan LLP, Anne M. Lockner and L. Haynes Hansen as well as other similar spoof videos on his YouTube channel are clearly protected expression under the First Amendment.  This is so notwithstanding the Court's opinion as to the actual content in the videos.  Consequently, the Court's injunction requiring Plaintiff to remove the spoof parody videos and its prior restraint prohibiting Plaintiff from publishing similar contest are unconstitutional and should be declared void.

---

[14]  In fact, Plaintiff's spoof video about L. Haynes Hansen is universally loved as demonstrated by the YouTube comments for the video.  Viewers have stated in the comments:

- "This is the greatest ad I've even seen." -Nickolas Cruiser
- "This is the greatest ad of all time." - Realistic Luigi
- "I saw this as an ad.  It's a good ad." - Sufang Kong
- "This is one hell of an ad." - USApennyHunter43
- "This is amazing." - Gamecks
- "Now THIS is how you make an influential advertisement." - Jack Young
- "The one dislike is from Haynes Hanson" - JakeShuf
- "Beautiful" -Andrew Kuria
- "RAM RANCH REALLY ROCKS" -Endercybereye33
- "Now this is epic." -NotFilthyZak
- "Best ad ever" -Eliman
- "I don't know how this slipped through the cracks but I love it.  Never seen a better ad on YouTube." -JakeShuf
- "This is ascended advertising." -Randy Dandy
- "Lmao" – Edwin Torres

*See* https://www.youtube.com/watch?v=8OKrqkvOCZM*; see also* Fredin Decl. at Ex. 2, YouTube Printout.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court vacate the November 23 Order as unconstitutional and consequently void pursuant to Fed. R. Civ. P. 60(b)(4) and (6).


Date: December 4, 2020



s/ Brock Fredin
Brock Fredin
(tel.) 612-424-5512
brockfredinlegal@icloud.com
*Plaintiff-Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the page limitation established by Local Rule 7.1 in that it does not exceed 12,000 words and contains 7,075 words. This brief also complies with the typeface requirements of Local Rule 7.1, as it has been prepared in Microsoft Word using a proportioned spaced typeface of 13-point Times New Roman font.

Dated: December 4, 2020

s/ Brock Fredin
Brock Fredin
(tel.) 612-424-5512
brockfredinlegal@icloud.com
*Plaintiff-Appellant*

29

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2020, I electronically filed the foregoing with the Clerk of the District of Minnesota by using the CM/ECF system. The following participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system:

K. Jon Breyer
Kutak Rock
60 S. 6th Street
Minneapolis, MN  55402
Jon.breyer@kutakrock.com
*Attorney for Defendants'*

Anne M. Lockner
Robins Kaplan, LLP
8000 Lasalle Ave
Minneapolis, MN  55402
Anne.lockner@robinskaplan.com
*Attorney for Defendant Kreil*

Dated: December 4, 2020

 s/ Brock Fredin
Brock Fredin
(tel.) 612-424-5512
brockfredinlegal@icloud.com
*Plaintiff-Appellant*

# B

☆ **Breyer, K. Jon**

October 8, 2020 at 10:59 AM

RE: Fredin v. Miller, Case No. 18-CV-466

To: brock fredin

KB

I was preparing terms and then I came across these:

https://www.youtube.com/watch?v=pWPAHCN3iZQ

and

http://www.kjonbreyer.com/

I will not have any settlement discussions with you until these (or any others) are taken down.

On Oct 8, 2020, at 1:... wrote:

**\*\*FOR SETTLEMENT PURPOSES ONLY\*\***

Let's see if you're telling the truth and if you're negotiating in good faith.  The website and video (which only contains truthful information) has been removed.  I expect reasonable terms by end of the working day (5PM CST).

**\*\*FOR SETTLEMENT PURPOSES ONLY\*\***

See More

**Breyer, K. Jon**

Re: Fredin v. Miller, Case No. 18-CV-466

To: brock fredin

KB

Thank you. I appreciate it.

I can't respond by 5:00 today, but can give you a proposal tomorrow by 5:00 pm. I have a deposition that will last most of the day or I'd get it to you sooner.

**From:** brock fredin <brockfredinlegal@icloud.com>
**Sent:** Thursday, October 8, 2020 1:22:31 PM
**To:** Breyer, K. Jon <Jon.Breyer@KutakRock.com>
**Subject:** Re: Fredin v. Miller, Case No. 18-CV-466

[ CAUTION - EXTERNAL SENDER ]

See More from brock fredin