# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

BROCK FREDIN,

              Plaintiff,

   --against--

LINDSEY MIDDLECAMP,

              Defendants.

District Court Case No.  17-CV-3058 (SRN)

---

BROCK FREDIN,

              Plaintiff,

   --against--

GRACE MILLER,
CATHERINE SCHAEFER,

              Defendants.

District Court Case No.  18-CV-466 (SRN)

---

BROCK FREDIN,

              Plaintiff,

   --against--

JAMIE KREIL,

              Defendant.

District Court Case No.  20-CV-01929 (SRN)

---

## PLAINTIFF'S SECOND CORRECTED MEMORANDUM IN SUPPORT OF DISQUALIFYING ROBINS KAPLAN

Plaintiff Brock Fredin ("Plaintiff") respectfully submits this memorandum in support of disqualifying Robins Kaplan.

## INTRODUCTION

Robins Kaplan engaged in misconduct by knowingly representing Defendant Kreil *pro bono* after they had an attorney-client relationship with Plaintiff.   Plaintiff disclosed facts to Robins Kaplan that Robins Kaplan used against Plaintiff in this case.   Robins Kaplan no doubt did this to abuse their relationship with the Court to procure a blatantly illegitimate and unconstitutional injunction to silence Plaintiff from speaking about unethical attorney misconduct.   In discussions with Robins Kaplan, Plaintiff:

- "discussed [his] overarching legal strategy including extensive communications with [Robins Kaplan partner Philip Sieff] about the legality of publishing websites containing critical information about Defendant Middlecamp, Miller, and state/federal officials which Robins Kaplan are now using against [Plaintiff] to obtain an injunction."  (*See Fredin v. Kreil*, Dock. No. 188; Fredin January 14, 2021 Decl.)

- "[b]ecause [Plaintiff] discussed these legalities with Mr. Sieff, Robins Kaplan knew where to look for the websites and how to identify [Plaintiff's] anonymous posts." *Id.*

- "disclosed (a) [his] overarching legal strategy that Robins Kaplan is using against [him] to paint [him] as a vexatious litigant;  and (b)  that Robins Kaplan knew where to find [his] anonymous websites and videos, even encouraging

[him] based on their legal advice, and used it against [him] to make it appear as if [he] was trying to disrupt the judicial process." *Id.*

- "disclosed confidential information about [his] finances and mental health as a result of Defendant Lindsey Middlecamp's allegations originating from Defendant Kreil which Robins Kaplan have used against [him] asking for exorbitant sanctions, monetary penalties, and alluded to [his] mental health." *Id.*

- "[b]ecause of these privileged communications, Robins Kaplan were aware of and even promoted [his] legal strategy of being publicly critical of Defendants, their counsels, and the courts, which Robins Kaplan have used against [him] to make it appear as if [he] was trying to improperly influence the present Court proceeding." *Id.*

- "extensively discussed [his] civil and criminal legal strategy with Mr. Sieff, including the filing of civil lawsuits and criminal defense strategy, which both Robins Kaplan and Kutak Rock used against [him] in particular to paint [him] as a vexatious litigant.

- "disclosed confidential communications concerning [his] previous attorney Barry S. Edwards and Halberg Defense." *Id.*

- "discussed the legality of publishing websites about Defendant Middlecamp, Miller, and Court officials." *Id.*

- "[b]ecause Mr. Sieff lives in Saint Louis Park, Minnesota, [Plaintiff] recall[s] discussing the fact that Defendant Lindsey Middlecamp had made a false

allegation from an anonymous source which otherwise identified the Saint Louis Park Police department." *Id.*

- "identified allegations consistent with these statements involving the Saint Louis Park Police department when sending the *Fredin v. Middlecamp* Complaint to Mr. Sieff." *Id.*

In 2017, Plaintiff carried out discussions about this set of cases, disclosing confidential attorney-client information, to multiple Robins Kaplan partners and associates including Philip Sieff, Adam Kohnstamm, and Sara Friedricks. This includes Plaintiff sharing very detailed conversations consistent with Defendant Kreil, Middlecamp, Schaefer, and Miller with Robins Kaplan. These conversations occurred between Mr. Sieff and Plaintiff through email and a personal setting.

In addition to this, Plaintiff previously had an attorney-client level relationship with Robins Kaplan through former associate Mahesha Subbaraman involving a separate intellectual property matter. [*Fredin v. Kreil, Dock. No. 182, p. 2 ¶ 10.*]

As a result, Plaintiff seeks to disqualify and sanction Robins Kaplan. Plaintiff respectfully requests that the Court vacate any motion filed by Robins Kaplan. At a minimum, Plaintiff respectfully requests that the Court vacate the November 23, 2020 injunction on the basis of violations of Minnesota Rules of Professional Conduct Rules 1.18, 1.6, 1.7, 1.8, and 1.9.

## RELEVANT FACTS

On January 10, 2021, Robins Kaplan executive committee partner Anne Lockner filed her notice of appearance in *Fredin v. Kreil.* [*Fredin v. Kreil*, Dock. No. 5.]

4

As described above, Plaintiff has records informing the Court of his previous attorney-client privileged conversations with Robins Kaplan involving *Fredin v. Middlecamp*.  (*See Fredin v. Kreil*, January 14, 2022 Fredin Decl.)

In those emails, Plaintiff spoke to Robins Kaplan – through Robins Kaplan corporate email – to partner Philip Sieff and then associate Adam Kohnstamm.  *Id.*  On August 17, 2017 Mr. Sieff emailed Plaintiff.  *Id*   Mr. Sieff used the email PSieff@robinskaplan.com.  Plaintiff used an email address brockf12@gmail.com.  *Id*

Similarly, prior to these emails, Plaintiff carried out very detailed in-person conversations with Mr. Sieff about Defendant Middlecamp, Schaefer, and Miller.  These conversations took place in a private religious setting in Minneapolis between 2016-2018.  *Id*

Unfortunately, Plaintiff alleges that Robins Kaplan shared these conversations with Defendants or used Plaintiff's attorney-client communications with Defendants to further their abusive litigation strategy against Plaintiff.  *Id;* [*Fredin v. Kreil*, Dock. No. 154 p. 3. ¶ 12.]   Similarly, Plaintiff had an existing 2013 confidential attorney-client communication-based relationship vis-à-vis Mr. Subbaraman, a former associate at Robins Kaplan.  [*Fredin v. Kreil*, Dock. No. 182.]

To the extent that Ms. Lockner would attempt to double-down on her blatant lies to the Court, Plaintiff informs the Court that numerous witnesses were present and observed Mr. Sieff and Plaintiff together in the same private religious setting multiple times where these conversations took place.  (*See Fredin v. Kreil*, January 14, 2022 Fredin Decl.)  This

includes Dorsey and Whitney partner, Steven B. Nyquist[1], former clerk to Chief Judge Donald Alsop, Edwin Chanin, clerk to Chief Judge John R. Tunheim and clerk to Eighth Circuit Judge Diane E. Murphy, Caitlinrose H. Fisher.  This also includes Benjamin Kressel, son of Minnesota District Court Bankruptcy Judge Robert Kressel.  This may also include Plaintiff's previous attorney, Barry Edwards, son of former Oklahoma Congressman Mickey Edwards, and clerk to Hennepin County District Court Judge Gary Larson and Diana Eagon.  *Id.*

## GOVERNING STANDARD

Attorney disqualification is committed to the discretion of the court.  *Jenkins v. State of Missouri, 931 F.2d 470, 484 (8th Cir. 1991).*  "Disqualification is appropriate where an attorney's conduct threatens to work a continuing taint on the litigation and trial."  *Gifford v. Target Corp.*, 723 F. Supp. 2d 1110, 1116 (D. Minn. 2010) (citation omitted).  Factors to be considered include a court's "duty to maintain public confidence in the legal profession and its duty to ensure the integrity of the judicial proceedings."  *Id.* at 1116-17 (citation omitted)  Motions to disqualify are "subjected to particularly strict scrutiny" because of their potential for abuse by opposing counsel.  *Olson v. Snap Prods., Inc.,* 183 F.R.D. 539, 541-42 (D. Minn. 1998). However, "any legitimate doubts . . . must be resolved in favor of disqualification."  *Id.* at 542  (citing  *Coffelt v. Shell,* 577 F.2d 30, 32 (8th Cir. 1978)).  The conduct of attorneys practicing in the District of Minnesota is governed by the Minnesota Rules of Professional Conduct.  D. Minn. L.R. 83.6(d).

## ARGUMENT

---

[1] *See* e.g., https://www.bloomberg.com/profile/person/4097272

**I.     Plaintiff Contends He Invoked Minn. R. Prof. Cond. Rule 1.18 And 1.9 Invoking Confidential Attorney-Client Privilege With Robins Kaplan Involving Substantially Related Matters**

Minn. R. Prof. Cond. Rule 1.18 (a) states that a "person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client." Lawyers may not reveal oral or written communications with clients that clients reasonably expect to remain private. This is formalized by Minn. R. Prof. Cond. Rule 1.18 (b) which states that the lawyer "shall not use or reveal information learned in the consultation."

Importantly, Plaintiff even discussed and cited Defendants, including Defendant Kreil's "pro bono" strategy, in emails with Robins Kaplan.



Robins Kaplan used this information against Plaintiff by offering *pro bono* representation and requesting exorbitant financial sanctions to further attack Plaintiff in this case. (*See Fredin v. Kreil*, Dock. No. 188; Fredin January 14, 2021 Decl.). Moreover, Plaintiff cited his anonymous "posts" with Robins Kaplan in confidential attorney-client emails. *Id.*



Robins Kaplan used this information against Plaintiff by offering *pro bono* representation and used this information to identify Plaintiff's anonymous "posts" in numerous pleadings with this Court.  Robins Kaplan also abused this attorney-client privilege by seeking a blatantly unconstitutional injunction citing Plaintiff's anonymous "posts" including websites to further attack Plaintiff.  (*See* Oct, 21, 2020 Lockner Mem.¶ 2; ¶ 4 at footnote 2; ¶ 3.)  [Dock. No. 17]  Furthermore, Plaintiff disclosed a search warrant with Robins Kaplan in confidential emails.  (*See* above searchWarrant.JPG; *Id.*)  Similarly, Robins Kaplan used Plaintiff's criminal defense strategy against Plaintiff by offering *pro bono* representation and repeatedly using this information in pleadings with this Court to further attack Plaintiff in this case.  *Id.*

Indeed, even Robins Kaplan "notes" involving Plaintiff's "initial client interview" are "documents [that are] protected by the attorney-client privilege." *Stueve Siegel Hanson Woody LLP v. N.W. Mutual Life Ins. Co.*, No. 05-9064-MC-W-SOW, at *5 (W.D. Mo. Sep. 29, 2005).  Nonetheless, Plaintiff's allegations go beyond simple initial consultations. Rather, they indicate that Plaintiff had deeper in-person discussions with Mr. Sieff and his associates in 2017.  (*See Fredin v. Kreil*, January 14, 2022 Fredin Decl.)

Ms. Lockner admits to using Plaintiff's attorney-client privilege in defense of her current client. [*Fredin v. Kreil*, Dock. No. 154 p. 3. ¶ 12.] Ms. Lockner filed a declaration naming Philip Sieff. *Id.* At the time, Ms. Lockner knew or had information containing specific factual elements supporting a fully formed confidential attorney-client privilege between Mr. Sieff and Plaintiff – through Robins Kaplan - substantially related to these matters. Plaintiff's attorney-client privilege and Ms. Lockner's violation is only bolstered when the accusations by Ms. Lockner involving Mr. Subberaman is taken into account considering that Mr. Subberaman had formed an attorney-client privilege – through Robins Kaplan – with Plaintiff in 2013. [*Fredin v. Kreil, Dock. No. 182.*]

Furthermore, when "an attorney is prohibited from representing a client because he obtained information from a prospective client, no member of his firm can represent the client." *Robertson v. Astrazeneca Pharmeceuticals, LP*, CIVIL ACTION NO: 15-438 SECTION: J(2), at *8 (E.D. La. Sep. 30, 2015). If this is true, Ms. Lockner is prohibited form representing Defendant Kreil in this matter.

The "party asserting the attorney-client privilege has the burden to provide a factual basis for the privilege or protection." *Burke v. Messerli Kramer, P.A.*, CIVIL No. 09-1630 (ADM/AJB), at *5 (D. Minn. June 14, 2010) (internal citations omitted).

To the extent that a more mature attorney-client relationship was formed on the basis of Plaintiff's in-person communications with Mr. Sieff, it would reasonably point to a violation of Minn. R. Prof. Cond. Rule 1.9. If a "court finds a violation of Rule 1.9 (a), attorney disqualification is required." *State v. 3M Co.*, 845 N.W.2d 808, 811 (Minn. 2014). Rule 1.9 (a) may be violated when the attorneys current representation involves a

"substantially related matter to that of a former client." *State ex rel. McClanahan v. Hamilton,* 189 W.Va. 290, 430 S.E.2d 569, 572–73 (1993). Maintaining confidential "attorney-client communications is fundamental to the attorney-client relationship." *In re Charges Unprofessional Conduct in Panel File No. 41310*, 899 N.W.2d 821, 826 (Minn. 2017) (citations omitted).

The "facts of the situation" involving Robins Kaplan's attorney-client privilege formed with Plaintiff "quoted extensively from [the attorneys] e-mail" clearly showed that Robins Kaplan "violated Minn. R. Prof. Conduct 1.9 (c)(2)." *In re Charges Unprofessional Conduct in Panel File No. 41310*, 899 N.W.2d 821, 827 (Minn. 2017).

> "Given that the entire [Attorney's Office] has had access to privileged materials, and that proceedings in [in this case] are ongoing, it would be error to conclude we can prospectively quantify and neutralize the taint of the attorney-client privilege and due process violations[]. We have concluded that "the bell cannot be unrung." Therefore, we order that the [Attorney's Office] is disqualified."

*State v. Goldman*, 485 S.W.3d 783, 790-91 (E.D. Mo. 2016). Here, Robins Kaplan conduct did "taint the underlying" case with a "serious ethical violation." *Federal Deposit Insurance Corp. v. Amundson*, 682 F. Supp. 981, 987 (D. Minn. 1988). Robins Kaplan "acquired information related to the subject of" Defendant Kreil. *Id. See* also *C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265, 268-69 (S.D.N.Y. 1953).

## II.   Plaintiff Moves For Sanctions And Requests The November 23, 2020 Injunction Be Vacated As A Consequence For Anne Lockner And Robins Kaplan Minnesota Professional Responsibility Rule Violations

Pursuant to both Federal Rules of Civil Procedure Rule 60 and the inherent power of this Court to enter sanctions, Plaintiff respectfully requests that the Court vacate the November 23, 2020 injunction to correct the intentional errors committed by Defendants counsel. [*Fredin v. Kreil,* Dock. No. 39.]

"Despite the court's inability to award sanctions pursuant to Rule 60 (b)(3), the court possesses the inherent power to sanction a party who acts `in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Ty Inc. v. Softbelly's Inc*., 2005 WL 326974, *6-7 (N.D. Ill. Feb. 9, 2005) (quoting *Chambers v. NASCO, Inc.,*501 U.S. 32, 45-46 (1991)).

*Synergetics, Inc. v. Hurst*, No. 4:04CV318 CDP, at *18 (E.D. Mo. Aug. 21, 2007). Motions "to vacate orders … are addressed to the discretion of the trial court and are intended to call its attention to errors allegedly committed by it and to afford an opportunity for their correction." *Metal Fabricators, Inc. v. Granite City Steel*, 357 F.2d 175 (8th Cir. 1966) (internal citations omitted). *See* also U.S. Constitution Article III, Section 1 (Inherent Powers of Federal Courts: Contempt And Sanctions).

Ms. Lockner's filing for her November 23, 20220 injunction in concert with K. Jon Breyer belies the fact that Ms. Lockner was abusing her firm's confidential attorney-client with Plaintiff to silence unethical attorney misconduct. [*Fredin v. Kreil*, Dock. No. 39.]

Plaintiff has a right to criticize Robins Kaplan because he gained attorney-client privilege with the firm. For all intents and purpose, Plaintiff is a client of Robins Kaplan which conflicts with its representation of Defendant Kreil. A "particularly instructive precedent" for the Court is *Tory v. Cochran*, 544 U.S. 734 (2005). (*See* also *Fredin v. Kreil,* November 10, 2021 *en banc* Order, Case No. 20-3487, 8th Cir.). This conflict and taint flows through Kutak Rock and Ballard Spahr because Robins Kaplan signed a joint defense agreement involving Defendant Kreil. This joint defense agreement also applies to Defendant Middlecamp, Miller, and Schaefer. As a result, Kutak Rock, Ballard Spahr, including attorneys K. Jon Breyer and Adam C. Ballinger should be disqualified.

Plaintiff alleges that Ms. Lockner has committed perjury by filing false statements in her declaration involving a conflict with Plaintiff's attorney-client privilege through Robins Kaplan. (*See Fredin v. Kreil*, Lockner Decl. ¶ 10-11, Dock. No. 154; *Fredin v. Kreil*, Dock. No. 188; Fredin January 14, 2021 Decl.) Specifically, Ms. Lockner falsely claimed that Mr. Sieff did not publicly admit to "relaps[ing]" and substance abuse in further violation of Plaintiff's attorney-client privilege with her firm. *Id.* This should take into account a referral that Ms. Lockner blatantly lied about Plaintiff "repost[ing]" a Haynes Hansen video to iFunny.co in further violations of Plaintiff's attorney-client privilege with the firm. *(See Fredin v. Kreil*, Lockner Decl. ¶ 6, Dock. No. 154.). Robins Kaplan previously was made aware of Plaintiff's anonymous posting and is using Plaintiff's confidential attorney-client information against him at this litigation stage. If Robins Kaplan files any additional pleading, other than to acknowledge its confidential attorney-client privilege with Plaintiff, Plaintiff requests that any future pleading be struck and that escalating sanctions be imposed on Robins Kaplan for every filing which further violates his attorney-client relationship with Robins Kaplan which Robins Kaplan has used against Plaintiff. (*See Fredin v. Kreil*, Dock. No. 188; Fredin January 14, 2021 Decl.).

Plaintiff respectfully requests that this Court issue any sanction that it warrants asserted against Defendants or their counsels for sharing in the taint.[2] To the extent that

---

[2] Plaintiff requests that Ms. Lockner and Mr. Sieff be referred to the Office of Lawyers Professional Responsibility. Because this is a very serious violation of attorney-client privilege, which Robins Kaplan used against Plaintiff to destroy his life, tainting the integrity of the Court where numerous clerks witnessed Mr. Sieff and Plaintiff together at various times where they invoked confidential attorney-client communication, Plaintiff requests that Robins Kaplan be immediately prevented from filing any pleadings in this

Mr. Breyer or Adam C. Ballinger maintained knowledge of this violation, based on a signed joint defense agreement, Plaintiff respectfully requests that the Court include Mr. Breyer and Ballinger in sanctions.

## **CONCLUSION**

For the reasons above, Plaintiff respectfully requests this Court disqualify and sanction Defendants and their attorneys Anne Lockner, Philip Sieff, J. Haynes Hansen, and Charlie Gokey.  This includes asserting sanctions against Robins Kaplan LLP.

Dated: January 18, 2022
Saint Croix County, WI

  s/ Brock Fredin
Brock Fredin
612-424-5512 (tel.)
Saint Croix County, WI 54002
brockfredinlegal@icloud.com
*Plaintiff, Pro Se*

---

case.  And, at a minimum, Plaintiff requests that Ms. Lockner, Ms. Middlecamp, and Mr. Sieff be referred for licensure suspension or disbarment.

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the word limit of Local Rule 7.1(f) because the document does not exceed 12,000 words.  I certify that this brief complies with the typeface requirements of the Court and Local Rule 72.2(c) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 16.43 in 13-point Times New Roman font for text and footnotes.

Dated: January 18, 2022

s/ Brock Fredin
Brock Fredin
(tel.) 612-424-5512
brockfredinlegal@icloud.com
*Plaintiff, Pro Se*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 18, 2022, I electronically filed the foregoing with the Clerk of the District of Minnesota by using the CM/ECF system. The following participants in the case who are registered CM/ECF users will be served by the CM/ECF system:

K. Jon Breyer
Kutak Rock
60 S. 6th Street
Minneapolis, MN  55402
Jon.breyer@kutakrock.com
*Attorney for Defendants Middlecamp, Miller, and Schaefer*

Anne M. Lockner
Robins Kaplan, LLP
8000 Lasalle Ave
Minneapolis, MN  55402
Anne.lockner@robinskaplan.com
*Attorney for Defendant Kreil*

Dated: January 18, 2022

s/ Brock Fredin
Brock Fredin
(tel.) 612-424-5512
brockfredinlegal@icloud.com
*Plaintiff, Pro Se*