UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Brock Fredin,<br><br>    Plaintiff,<br><br>v.<br><br>Jamie Kreil,<br><br>    Defendant. | Case No. 0:20-cv-01929-SRN-HB |
| Brock Fredin,<br><br>    Plaintiff,<br><br>v.<br><br>Lindsey Middlecamp,<br><br>    Defendant. | Case No. 0:17-cv-03058-SRN-HB |
| Brock Fredin,<br><br>    Plaintiff,<br><br>v.<br><br>Grace Elizabeth Miller and Catherine Marie Schaefer,<br><br>    Defendants. | Case No. 0:18-cv-00466-SRN-HB |

**Memorandum in Opposition to Plaintiff's Motion for Rule 11 Sanctions and Cross Motion to Seal and Preclude Further Filings**

Brock Fredin's Motion for Rule 11 Sanctions should be denied. (Dkt. 168.[1]) The motion is procedurally deficient and substantively meritless. The motion is procedurally deficient because Fredin did not serve it before filing it. The motion is substantively meritless because Defendants' Motion to Show Cause is not baseless, but rather well founded and, in that motion, Defendants' counsel made only accurate representations to the Court.

Defendants also request that the Court issue an order prohibiting Fredin from filing any further motions in this case and to direct the clerk to reject any such filings, unless Fredin has obtained prior approval of the Court. No interest of justice is served by allowing Fredin to continue to waste the time of and misuse the courts.

Lastly, Defendants ask the Court to seal materials that Fredin filed in conjunction with his sanctions motion. Those materials contain many false statements of a particularly obnoxious and disgusting variety, which, while not out of step for Fredin, were published solely to harass Defendants' counsel. Fredin should not be allowed to use the public court systems as a bullhorn for his harassment and circumvent the Court's prior orders.

---

[1] Unless otherwise noted, docket citations refer to the case captioned *Fredin v. Kreil*, No. 0:20-cv-01929-SRN-HB.

# Background

## I. Rule 11 Sanctions Motion Background

The majority of the pertinent background to Fredin's Rule 11 motion is detailed in the Memorandum in Support of Joint Renewed Motion for an Order to Show Cause, which Defendants filed on December 16, 2021. (Dkt. 153.) In that motion, Defendants moved for sanctions after Fredin posted defamatory and harassing videos about Defendants and their counsel, in blatant violation of the Court's prior orders. (*Id.*) In their motion, as well as in supporting documents, Defendants assert that statements that Fredin made in his postings are false. (Dkts. 153, 154.) Notably, Fredin posted this new barrage of videos shortly after he lost his appeal in the Eighth Circuit, appealing the very order that precluded him from such postings in the first place. *See Fredin v. Middlecamp*, 855 F. App'x 314, 315 (8th Cir. 2021) *pet. for reh'g denied*, No. 20-3487 (Nov. 10, 2021).

## II. Fredin's History of Frivolous Motions

The Court has already designated Fredin a vexatious litigant. (Dkt. 39 at 23-25.) But he continues the same conduct within the confines of these case captions. In *Fredin v. Kreil*, though he filed his case in September 2020, his complaint was dismissed by December that year. Even so, in that case alone he filed two motions for sanctions against Defendants' counsel (including one with three separate supporting memorandums raising different arguments) (Dkts. 27,

168); two motions to disqualify Your Honor (Dkts. 83, 178); several motions to reconsider or vacate orders of this Court (Dkts. 40, 69, 115); a motion to waive appellate filing fees (Dkt. 43); a motion to unseal documents (Dkt. 133); and most recently, a motion to disqualify counsel, which comes more than a year after the Court dismissed this case (Dkt. 183). In *Fredin v. Middlecamp* (No. 17:-cv-03058), he filed two more sanctions motions (Dkts. 216, 233). The Court has not granted any of Fredin's substantive motions.

## Argument

I. **Fredin's Rule 11 Motion should be denied because he failed to comply with Rule 11's safe-harbor provision.**

Fredin's motion must be denied because he did not follow the procedural requirements of Rule 11(c)(2). Under this safe-harbor provision, a motion has to be served under Rule 5 but it cannot "be filed or be presented to the court if the challenged paper, claims, defense, contention or denial is withdrawn or appropriately corrected within 21 days after service." Fed. R. Civ. P. 11(c)(2). Failure to comply with this requirement mandates denial of any Rule 11 sanctions motion. *See, e.g.*, *Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1030 (8th Cir. 2003) (reversing district court grant of sanctions as abuse of discretion after movant failed to adhere to Rule 11 safe-harbor requirement); *U.S. v. Taylor*, No. Civ. 3-96-33 RHK/FL, 2002 WL 31505630, at *2 (D. Minn. Nov. 8, 2002) (failure to adhere to safe harbor provision "require[d]" denial of Rule 11 motion).

3

Fredin did not provide Defendants with any notice that he intended to file his motion. (Lockner Decl. at ¶ 1.) Sufficient notice was impossible; he filed his motion only eighteen days after Defendants filed the motion containing all of the statements Fredin contends warrant sanctions. (Dkt. 151 (filed December 16, 2021); Dkt. 168 (filed January 3, 2021).) The Court can and should deny his motion on this basis alone.

## II.     The Court should Deny Fredin's motion because it is substantively meritless.

A court may issue Rule 11 sanctions when a pleading "'is presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation,' contains allegations or factual contentions that lack evidentiary support, or contains denials of factual contentions that are not warranted on the evidence." *Duranseau v. Portfolio Recovery Assocs.*, 644 F. App'x 702, 707 (8th Cir. 2016) (quoting *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1008 (8th Cir. 2006)); *see also* Fed. R. Civ. P. 11(b).

### A.     *Defendants' Joint Renewed Motion for an Order to Show Cause is not "baseless."*

Fredin first contends that sanctions are warranted because Defendants' Joint Renewed Motion for an Order to Show Cause is "baseless." According to Fredin, because he posted the materials underlying Defendants' Motion for an Order to Show cause after his case had closed he "could not gain an advantage in

4

any litigation." (Dkt. 169 at 8.)

Fredin construes too narrowly the scope and purpose of the Court's order requiring him to remove his original postings. The Order prohibited Fredin from posting or causing to be posted "any additional websites, videos, or other publicly accessible online media that contain substantially similar accusations against" Defendants or their counsel, or that harassed Defendants or their counsel within the meaning of Minn. Stat. § 609.748. (Dkt. 39 at 21-23.) Fredin's latest harassment neatly matches that description, and whether it is for the purpose of gaining litigation advantage is beside the point. (*See* Dkt. 153.) Nothing in the Court's Order limited its application to when this litigation remained ongoing. (Dkt. 39.) Rather, it explicitly set the injunction for "five years from the date" the Court issued it, regardless of when Fredin's underlying case ended. (*Id.* at 21.)[2]

Even if the Court's Order were limited to posts that could give Fredin a litigation advantage, Fredin's argument would still fail. Fredin's case has not

---

[2] Notably, Fredin's actions *do* implicate the Court's reasoning in entering the injunction. The Court noted that "Fredin's websites disparaging Defendants' prior counsel may affect Defendants' ability to retain counsel in the future" and that a purpose of the Order was to prevent that result. (Dkt. 39 at 20.) Even though Fredin's underlying cases have now been dismissed, his current postings make clear that any counsel who represent Fredin's victims will face the same harassment, thus potentially discouraging counsel from representing Fredin's victims in the future.

completely ended. Fredin will almost certainly seek certiorari from the Supreme Court following his loss in the Eighth Circuit, Fredin has continued to file a flurry of motions here despite the dismissal of this action, and Defendants' petitions for attorneys' fees remain pending before the Court. (Dkt. 110 at 11 n.5.) Indeed, the fact that Fredin recently retaliated by redoubling his efforts after Defendants attempted to enforce their rights under the Court's prior Orders illustrates how Fredin continues to attempt to influence these proceedings through harassment even now.

Fredin's posts fall squarely within the parameters of the Court's sanctions Order.[3] More than constituting a good faith basis for Defendants' filing, this rationale is reason for granting Defendants' Joint Renewed Motion for an Order to Show Cause.

### B. *Defense Counsel made accurate representations to the Court.*

Fredin also asserts that Rule 11 Sanctions are warranted because Defendants' counsel stated "that Plaintiff posted the Haynes Hansen 'Ram Ranch' video to iFunny.com." (Dkt. 169 at 10.) Actually, the declaration supporting Defendants motion stated only that "the video of Mr. Hansen was

---

[3] The same reasons defeat Fredin's request for sanctions under 28 U.S.C. § 1927. (Dkt. 169 at 9.)

6

simply reposted on a different platform." (Dkt. 154 at ¶ 6.) Defendants stated in their brief that "Fredin is undoubtedly behind the re-posting of [the video of Mr. Hansen], as Fredin gleefully shared the link to it in his filings with the Eighth Circuit." (Dkt. 153 at 4.) Even assuming that Fredin's representations to the Court are true (which Defendants doubt), Fredin's citation to this video in his appellate filings provided a sufficient basis for this inference.

Fredin also points to Defense counsel's statements about other members or former member of Robins Kaplan as basis for Rule 11 sanctions. (Dkt. 169 at 11.) In particular, Defense counsel represented to the Court that statements made about a partner at Robins Kaplan—who is not involved in this case—in videos that Fredin posted were false. (Dkt. 154 at ¶¶ 10-11.) Fredin offers hearsay to claim otherwise as to just some, but not all, of the statements found in the videos. (Dkt. 171 at ¶¶ 14-16.) So even if that hearsay were true, Fredin's declaration does not substantiate the allegations in the reprehensible videos at issue, nor does it render the statements in Defendants' declaration untrue.

Fredin also alleges that "Defendants['] counsel has engaged in a similar pattern spanning years." He contests that they "lied about the original emails which were the basis for the motion for a preliminary injunctions in 2020" and that they "repeatedly lied regarding emails to the Court's chambers and fabricated an allegation, without evidence, that they had originated from

7

Plaintiff." (Dkt. 169 at 12.) Fredin does not provide Defendants with enough specifics to refute these allegations, requiring the denial of this motion on that basis alone, but Defendants do not need specifics to deny any such intentional misrepresentation to the Court. *See also* Fed. R. Civ. P. 11(c)(2) (requiring that any motion under Rule 11 must "describe the *specific* conduct that allegedly violates Rule 11(b)"). Defendants maintain that the material allegations they have made throughout the course of this litigation are accurate to the best of their knowledge. Fredin does not present evidence to the contrary. [4]

Fredin further alleges that Defendants' counsel at Kutak Rock "openly lied to the court—without evidence—that is was Plaintiff who had somehow emailed the Court using an anonymous pseudo name." (Dkt. 169 at 3.) Like most of Fredin's arguments, he provides little or no facts to support his argument and, in most cases, the "facts" he attempts to recite drastically miss the mark. What Fredin is apparently alluding to are a series of three emails sent by an individual

---

[4] Fredin also makes cursory allegations that one of the subjects of his latest attacks, a former attorney at Robins Kaplan, "formed attorney-client privilege" with Fredin while he was employed by Robins Kaplan. (Dkt. 169 at 12-13.) He asserts that relationship "precludes Defendants counsel from falsely asserting that the injunction would somehow be used to gain an advantage from" the former Robins attorney—despite the fact that this attorney left Robins Kaplan over seven years ago, long before Robins Kaplan was retained to handle the case against Fredin. (*Id.*; Lockner Decl. at ¶ 2) Fredin does not present any facts demonstrating an attorney-client relationship, explain why any such relationship would support his motion for sanctions, or explain why this is the first time he is raising this issue with the Court.

8

named Gordon Parker to Your Honor's chambers in August 2020 that sought to disparage Defendant Lindsey Middlecamp. This matter was addressed in an August 19, 2020 letter to the Court that explained:

> There is no conceivable reason Mr. Parker (who by his own admission did not know Middlecamp's name or identifying details when he was active on Twitter in 2014 or 2015) would, five years later, while motions for summary judgment are pending, become aware of Middlecamp's name or location, or Mr. Fredin's litigation against her. We are left to conclude that Fredin has extended his stalking of Middlecamp to identifying negative twitter interactions in order to contact third parties and provide them with a means to harass her directly.

(*Fredin v. Middlecamp*, 17-cv-03058, Dkt. 185 (Aug. 19, 2020).)

Defendants never claimed that it was Fredin "who had somehow emailed the Court using an anonymous pseudo name," but rather that Fredin was soliciting and encouraging those who attacked Middlecamp on Twitter to do so again by emailing the Court. (Dkt. 169 at 3.) In response, Fredin filed a letter seeking sanctions—an often used tactic employed by Fredin when he lacks a credible response. (*Fredin v. Middlecamp*, 17-cv-03058, Dkt. 186 (Aug. 20, 2020).) The Court did not award sanctions then because there was no basis to do so and it should not do so now.

    C.    ***This Court can award attorneys' fees for Fredin's appeal.***

In a supplemental submission to the Court, Fredin asserts Rule 11 sanctions are due because "the District Court cannot award appellate attorney

9

fees." (Dkt. 181 at 3.) Fredin is incorrect. Typically, the appellate court would award fees incurred on appeal. *Starr v. Metro Sys., Inc.*, No. 01-1122 (JNE/SRN), 2006 WL 3370811, at *1 (D. Minn. 2006). But a district court "has the ability to decide issues related to attorney fees incurred on appeal where the court of appeals has not decided them." *Id.* (rejecting argument that award of attorneys' fees could not include any fees incurred on appeal). In this particular instance, Defendants are entitled to attorneys' fees incurred on appeal because Fredin proceeded to violate the very order he appealed as soon as he did not get his way in the Eighth Circuit. Moreover, the vast majority of the conduct underlying Defendants' latest sanctions motion happened after the appeal had finished, making this Court the more appropriate forum to determine whether fees are appropriate.

Fredin asserts that two cases preclude the Court from awarding fees incurred opposing Fredin's appeal. (Dkt. 181 at 3.) In *Cooter Gell v. Harmarx Corp.*, the Supreme Court held only that the district court could not award attorney's fees incurred during appeal under Rule 11. 496 U.S. 384, 405-08 (1990). In contrast, Defendants ask for attorney's fees not under Rule 11, but pursuant to the Court's inherent authority. (Dkts. 39 at 11-17 (precluding Fredin's posts based on inherent authority); 153 at 7-9 (requesting sanctions based on violation of Order precluding Fredin's posts.) *Cooter* is therefore inapplicable. The other

10

case Fredin cites, *Beaner v. U.S.*, does not consider attorneys' fees at all. 361 F. Supp. 2d 1063 (D. S.D. 2005) (although it does state: "A plaintiff's 'subjective belief and pro se status . . . do not insulate him from the reach of Rule 11.'") (*quoting Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir.1993).[5]

### III. The Court should prohibit Fredin from further filings.

Courts may protect themselves from abuse by prohibiting frivolous litigants from future filings on closed cases. *See, e.g.*, *United States ex. Rel. Odish*, 843 F. App'x 748, 750 (6th Cir. 2021) (affirming district court order prohibiting litigant from "filing any future documents in the case and direct[ing] the clerk to refuse any filings in the case" and collecting federal circuit court decisions to the same effect); *Grady v. Gaddy*, No. 4:19-CV-1701 NCC, 2021 WL 1020766, at *1-2 (E.D. Mo. Mar. 16, 2021) (prohibiting future filings). A court may do so for the same reasons as it may preclude a litigant from filing future cases under different captions, and repeated, frivolous filings will give reason for the court to prohibit future filings. *Odish*, 843 F. App'x at 750.

The Court has already found Fredin to be a vexatious litigant fourteen months ago. (Dkt. 39 at 23-25.) Rather than taking heed of the Court's

---

[5] Fredin also asserts sanctions are due because "Defendants are seeking financial award from Plaintiff resulting from an inherent conflict of interest with Defendant Middlecamp's office." (Dkt. 181 at 4.) Defendants are uncertain what this means, but cannot discern any conflict of interest that would affect these proceedings.

11

admonitions, he has continued the same conduct in these cases, filing frivolous motion after frivolous motion—at least ten across his active cases. (*See infra*, Background, § II.) His filings are filled with personal attacks, evidencing that they are mere means for him to lash out at his perceived enemies. (*See, e.g.*, Dkt. 28 at 3; Dkt. 95 at 17-18; *Fredin v. Middlecamp*, No. 0:17-cv-03058, Dkt. 270 at 29.). It does not serve the interests of justice to allow Fredin to continue to waste the Court's and the parties' resources on frivolous motions. The Court should order that Fredin can no longer file any motions in this case without leave of the Court and direct the Clerk not to accept any of Fredin's motions, absent the Court's approval.

## IV.     The Court should seal Docket Entries 171 and 182.

This Court has the power to seal records containing confidential or proprietary information. L.R. 5.6. Throughout this case, the Court has sealed Fredin's harmful posts to avoid granting Fredin yet another platform to attack his victims. (*See* Dkts. 67, 141, 150.) Fredin's declarations in support of his sanctions motion (Dkts. 171 & 182) repeat the same allegations that Defendants contend violate the Court's Order. Defendants respectfully request that the Court seal Docket Entries 171 and 182.

## Conclusion

Fredin has presented this Court with no basis to impose Rule 11 sanctions.

He has moved for this Court to impose Rule 11 sanctions without complying with the plain requirements of Rule 11. If this were not reason enough to deny his motion, it is also substantively meritless: Defendants' Joint Renewed Motion for an Order to Show Cause was not "baseless" and Defendants' counsel's representations to the Court were accurate. Defendants also request that the Court preclude Fredin from filing any further motions in the above-captioned cases, absent the Court's leave. Lastly, they ask the Court to seal dockets 171 and 182.

DATED:  January 18, 2022

**ROBINS KAPLAN LLP**

By:  /s/ *Anne M. Lockner*
Anne M. Lockner (0295516)
J. Haynes Hansen (Bar No. 0399102)
Ena M. Kovacevic (Bar No. 0400149)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
T: (612) 349-8500
F: (612) 339-4181
alockner@robinskaplan.com
ekovacevic@robinskaplan.com
hhansen@robinskaplan.com

*Counsel for Defendant Jamie Kreil*

DATED:  January 18, 2022    **KUTAK ROCK LLP**

By: /s/ *K. Jon Breyer*
K. Jon Breyer (302259)
60 South Sixth Street
Suite 3400
Minneapolis, Minnesota 55402
T: (612) 334-5057
jon.breyer@kutakrok.com

*Counsel for Defendants Lindsey Middlecamp, Grace Elizabeth Miller and Catherine Marie Schaefer*