UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

BROCK FREDIN,

        Plaintiff,

--against--

LINDSEY MIDDLECAMP,

        Defendants.

District Court Case No. 17-CV-3058 (SRN)

BROCK FREDIN,

        Plaintiff,

--against--

GRACE MILLER,
CATHERINE SCHAEFER,

        Defendants.

District Court Case No. 18-CV-466 (SRN)

BROCK FREDIN,

        Plaintiff,

--against--

JAMIE KREIL,

        Defendant.

District Court Case No. 20-CV-01929 (SRN)

**PLAINTIFF'S REPLY TO DEFENDANTS JANUARY 21, 2022 RESPONSE IN OPPOSITION TO DISQUALIFY ROBINS KAPLAN**

Plaintiff Brock Fredin, proceeding *pro se*, hereby submits this reply to Defendant Kreil's January 21, 2022 Memorandum in Opposition to Plaintiff's Motion to Disqualify Robins Kaplan and as a Supplemental Response to Defendants December 16, 2021 show cause motion:

## ARGUMENT

1. Anne Lockner and Robins Kaplan LLP are so corrupt and unethical that they would go so far as to misrepresent the Minnesota Rules of Professional Conduct to the Court in order try to get the upper hand in this case. There is no question that Robins Kaplan LLP has a conflict in this case. They even admit it by untimely screening Philip Sieff from the case after the conflict was brought to light. Unfortunately, Minn. R. Prof. Cond. Rule 1.18 ("Rule 1.18") – cited and, as shown below, misrepresented by Robins Kaplan LLP and Anne Lockner – has absolutely no applicability to the situation at hand. Based on their totally egregious misrepresentations in their opposition brief and their unethical conduct in concealing a conflict of interest while using privileged and material information to prosecute and obtain an unlawful injunction skirting the First Amendment, Anne Lockner and anyone complicit in her firm in their scheme should be strung up and disbarred by the Minnesota Office of Lawyers Professional Responsibility. Regrettably, this Court will bend over backwards and issue an order to protect its former firm and former colleague at Robins Kaplan.

2. Rule 1.18 cited by Defendant and her counsel was never intended to cover the conflict-of-interest situation in this case. Specifically, it was intended to cover a situation involving an attorney with an existing client and subsequently the attorney makes

contact to a prospective client where a conflict exists. *See* Minn. R. Prof. Cond. Rule 1.18 (commentary). In that situation, Rule 1.18(d)(2)(i) is triggered to wall off the disqualified attorney.

3. As presented in this case, it is the reverse where Plaintiff maintained an attorney-client relationship and Defendant Kreil was the prospective client. Robins Kaplan was required to inform Defendant Kreil in writing that it had an attorney-client relationship with Plaintiff and could not represent her under the Minnesota Rules of Professional Conduct because representing Defendant Kreil would disclose Plaintiff's privileged communications and information. *See* Minn. R. Prof. Cond. Rule 1.18(d)(2)(ii) & commentary. And, at that stage, it was required to wall off or "screen" under Rule 1.18(d)(2)(i) whichever lawyer (namely Anne Lockner) had engaged in contact with Defendant Kreil. (*See* Fredin February 3, 2022 Decl ¶ 2-6.)

4. Robins Kaplan and Anne Lockner argue incorrectly and disingenuously (with a bare citation and no analysis or explanation) that the conflict-of-interest situation posed in this case somehow involves Rule. 1.18. (*See* Jan. 21, 2022 Lockner Mem. ¶ 9; Jan. 21, 2022 Lockner Decl. ¶ 11.) They are attempting to skirt the Rules of Professional Responsibility and twist Rule 1.18 to avoid the potential fallout of this misconduct and to conceal the fact that they used Plaintiff's privileged and material communications in order to obtain an unlawful blanket injunction preventing him from criticizing Robbins Kaplan and their cohorts. Better yet, even if Rule 1.18 somehow applied in the instant situation, Robins Kaplan and Anne Lockner still engaged in unethical conduct and violated the rule because they:

    a. acknowledge they did not timely wall off Philip Sieff as required by Rule 1.18 and only "screened" him after Plaintiff raised the conflict – not when they engaged Defendant Kreil as a client;

    b. should only have taken limited information from Defendant Kreil knowing that Plaintiff was previously a prospective client and had disclosed privileged and material information about potential legal matters involving Defendant Kreil to Philip Sieff and other attorneys at Robins Kaplan;

    c. concede they made no efforts to ensure that material information was not disclosed to Anne Lockner;

    d. admit that there is no evidence that Robins Kaplan wrote a letter to Defendant Kreil (or Plaintiff) informing her that they had previously advised Plaintiff; and

    e. actively solicited Defendant Kreil as a client in violation of Plaintiff's attorney-client relationship and used her false allegations as a means to silence Plaintiff.  (*See* Fredin February 3, 2022 Decl ¶ 14.)

5.     In her response, Anne Locker – never one to let a good opportunity to engage in misconduct and unethical behavior pass her by – attempts to trick Plaintiff and coax him to revealing privileged information so they are not privileged anymore.  (*See* Fredin February 3, 2022 Decl ¶ 4, 2.)  Anne Lockner states that Plaintiff filed "heavily redacted" documents evidencing attorney-client privilege with Robins Kaplan.  (*See* Jan. 21, 2022 Lockner Mem. ¶ 2.)  Plaintiff did exactly what he was supposed to do.  Plaintiff's

3

communications with Robins Kaplan are privileged and by failing to redact them in filings Plaintiff would have forfeited the status of those communications. (*See* Fredin February 3, 2022 Decl ¶ 2-6.) If the Court needs to assess those communications, he can provide them to the Court *in camera* as routinely done in matters involving privileged communications. Nevertheless, the fact that Robins Kaplan and Anne Lockner would raise the fact that Plaintiff redacted his privileged communications in a publicly filed brief (communications Robins Kaplan obviously has full access to) as an argument to try to defeat Plaintiff's disqualification motion is either asserted in incredible bad faith or illustrates the unbelievable stupidity of Anne Lockner. *Id* ¶ 4. This is precisely the kind of bad faith and egregious attorney misconduct and gamesmanship requiring sanctions. *BP P.L.C. v. Mayor of Balt.*, 141 S. Ct. 1532, 1546 (2021)

6.  Furthermore, in her response, Anne Lockner also admits to Plaintiff's allegations that her firm has an attorney-client relationship with Plaintiff and is violating Minn. Rules of Prof. Cond. Rule 1.6, 1.18, 1.9, and 1.10. Specifically, Anne Lockner states that Robins Kaplan partner Philip Sieff is now "screened from this matter in accordance with Rule 1.18(d) out of an abundance of caution." (*See* Jan. 21, 2022 Lockner Mem. ¶ 9; Jan. 21, 2022 Lockner Decl. ¶ 11.)

7.  As described above, this is an incorrect application of the screen under Rule 1.18(d)(2)(i). (*See* Fredin February 3, 2022 Decl ¶ 5.) This is because Rule 1.18 is concerned with the reverse situation that Anne Lockner should have been walled off and "screened" if she maintained contact with Defendant Kreil as a prospective client.

<u>Robins Kaplan's "Screen" Under Rule 1.18(d)</u>

4

8.   Minn. R. Prof. Cond. Rule 1.18(d)(2)(i) states that the disqualified lawyer must be "timely screened". A "screen should be erected when the firm accepts a case which presents an ethical problem." *LaSalle Nat. Bank v. Lake County*, 703 F.2d 252 (7th Cir.1983)

9.   On January 21, 2022 Anne Lockner purports to construct a screen years after her notice of appearance in this case. Even worse, Anne Lockner constructed a screen after the case closed. (*See* Jan. 21, 2022 Lockner Mem. ¶ 9; Jan. 21, 2022 Lockner Decl. ¶ 11.) Anne Lockner's arguments involving a "screen" are untimely. A "Chinese wall is intended to be pre-emptive. Therefore, timeliness is the pre-dominant factor in determining its effectiveness." *Decora, Inc. v. DW Wallcovering, Inc.,* 899 F Supp 132 (SDNY 1995)

10.   Similarly, Anne Lockner's purported "screen" is invalid because when "the screen was constructed, the opportunity for the dissemination of information had already been extant [for several years]." *In re Estate of Kaufman*, 997 N.Y.S.2d 99 (N.Y. Surr. Ct. 2014) (disqualifying attorney based on disclosures prior to construction of ethical screen)

11.   Prior to Robins Kaplan January 21, 2022 stated screen, Plaintiff's privileged communications were shared with every attorney in the including Anne Lockner, J. Haynes Hansen, Charlie Gokey, and Ena Kovacevic. In this case, "all of the [firms] attorneys had the opportunity to access the e-mails, prior to the construction of the screen." *In re Estate of Kaufman*, 44 Misc. 3d 1216 (N.Y. Civ. Ct. 2014)[1]; (*See* Fredin February 3, 2022 Decl ¶ 2-5.)

---

[1] Limited federal or Minnesota case law exists on Rule 1.18(d) particularly to the extent an ethical "screen" is concerned. As a result, Plaintiff is required to reference some alternate state case law.

12. Anne Lockner provides no evidence that Plaintiff's privileged communications were not shared with these attorneys. *Id.* Anne Lockner provides no evidence that Plaintiff's privileged information was protected by a screen in any reasonable form prior to or even after January 21, 2022.[2] *Id* ¶ 6. In effect, Robins Kaplan "use[d] privileged communication, and it would be arduous to extract or erase it from [their] mind." *Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426, 436 (N.D.N.Y. 2012) (finding that the "defendants' description of the matters, coupled with the circumstances surrounding the meeting, give rise to a reasonable inference that confidences were revealed" requiring disqualification)

13. Furthermore, Anne Lockner and Philip Sieff failed to disclose the effectiveness of the screen.[3] *In re Estate of Kaufman*, 997 N.Y.S.2d 99 (N.Y. Surr. Ct. 2014) (factors include frequency of communications between attorneys and access to records); *See* also *Kassis v. Teacher's Ins. and Annuity Assn.,* 93 N.Y.2d 611 [1999] (holding that a "screen" under Rule 1.18 considers various elements including the size and structure of the firm)

14. Robins Kaplan's purported "screen" is undermined by Anne Lockner's continued disclosures of Plaintiff's privileged communications in her December 16, 2021

---

[2] Robins Kaplan and Anne Lockner's screen is analogous to attempting to prevent an oil spill after the oil was already spilled.

[3] Under the rules, Robins Kaplan is likely required to inform Plaintiff to what extent his privileged communications were shared with attorneys in the firm. Robins Kaplan has failed to do this.

6

show cause motion involving Philip Sieff's and Mr. Subberaman's[4] conversations with Plaintiff. *In re Estate of Kaufman*, 44 Misc. 3d 1216 (N.Y. Civ. Ct. 2014) (discussing an undermined ethical screen under Rule 1.18).[5]

15.  It is also important to reiterate that Anne Lockner committed perjury when filing a knowingly false declaration.[6] (*See Fredin v. Kreil*, Lockner Decl. ¶ 10-11, Dock. No. 154.) If Philip Sieff would like to address these statements, Plaintiff requests that Philip Sieff file a declaration.

16.  In her response, Anne Lockner argues or implies that Robins Kaplan attorney Adam Kohnstamm was effectively screened because he no longer works at Robins Kaplan and therefore could not have violated Rule 1.18 or 1.9.[7] (*See* Jan. 21, 2022 Lockner Mem. ¶ 1; 2; 4.)

17.  Robins Kaplan including Anne Lockner was aware of its conflict including Mr. Kohnstamm's Rule 1.18, 1.6, 1.9, 1.9(b), and 1.10 violations in this case further undermining their "screen" arguments. (*See Fredin v. Middlecamp*, Dock. No. 316; *Fredin v. Kreil* Dock. No 5.) Attorney General Keith Ellison sent a letter through Assistant

---

[4] Plaintiff also spoke on the phone with Mr. Subberaman's involving a separate intellectual property matter. Mr. Subberaman was using Robins Kaplan's phone system at the time of the calls. Anne Lockner is disclosing Plaintiff's privileged information in these calls in her various motions that reference Mr. Subberaman.

[5] Still yet, Anne Lockner continues to maintain these filings in violation of Plaintiff's privileged communications.

[6] Robins Kaplan and Defendants used similar level misconduct and lies fabricating allegations of "pressure" to petition the Court for the unlawful injunction. Plaintiff never applied pressure particularly in the context of a settlement.

[7] Attorney-client privilege involving a lawyer who moves to another firm is governed by Rule 1.9(b).

Attorney General Jason Marisam.[8]  (*See* Fredin February 3, 2022 Decl ¶ 6.)  At the time of this letter, Mr. Kohnstamm was also an Assistant Minnesota Attorney General.[9]  Mr. Kohnstamm tipped off Assistant Attorney General Marisam in further violation of attorney-client privilege through Mr. Kohnstamm's conflict with Robins Kaplan and Plaintiff.  (*See* Minn. R. Prof. Cond. Rule 1.18 and 1.9.)  This was a clear violation of Rule 1.9(b) and 1.10 by Robins Kaplan when the letter was filed.  At that time, Robins Kaplan or Anne Lockner never attempted to "screen" Mr. Kohnstamm's violations as they applied to her direct representation.  Put simply, Assistant Attorney General Marisam's letter to the Court further evidences Robins Kaplan's knowledge of its unethical attorney misconduct, conflicts and its tainted representation.  (*See Fredin v. Middlecamp*, Dock. No. 316; *Fredin v. Kreil* Dock. No 5.)

18.   Noticeably, Anne Lockner fails to specify a screen as it relates to former Robins Kaplan attorneys Adam Kohnstamm, Sarah Friedricks, or even Mahesha Subberaman.  No such screen could reasonably exist.

<u>Imputing Conflicts to Every Lawyer in A Firm Under Rule 1.10</u>

---

[8] Attorney General Keith Ellison is accused of rape and domestic violence by his previous girlfriend Karen Monahan. This includes Ms. Monahan's allegations that Attorney General Ellison attempted to conceal the allegations by abusing his state powers. *See* https://www.youtube.com/watch?v=2fBwvk7l2jI&t=285s; https://www.youtube.com/watch?v=4dkNjHheAc8&t=38s
https://www.foxnews.com/politics/keith-ellison-resigns-from-dnc-post-amid-sexual-assault-claims

[9] *See State v. Twin Cities Care Servs.*, A17-2070 (Minn. Ct. App. July 30, 2018) (noticing Mr. Kohnstamm as an Assistant Attorney General); https://www.linkedin.com/in/adamkohnstamm

19. Rule 1.18 and 1.9 violations are imputed to every attorney in the firm under Rule 1.10. A "conflict of interest for one lawyer in a firm is generally imputed to all the lawyers in the same firm." *Board Of Regents of The University Of Nebraska v. BASF Corp*, No. 4:04CV3356, at *14 (D. Neb. Aug. 17, 2006)

20. To make matters worse, Anne Lockner testified to her knowledge of Defendant Middlecamp and Kreil's allegations as they relate to her conflict in violating Minn. R. Prof. Cond. Rule 1.8 and 1.9 when filing a notice of related cases. [*Fredin v. Kreil*, Dock. No. 5.]

21. The idea that this would not taint Anne Lockner is particularly outrageous given that Philip Sieff can be seen pictured with Anne Lockner on the firms website:[10]



It is believed that Philip Sieff and Anne Lockner served together on Robin's Kaplan executive committee further bolstering allegations that privileged information was disclosed to Anne Lockner prior to Anne Lockner's notice of appearance in this case.

22. Lastly, Anne Lockner argues that Plaintiff's disqualification motion is "untimely". (*See* Jan. 21, 2022 Lockner Mem. ¶ 2.) There is nothing in the rules to suggest that its the clients burden to timely notify the Court involving a conflicts check. Rather,

---

[10] *See* Robins Kaplan executive committee photo displaying a noticeably shorter stature of Philip Sieff comparatively to that of Anne Lockner. https://www.robinskaplan.com/professionals

the burden for "prompt" and "timely" conflict check notification resides with the responsible firm. *See* Minn. R. Prof. Cond. Rule 1.18 and 1.9

23.   Put simply, Robins Kaplan used a knowingly false rape allegation to silence First Amendment exercise.[11] (*See* Fredin February 3, 2022 Decl ¶ 13-14.) Robins Kaplan had extensive evidence of the false allegation before taking the case. As described above, this is the kind of egregious attorney misconduct and gamesmanship requiring severe and disbarment level sanctions. *BP P.L.C. v. Mayor of Balt.*, 141 S. Ct. 1532, 1546 (2021)

Date: February 3, 2022

s/ Brock Fredin
Brock Fredin
(tel.) 612-424-5512
brockfredinlegal@icloud.com
*Plaintiff, Pro Se*

---

[11] Defendants original false rape allegation and misconduct stems from Defendants email admission that Plaintiff called Defendant Schaefer a "rapist".

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the page limitation established by Local Rule 7.1 in that it does not exceed 12,000 words. This brief also complies with the typeface requirements of Local Rule 7.1, as it has been prepared in Microsoft Word using a proportioned spaced typeface of 13-point Times New Roman font.

Date: February 3, 2022

s/ Brock Fredin
Brock Fredin
(tel.) 612-424-5512
brockfredinlegal@icloud.com
*Plaintiff, Pro Se*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2022, I electronically filed the foregoing with the Clerk of the District of Minnesota by using the CM/ECF system. The following participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system:

K. Jon Breyer
Kutak Rock
60 S. 6th Street
Minneapolis, MN  55402
Jon.breyer@kutakrock.com
*Attorney for Defendants'*

Anne M. Lockner
Robins Kaplan, LLP
8000 Lasalle Ave
Minneapolis, MN  55402
Anne.lockner@robinskaplan.com
*Attorney for Defendant Kreil*

Date: February 3, 2022

s/ Brock Fredin
Brock Fredin
(tel.) 612-424-5512
brockfredinlegal@icloud.com
*Plaintiff, Pro Se*